Bradley D Simon
bsimon@phillipsnizer.com
PHILLIPS NIZER LLP
485 Lexington Ave
New York, New York 10017-0084
(212) 977-9700
*Attorneys for Plaintiff Troy Gibson*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

TROY GIBSON,

                 Plaintiff,

                 v.

SUFFOLK COUNTY POLICE DEPARTMENT,
TIMOTHY SINI, GERARD GIGANTE, JOHN
O'BRIEN, MICHAEL PIRONE, JOHN BARRY and
JOANN MACLAUGHLIN,

                 Defendants.

-------------------------------------------------------------- x

| : | **ELECTRONICALLY FILED** |
| : | **ECF CASE** |
| : | |
| : | Case No. |
| : | |
| : | **COMPLAINT AND** |
| : | **DEMAND FOR JURY** |
| : | **TRIAL** |
| : | |
| : | |
| : | |

         Plaintiff Troy Gibson ("Plaintiff"), by and through his undersigned counsel, as and for his

complaint against defendants Suffolk County Police Department ("SCPD" or the "Department"),

Timothy Sini ("Sini"), Gerard Gigante ("Gigante"), John O'Brien ("O'Brien"), Michael Pirone

("Pirone"), John Barry ("Barry") and Joann MacLaughlin ("MacLaughlin"), respectfully alleges

as follows:

## NATURE OF THE ACTION

         1.      This is an action against the SCPD for discrimination based on race, a hostile

work environment based on race, and retaliation based on complaints of racial discrimination,

suffered by Plaintiff, a former SCPD Detective, in violation of Title VII of the Civil Rights Act

of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; and for discrimination based on race, a hostile

work environment based on race, and retaliation based on complaints of racial discrimination, affecting Plaintiff in the terms and conditions of his employment, in violation of Sections 1981 and 1983 of Title 42 of the United States Code, 42 U.S.C. §§ 1981, 1983 ("Section 1981" and "Section 1983," respectively).

2.      Plaintiff was a twenty-two-year veteran of the Department, having joined in 1995 and having been promoted to Detective in 2001. Plaintiff was a Trooper with the New York State Police between 1989 and 1995, and prior to that he served his country as a member of the United States Marine Corps, and was honorably discharged.  He also served in Desert Storm, and received an honorable discharge.

3.      As a black member of the SCPD – a police force that eventually became known for problems with race relations (*see infra*) – Plaintiff perceived during his time with the Department that any error on his part might be used by certain of his superiors as a pretext to harass him, or to subject him to disproportionate penalties in the terms of his employment.

4.      Then, in 2015, Plaintiff's ex-girlfriend (with whom he had had an approximately 15-year relationship) filed false sexual assault allegations against him.

5.      As alleged in further detail below, Plaintiff's superiors at the SCPD seized on the allegation by Plaintiff's ex-girlfriend in exactly the way Plaintiff had feared: even after Plaintiff was cleared of the allegations against him, the allegation was used as a pretext to humiliate and harass him, and to subject him to adverse employment measures that were not warranted by Department protocol, and were not imposed upon white officers who – unlike Plaintiff – were actually found guilty of serious offenses.

## PARTIES, JURISDICTION AND VENUE

6.      Plaintiff is an individual residing in Oakdale, New York, and is a resident of Suffolk County.

2

7.      Defendant SCPD is a law enforcement agency of Suffolk County, with an address at 30 Yaphank Avenue, Yaphank, NY 11980.

8.      Upon information and belief, Defendant Sini was at all relevant times herein employed as the Commissioner of the SCPD, and is a resident of Suffolk County.

9.      Upon information and belief, Defendant Gigante is and was at all relevant times herein employed as the Chief of Detectives with the SCPD, and is a resident of Suffolk County.

10.      Upon information and belief, Defendant O'Brien was at all relevant times herein employed as a Lieutenant Detective with the SCPD, and is a resident of Suffolk County.

11.      Upon information and belief, Defendant Pirone is and was at all relevant times employed as a Lieutenant Detective with the SCPD, and is a resident of Suffolk County.

12.      Upon information and belief, Defendant Barry is and was at all relevant times herein employed as the Deputy Commissioner of the SCPD, and is a resident of Suffolk County.

13.      Upon information and belief, Defendant MacLaughlin is and was at all relevant times herein employed as the Commanding Officer of the Internal Affairs Bureau ("IAB")with the SCPD, and is a resident of Suffolk County.

14.      This Court has subject matter jurisdiction over Plaintiff's Section 1983 claim pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Defendants are located in this District and because the events giving rise to the claims herein occurred in this District.

## STATEMENT OF FACTS

16.      Plaintiff is a black male.  Plaintiff was highly qualified for his job as a detective with the SCPD.

3

17.     Plaintiff served his country in the United States Marine Corps, and was honorably discharged.  He also served in Desert Storm, and received an honorable discharge.

18.     Plaintiff served the State of New York as a trooper in the New York State Police Department from 1989 until 1995.

19.     Plaintiff was hired by SCPD as an officer in 1995 and was promoted to the rank of Detective in 2001.  In or around 2003, he began serving in the SCPD's Criminal Intelligence Section as a street gang investigator.  Plaintiff had an excellent record of performance with the SCPD.  Between 1995 and 2015, Plaintiff was not subject to any disciplinary proceedings whatsoever with the SCPD.

20.     Plaintiff served the County of Suffolk honorably as a detective.  He treated colleagues and members of the community with civility and respected suspects' rights under the law.

21.     SCPD has adopted the SCPD Rules and Procedures "to provide Department members with a clear understanding of the constraints and expectations relating to the performance of their duties." ("SCPD Rules and Procedures")

22.     SCPD actions against Plaintiff are in direct contradiction to the various SCPD Rules and Procedures.

23.     For most of his tenure at SCPD, Plaintiff was the only black member of his unit, and he often experienced incidents of workplace hostility:

   a.     For a four- to five-year period starting in 2010, Plaintiff's mail was being opened without his permission at the direction of his then-commanding officer, Detective James Hickey ("Hickey"), which upon information and belief was not done to any of the white detectives in Plaintiff's unit.

   b.     Hickey also referred to Plaintiff as "boy" on multiple occasions.

4

    c.      Hickey denied Plaintiff overtime pay for doing presentations on gang awareness while white officers were allowed to receive overtime pay for the same kind of presentations.

    d.      In or around 2013 Plaintiff found white supremacy hate literature placed in his mailbox. Upon information and belief he was the only recipient of such literature.

24.     Plaintiff also experienced more subtle acts of racial hostility.  For example, while white officers in Plaintiff's unit kept personal photographs on display in their work areas, Plaintiff would find his personal photographs taken down and thrown into the garbage.

25.     In another instance, Plaintiff's assigned police vehicle was taken from him without explanation, reason or justification and given to another (white) detective.

26.     Throughout his tenure with the SCPD, as a result of behavior to which he was subjected, Plaintiff feared that certain of his superiors in the SCPD would use any (even slight) error on his part as a pretext to harass him, or to subject him to disproportionate penalties in the terms of his employment.

27.     In 2015, Plaintiff's ex-girlfriend (with whom he had had a relationship over the span of approximately fifteen years) filed false sexual assault allegations against him.  Plaintiff was cleared of the false sexual assault charges.

28.     The SCPD used the filing of these charges against Plaintiff to systematically harass, discriminate, intimidate and abuse Plaintiff and to subject him to adverse employment actions.

29.     Even after Plaintiff was cleared of the allegations against him, the SCPD continued to use the allegations to humiliate and harass him and to subject him to adverse employment actions that were not warranted by Department protocol.

30.     Other white officers who were found guilty of other serious offenses were not

subjected to harassment, humiliation or other adverse employment actions, as was Plaintiff.

***The SCPD Is Known For Unlawful Discrimination Against Civilians And In Its Workforce***

31.     The SCPD is widely known for its problems with race relations. The Department's record has been blemished over the past several decades by numerous complaints of racially-motivated police misconduct.  In fact, the SCPD's record was so marred that it eventually caught the attention of the U.S. Department of Justice, which began investigating civilian and other complaints against the Department.

32.     The investigation led to a settlement wherein the SCPD has been subject to ongoing federal monitoring and periodic reporting obligations.

33.     Indeed, the SPCD's record of discrimination has been well-publicized.  A simple internet search for the words "Suffolk County Police Department Discrimination" brings up numerous news articles and other media results regarding the Department's troubled history with race and its treatment of minorities.

34.     The SCPD's history of poor race relations and discriminatory conduct was not only evident in its outward-facing interactions with the community of Suffolk County; it also infected the Department internally and extended to minority officers and employees.

***Plaintiff Is Arrested In 2015 Based On False Allegations By His Ex-Girlfriend***

35.     On October 1, 2015, Plaintiff's ex-girlfriend filed a false complaint of sexual assault against him at the Fifth Precinct of the SCPD.

36.     Under the SCPD Rules and Procedures, any complaint against an officer of the department should be referred to the Department's IAB for an investigation into the allegations.

37.     The events that followed the false sexual assault complaint were characterized by numerous abuses of power and violations of Plaintiff's rights on the part of the SCPD.  The actions of the SCPD pertaining to Plaintiff's arrest provide important context for the SCPD's

conduct relating to Plaintiff's employment thereafter.

38.     Upon information and belief, in direct violation of SCPD procedure and protocol, Defendant O'Brien, a Detective Lieutenant of the Fifth Squad Detectives, was notified of the complaint.

39.     Upon information and belief, O'Brien, again in direct violation of SCPD procedure and protocol, passed the information along to then-Chief of Detectives William Madigan ("Madigan") and Plaintiff's former commanding officer, Hickey.

40.     Upon information and belief, again, in direct violation of SCPD procedure and protocol, the SCPD bypassed proper procedure. O'Brien, Madigan, and Hickey determined that O'Brien would oversee the next steps taken with respect to the complaint.

41.     It is a violation of the SCPD Rules and Procedures for the Fifth Squad to handle the complaint and for the complaint not to have been submitted to IAB for review and investigation.

42.     The day after the complaint, on October 2, 2015, O'Brien improperly arrested Plaintiff at police headquarters in front of his colleagues.

43.     Upon information and belief, O'Brien chose to arrest Plaintiff in front of his colleagues specifically for the sole purpose of humiliating him.  Upon Plaintiff's arrest, O'Brien took Plaintiff's work and personal phones from him.

44.     O'Brien told Plaintiff that the SCPD had a search warrant for his home, for the purpose of locating and retrieving (i) the clothes Plaintiff had been wearing at the time of the alleged assault, and (ii) Plaintiff's personal handguns, which were licensed and legally owned.

45.     Despite Plaintiff requesting to see the search warrant, O'Brien refused to show Plaintiff the warrant.

46.     O'Brien told Plaintiff that Plaintiff needed to provide the codes to his home

security system and to his in-home safe.  O'Brien stated that if Plaintiff did not provide that information then officers would kick in Plaintiff's front door and damage his home.  O'Brien then informed Plaintiff that he was going to send two detectives to Plaintiff's home to conduct a search of the premises.

47.     Plaintiff later learned that the "two detectives" sent by O'Brien were Detectives Walker and Sheehan, who both specialized in drug enforcement and drug search warrants. Neither Walker nor Sheehan would typically be assigned to execute a warrant for clothes and licensed handguns.

48.     Upon information and belief, O'Brien sent narcotics detectives under a belief that they would find illegal drugs because Plaintiff was a black man.  There were no illegal drugs in Plaintiff's home and therefore Walker and Sheehan found none.

49.     Notwithstanding that, upon information and belief, they conducted a search of Plaintiff's home that far exceeded the parameters of any legitimate warrant to obtain Plaintiff's clothing and handguns.

50.     To this day, despite numerous requests, Plaintiff still has not seen a copy of the warrant that O'Brien purportedly relied on to order a search of Plaintiff's home.  Upon information and belief, no such warrant ever existed.  In fact, the paperwork on the case had been done only twenty minutes or so prior to Plaintiff's arrest, and therefore there would not have been enough time to go to a judge and obtain a search warrant in that short amount of time.

51.     The Fifth Squad Detectives, under the direction of O'Brien, also confiscated Plaintiff's vehicle and brought it to the Fifth Precinct in Patchogue, New York.  The officers who took his car never completed impound paperwork or provided Plaintiff with a property receipt, both of which would be required for any lawful seizure.

52.     Upon information and belief, the Fifth Precinct conducted an unlawful,

8

warrantless search of Plaintiff's vehicle without his consent.

53.    The SCPD refused to return Plaintiff's clothing and personal firearms to him.

54.    To this day, Plaintiff has not recovered his property and, upon information and belief, his property remains in the custody and control of the SCPD.

*__The SCPD Continues Its Campaign Of Harassment Against Plaintiff In The Workplace, Altering The Terms And Conditions Of His Employment__*

55.    On October 7, 2015, the SCPD issued personnel order 15-188b, suspending Plaintiff from duty without pay, beginning as of Friday October 2, 2015 at the time of his arrest. Plaintiff protested that the suspension was based on a false and unlawful arrest and malicious prosecution.   Sometime during the month of October 2015 the SCPD issued a second personnel order, 15-188a, to all employees, which stated the criminal charge against Plaintiff and the underlying details of that charge.   That second personnel order improperly disclosed information regarding a confidential pending investigation, in direct contravention of SCPD policies and procedures.

56.    Upon information and belief, the purpose of issuing that second personnel order was to humiliate and harass Plaintiff.   That improper personnel order was subsequently deleted from the system – which was also a violation of protocol – so its origins could not be proven or traced.

57.    Plaintiff was reinstated to full duty status on November 2, 2015 pursuant to personnel order 15-188b.   The full duration of his suspension was without pay for 31 days.   The 31-day duration violated SCPD rules and procedures, which provide that a member of the Department can be suspended for a maximum of 30 days without pay.

58.    Plaintiff initially returned to his work in the Criminal Intelligence Division under the same terms and conditions that had existed prior to his arrest, except that he was required to leave his service weapon at work and sign it out each morning in an official SPCD book used for

that purpose.

59.     Several weeks later, Plaintiff was advised that he was receiving an involuntary transfer out of the Criminal Intelligence Section (where he had been a street gang expert and instructor specializing in MS-13 for over a decade) to one of the general detective squads.

60.     The general squad is less prestigious then the Criminal Intelligence Section. Plaintiff's placement with the general detective squad was much less desirable than his position with the Criminal Intelligence Section.  Plaintiff was not permitted to do the similar work he had been doing in the Criminal Intelligence Section.

61.     Upon information and belief, O'Brien and Detective Lieutenant William Burke arranged for Plaintiff's involuntary transfer.    Plaintiff was the only black detective in the Criminal Intelligence Section, and had been the only black detective in that section for years, when he was involuntarily transferred out of that squad. There was no legitimate or non-discriminatory purpose for the involuntary transfer.

62.     Upon information and belief, the involuntary transfer was motivated solely by racial animus against Plaintiff.

63.     In January of 2016 Plaintiff was transferred to the Third Squad Detectives, which was under the oversight of Commanding Officer Detective Lieutenant Crowley ("Crowley").

64.     Crowley informed Plaintiff that, on orders from Defendant Gigante, the Chief of Detectives, Plaintiff would be assigned as the administrative detective for the Third Squad, that he would not be given any overtime opportunities, and that he would not be allowed to work any night tours (and therefore would not be eligible for night differential pay). Plaintiff received few to no overtime opportunities, and little to no overtime pay, for the remainder of his time with the SCPD.

*The Charges Against Plaintiff Are Dismissed; The SCPD Continues Harassing Plaintiff*

65.     The criminal case against Plaintiff was eventually dismissed on October 5, 2016.
Crowley had been replaced by Defendant Pirone.  Pirone called Plaintiff at home on the evening
of October 5 and Plaintiff informed Pirone that his case had been dismissed.

66.     When Plaintiff appeared for work on October 7, Pirone informed Plaintiff that he
would not be allowed to take his service weapon home, and that Plaintiff would be required to
sign his weapon out every morning and back in every night using a paper calendar Pirone
supplied.   There was no legitimate, lawful, or non-discriminatory purpose for requiring Plaintiff
to sign his weapon in and out every day after the charges against him had been dismissed.
Pirone ordered Plaintiff not to tell anyone about his new procedure.

67.     Plaintiff felt deeply humiliated and demeaned by having to sign his weapon out at
the beginning and back in at the end of each day.  Upon information and belief, the whole
purpose of having Plaintiff go through that daily process was to cause him to feel demeaned and
humiliated.

68.     In October 2016, Plaintiff contacted George Michels, the delegate of the Suffolk
Detectives Association, for the purpose of filing a grievance regarding the discriminatory
practices and the return of his personal property.

69.     Throughout October and November of 2016, Plaintiff undertook efforts to have
his personal property returned, to be returned to the Criminal Intelligence Section, and to obtain
back pay for the period of his 2015 suspension.  Plaintiff was entitled to these remedies since the
charges were dismissed.  Plaintiff had numerous conversations with Pirone about these issues.
Plaintiff notifed Sini, the Police Commissioner, that his personal property had not yet been
returned by filing a 10-42 grievance request, and by having his then-attorney fax and mail a letter
to Sini informing him that Plaintiff's property was still being improperly held.

70.     On November 3, 2016, Plaintiff submitted a formal grievance (commonly known as a 10-42) to request a meeting with Defendant Barry, Deputy Commissioner.  Plaintiff complied with Department protocol by giving the 10-42 to Pirone in the first instance.  Plaintiff also sent a text message to Pirone, informing Pirone that he intended to go to the Suffolk County legislature to seek help in remedying the discriminatory treatment against him.

71.     Plaintiff then received a call from Pirone, in which Pirone asked Plaintiff to hold the 10-42 in abeyance until November 8, 2016.  Pirone said he should be able to return Plaintiff's property by November 8, but November 8 passed with no further updates from Pirone and Plaintiff's property was not returned to him.

72.     On November 14, 2016, Plaintiff filed three new formal grievances, addressed to the Chief of the Department, the Police Commissioner, and the Deputy Commissioner.  Consistent with Department protocol, Plaintiff gave the grievances to Pirone.

73.     The grievances addressed charges of corruption and discrimination, but did not contain further details because Plaintiff feared retaliation from Pirone and his other superiors if they reviewed the contents of the 10-42.  Plaintiff never received any response to any of the November 14 grievances.

74.     On January 16, 2017, Plaintiff responded to an email from Sergeant Robert Lehman ("Lehman") of the IAB regarding the IAB investigation relating to the complaint by his ex-girlfriend.  Plaintiff specifically noted that he had not received fair or impartial treatment during the investigation, arrest, or aftermath of the case.

75.     Plaintiff copied Defendant MacLaughlin, the Commanding Officer of the IAB, on the email for the purpose of notifying her that he was being treated in a discriminatory manner so that the IAB would open an investigation into potential racial discrimination against him.  Indeed, it is the responsibility of the IAB to open an investigation when told of wrongdoing

within the Department.  MacLaughlin took no action.

76.     Plaintiff was interviewed by the IAB on January 25, 2017. The next day, on January 26, 2017, Plaintiff was informed by Pirone and Lehman that Plaintiff was cleared in the investigation.   Lehman specifically told Pirone by phone, with Plaintiff present, that the IAB determined that Plaintiff had not committed any wrongdoing and that the IAB case was closed.

77.     Notwithstanding these statements by Lehman, the IAB never provided Plaintiff with the usual paperwork notifying him of the results of the investigation.  Upon information and belief, Plaintiff's superiors – including Pirone and Gigante – wanted it to appear as if the investigation was still open in order to justify their subsequent treatment of Plaintiff.

78.     Then, on March 29, 2017 – more than two months after Plaintiff was told by Lehman that he had been cleared in the IAB investigation – Plaintiff was called in to Pirone's office.  Pirone informed Plaintiff that Pirone had received a phone message stating that Plaintiff would need to call Sergeant Gansrow ("Gansrow"), from the Medical Evaluation Unit, about taking a fit for duty examination.

79.     Plaintiff then spoke with Gansrow, from the Medical Evaluation Unit, and Gansrow said that Plaintiff would need to sign for a letter that purportedly contained an order for Plaintiff to appear before Dr. Coyle to take a fit for duty examination.  This was not how an order to take a fit for duty examination typically would be given to an SCPD officer.

80.     Plaintiff asked where that instruction was coming from and Gansrow stated first that it came from a Chief whose name started with the letter "G," but then stated that it came from IAB but he would not tell Plaintiff who at IAB had purportedly originated the request. Upon information and belief, the "Chief" was Gigante.

81.     Gansrow said that Plaintiff would need to sign for a letter that purportedly contained an order for Plaintiff to appear before Dr. Coyle to take a fit for duty examination.

13

This was not how an order to take a fit for duty examination typically would be given to an SCPD officer.  Moreover, Plaintiff had conducted a search and determined that there was no "Dr. Coyle" in Cutchogue, NY.  Plaintiff had not seen the envelope or its contents and he therefore refused to sign for it.

82.     On April 12, 2017, Pirone told Plaintiff that members of the IAB were on their way to the Third Precinct to get Plaintiff to accept the sealed letter and that, if he refused to accept it, he would be brought up on insubordination charges.  When Captain Kevin Kane ("Kane") and Lieutenant John Fives from the IAB arrived, Kane ordered Plaintiff to go to the Medical Evaluation Unit.  Plaintiff stated that he would go to the Medical Evaluation Unit, but that he would not accept the sealed letter.  Plaintiff further noted that this was not the protocol for a fit for duty examination, and that it would not be lawful to force him to sign for the sealed envelope with unknown contents.  Kane responded that he would call to see if Plaintiff could just go to the Medical Evaluation Unit.

83.     Kane then spoke with Chief Gigante by phone in a separate room for approximately thirty (30) minutes.  At the end of the call, Kane informed Plaintiff that Plaintiff would have to accept the letter.  Plaintiff reiterated that he would go to the Medical Evaluation Unit but that he would not accept the letter, and he expressed concern that the letter could contain a false statement that he is unwell and not fit for duty, which he would be acknowledging with his signature, and which would then be used as a pretext for an adverse employment action against him (including suspension, termination, or worse).

84.     When Plaintiff refused again to sign for the sealed letter, Kane suspended Plaintiff on the spot and ordered him to turn over his identification card, his shield, and his access key for the Third Precinct.

85.     The subsequent written suspension order stated that Plaintiff disobeyed an order

to report to the Medical Evaluation Unit.  This was false.  Plaintiff had clearly indicated that he would report to the Medical Evaluation Unit.

86.     Plaintiff was suspended without pay for a period of thirty (30) days based on an unlawful charge.

87.     During the period of Plaintiff's suspension, his attorney sent multiple communications to Sini and Barry, specifically to assert that the Department was discriminating against Plaintiff on the basis of his race.  Among other things, Plaintiff's attorney specifically asked why "the only black SCPD Criminal Intelligence Detective" had been placed "on the sidelines," and noting that white detectives were not treated the same way by the Department.  Plaintiff's attorney further reiterated what those in the SCPD already knew: that Plaintiff had not disobeyed an order to go to the Medical Evaluation Unit.  Just days after Plaintiff returned to work after serving his suspension, the Department suspended him again.  Upon information and belief, at least part of the Department's motive in suspending Plaintiff a second time was to retaliate against him for complaining about racial discrimination by the SCPD.

88.     The SCPD notified Plaintiff that if he was found to be "guilty" of the purported offense underlying the second suspension, Plaintiff would be discharged.   Not wanting to be involuntarily and illegally terminated, which would have deprived Plaintiff of his long- and hard-earned pension, Plaintiff was forced to announce his retirement from the force, effective as of June 17, 2017.

89.     After he departed the SCPD, Plaintiff's attorneys contacted the SCPD to reiterate Plaintiff's complaints about the discriminatory conduct against him, and in June 2018, Plaintiff met with Departmental Inspector Hanley for an interview.

### *The SCPD Treats White Officers More Favorably Than Plaintiff, A Black Officer*

90.     As described above, Plaintiff faced an onslaught of almost constant harassment by

his superiors at the SCPD between October of 2015 and May of 2017.  Starting with Plaintiff's

false arrest on October 2, 2015, and continuing until Plaintiff was forced to retire, the

Department broke its own rules, violated the law and Department protocols, and infringed on

Plaintiff's rights at every turn.  Upon information and belief, this was all carried out with the

goal of forcing Plaintiff out of the SCPD because of his race.

91.     That Plaintiff's superiors at the SCPD were motivated by racial animus is proved,

in part, by the more favorable treatment of white officers at the SCPD under comparable

circumstances.

92.     For instance, a white detective named Thomas Walsh ("Walsh") misrepresented

his physical capabilities to the SCPD on four separate occasions. Upon information and belief,

the SCPD never attempted to subject Walsh to a fit for duty examination even though there was

cause to do so.  In contrast, the SCPD purportedly intended to force Plaintiff to take a

manufactured fit for duty examination even though there was no legitimate reason to do so.

93.     Walsh had four IAB investigations pending against him at the time of his

retirement.  Upon information and belief, when Walsh retired he was permitted to keep his police

uniform, pistol permit, firearm and badge.  In contrast, Plaintiff was not allowed to keep any of

these things upon leaving the SCPD.

94.     The SCPD discriminated against Plaintiff by, among other things, unjustifiably

prolonging an IAB investigation against Plaintiff even after he had been cleared of any

wrongdoing; by forcing him to and purporting to issue him orders to take fit for duty

examinations; by placing Plaintiff on wrongful suspensions; by refusing to return Plaintiff's

personal property and ignoring multiple formal grievances filed by Plaintiff to obtain the

property; and by taking disciplinary actions against Plaintiff that were unwarranted and more

harsh than disciplinary actions taken against the Department's white officers.

95.     At all times relevant to this Complaint, the Department had a custom and practice of discriminating against racial minorities, which custom and practice included harassing minorities and treating minorities more harshly than white people, and which custom and practice was also followed internally with respect to employees, including Plaintiff.

96.     Plaintiff notified the Department on numerous occasions that he was being subjected to harassment, and that such harassment constituted discrimination based on his race.

97.     Each time Plaintiff notified the Department about these instances of harassment and discrimination, the Department (i) failed to investigate or address Plaintiff's allegations, and (ii) actually retaliated against Plaintiff by escalating the harassment against him thereafter.

98.     On or about June 11, 2018, Plaintiff filed a verified complaint of discrimination with the New York State Division of Human Rights ("DHR"), Case No. 10195325, alleging that, by virtue of the foregoing wrongful conduct, Defendants had, among other things, subjected him to racial discrimination and a racially hostile work environment, and had subjected him to retaliation (the "DHR Complaint").  The DHR Complaint was also cross-filed as a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 16G-2018-03759 (the "EEOC Charge").

99.     On or about January 31, 2019, the DHR issued a Determination and Order after Investigation of the DHR Complaint.  On or about April 4, 2019, the EEOC issued its Dismissal and Notice of Rights (the "EEOC Right-to-Sue Letter") based on the DHR Determination.  A copy of the EEOC Right-to-Sue Letter is attached to this Complaint as Exhibit A.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION:**
**Discrimination and Hostile Work Environment**
**On the Basis of Race (Black)**
**In Violation of Title VII of the Civil Rights Act of 1964,**
**As Amended, 42 U.S.C. § 2000e *et seq*.**
**(Against All Defendants)**

100.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1through 99 of this Complaint as if set forth again in their entirety.

101.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black).

102.    As set forth more fully above, the racial discrimination and racially hostile work environment included, without limitation:

a.    Opening Plaintiff's mail without his authorization;

b.    Using racial epithets when referred to Plaintiff;

c.    Placing White supremacy literature in Plaintiff's mailbox;

d.    Removing Plaintiff's personal photographs from his work area and placing them in the garbage;

e.    Reassigning the police car designated to Plaintiff to a White police officer; and

f.    Subjecting Plaintiff to severe scrutiny.

103.    As set forth more fully above, Defendants also discriminated against Plaintiff on the basis of his race in the terms and conditions of his employment, by, among other things:

a.    Denying Plaintiff opportunities to earn overtime pay;

b.    Denying Plaintiff opportunities to work night tours (at a higher rate of pay);

c.    Demoting Plaintiff's assignment from an elite squad in which he had been the only Black detective for years to a general detective squad;

18

d.      Subjecting Plaintiff to disparate, discriminatory and demeaning treatment in connection with the processing of his arrest based on false allegations of sexual assault;

e.      Depriving Plaintiff of his personal property (his clothing and personal handguns);

f.      Disclosing confidential details of the investigation into Plaintiff's arrest based on false allegations of sexual assault to all employees in the SCPD;

g.      Requiring Plaintiff to leave his service weapon at work and to sign for it each day, even after the criminal case against Plaintiff was dismissed;

h.      Ordering Plaintiff to appear for a baseless fit-for-duty examination purely for reasons of racial animus and in furtherance of Defendants' pattern and practice of racial discrimination;

i.      Subjecting Plaintiff to disparate discipline that was harsher than the discipline imposed on White officers for similar (or worse) offenses; and

j.      Depriving Plaintiff of property (his police uniform, pistol permit, firearm and badge) to which he was entitled upon his "retirement."

104.    As set forth more fully above, Defendants also subjected Plaintiff to a hostile work environment that included retaliatory harassment and retaliatory acts in response to his opposition to Defendants' discriminatory practices and his engaging in protected activity.

105.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin participated in, approved of, condoned, ratified, and failed to prevent and correct the discrimination and the hostile work environment on the basis of race (Black) perpetrated against Plaintiff.

106.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants perpetrated against Plaintiff were continuing and intentional in nature.

107.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants perpetrated against Plaintiff resulted in the constructive termination of his employment.

108.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

109.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff also has suffered the loss of property (his police uniform, pistol permit, firearm and badge) to which he was entitled upon his "retirement."

110.    Because Defendants acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**SECOND CAUSE OF ACTION:**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964,**
**As Amended, 42 U.S.C. § 2000e *et seq*.**
**(Against All Defendants)**

111.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 110 of this Complaint as if set forth again in their entirety.

112.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin retaliated against Plaintiff for his protected complaints of discrimination and a hostile work environment on the basis of race (Black), and other unlawful conduct. Without limitation, Defendants retaliated against Plaintiff by, among other things:

a.      Ignoring or otherwise failing to investigate or address Plaintiff's repeated

complaints of unlawful racial discrimination;

b.    Ordering Plaintiff to appear for a baseless fit-for-duty examination in response to his protected complaints of racial discrimination;

c.    Suspending Plaintiff on false charges of insubordination in response to his protected complaints of racial discrimination;

d.    Escalating the racial discrimination and harassment against Plaintiff in response to his protected complaints of racial discrimination;

e.    Subjecting Plaintiff to disparate treatment, including disparate (harsher) discipline than that given to White police officers;

f.    Subjecting Plaintiff to stricter scrutiny than White police officers; and

g.    Constructively terminating Plaintiff's employment.

113.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin participated in, approved of, condoned and ratified the retaliation inflicted on Plaintiff.

114.    Defendants' retaliation, among other things, against Plaintiff resulted in the constructive termination of his employment.

115.    As a result of the retaliation inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

116.    Because Defendants acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**THIRD CAUSE OF ACTION**
**Discrimination and Hostile Work Environment**
**On the Basis of Race (Black)**
**In Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

117.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 116 of this Complaint as if set forth again in their entirety.

118.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black).

119.    As set forth more fully above, the racial discrimination and racially hostile work environment included, without limitation:

a.      Opening Plaintiff's mail without his authorization;

b.      Using racial epithets when referred to Plaintiff;

c.      Placing White supremacy literature in Plaintiff's mailbox;

d.      Removing Plaintiff's personal photographs from his work area and placing them in the garbage;

e.      Reassigning the police car designated to Plaintiff to a White police officer; and

f.      Subjecting Plaintiff to severe scrutiny.

120.    As set forth more fully above, Defendants also discriminated against Plaintiff on the basis of his race in the terms and conditions of his employment, by, among other things:

a.      Denying Plaintiff opportunities to earn overtime pay;

b.      Denying Plaintiff opportunities to work night tours (at a higher rate of pay);

c.      Demoting Plaintiff's assignment from an elite squad in which he had been the only Black detective for years to a general detective squad;

d.      Subjecting Plaintiff to disparate, discriminatory and demeaning treatment in

connection with the processing of his arrest based on false allegations of sexual assault;

e.    Depriving Plaintiff of his personal property (his clothing and personal handguns);

f.    Disclosing confidential details of the investigation into Plaintiff's arrest based on false allegations of sexual assault to all employees in the SCPD;

g.    Requiring Plaintiff to leave his service weapon at work and to sign for it each day, even after the criminal case against Plaintiff was dismissed;

h.    Ordering Plaintiff to appear for a baseless fit-for-duty examination purely for reasons of racial animus and in furtherance of Defendants' pattern and practice of racial discrimination;

i.    Subjecting Plaintiff to disparate discipline that was harsher than the discipline imposed on White officers for similar (or worse) offenses; and

j.    Depriving Plaintiff of property (his police uniform, pistol permit, firearm and badge) to which he was entitled upon his "retirement."

121.    As set forth more fully above, Defendants also subjected Plaintiff to a hostile work environment that included retaliatory harassment and retaliatory acts in response to his opposition to Defendants' discriminatory practices and his engaging in protected activity.

122.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin participated in, approved of, condoned, ratified, and failed to prevent and correct the discrimination and the hostile work environment on the basis of race (Black) perpetrated against Plaintiff.

123.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants perpetrated against Plaintiff were continuing and intentional in nature.

124.    The discrimination and the hostile work environment on the basis of race (Black)

that Defendants perpetrated against Plaintiff altered the terms and conditions of Plaintiff's employment with the SCPD.

125.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants perpetrated against Plaintiff resulted in the constructive termination of his employment.

126.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

127.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff also has suffered the loss of property (his police uniform, pistol permit, firearm and badge) to which he was entitled upon his "retirement."

128.    Because Defendants acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of 42 U.S.C. § 1981**
**(Against All Defendants)**

129.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 128 of this Complaint as if set forth again in their entirety.

130.    As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin retaliated against Plaintiff for his protected complaints of discrimination and a hostile work environment on the basis of race (Black), and other unlawful

conduct.  Without limitation, Defendants retaliated against Plaintiff by, among other things:

 a. Ignoring or otherwise failing to investigate or address Plaintiff's repeated complaints of unlawful racial discrimination;

 b. Ordering Plaintiff to appear for a baseless fit-for-duty examination in response to his protected complaints of racial discrimination;

 c. Suspending Plaintiff on false charges of insubordination in response to his protected complaints of racial discrimination;

 d. Escalating the racial discrimination and harassment against Plaintiff in response to his protected complaints of racial discrimination;

 e. Subjecting Plaintiff to disparate treatment, including disparate (harsher) discipline than that given to White police officers;

 f. Subjecting Plaintiff to stricter scrutiny than White police officers; and

 g. Constructively terminating Plaintiff's employment.

131. As set forth more fully above, Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin participated in, approved of, condoned and ratified the retaliation inflicted on Plaintiff.

132. The retaliation that Defendants inflicted on Plaintiff altered the terms and conditions of Plaintiff's employment with the SCPD.

133. Defendants' retaliation, among other things, against Plaintiff resulted in the constructive termination of his employment.

134. As a result of the retaliation inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be

determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

135.     Because Defendants acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**FIFTH CAUSE OF ACTION**
**Disparate Treatment In Violation of Civil Rights**
**Under 42 U.S.C. § 1983**
**(Against the SCPD)**

136.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 135 of this Complaint as if set forth again in their entirety.

137.     At all times relevant to this Complaint, the Department had a custom and practice of discriminating against racial minorities, which custom and practice included harassing minorities and treating minorities more harshly than white people, and which custom and practice was also followed internally with respect to employees, including Plaintiff.

138.     This custom and practice of discriminating against employees who are racial minorities was instituted at the top-most level of Defendant SCPD, and was implemented by, among others, Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin.

139.     As set forth more fully above, Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black).

140.     As set forth more fully above, the racial discrimination and racially hostile work environment included, without limitation:

a.     Opening Plaintiff's mail without his authorization;

b.     Using racial epithets when referred to Plaintiff;

c.     Placing White supremacy literature in Plaintiff's mailbox;

d.     Removing Plaintiff's personal photographs from his work area and placing them

in the garbage;

e.      Reassigning the police car designated to Plaintiff to a White police officer; and

f.      Subjecting Plaintiff to severe scrutiny.

141.  As set forth more fully above, Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, also discriminated against Plaintiff on the basis of his race in the terms and conditions of his employment, by, among other things:

a.      Denying Plaintiff opportunities to earn overtime pay;

b.      Denying Plaintiff opportunities to work night tours (at a higher rate of pay);

c.      Demoting Plaintiff's assignment from an elite squad in which he had been the only Black detective for years to a general detective squad;

d.      Subjecting Plaintiff to disparate, discriminatory and demeaning treatment in connection with the processing of his arrest based on false allegations of sexual assault;

e.      Depriving Plaintiff of his personal property (his clothing and personal handguns);

f.      Disclosing confidential details of the investigation into Plaintiff's arrest based on false allegations of sexual assault to all employees in the SCPD;

g.      Requiring Plaintiff to leave his service weapon at work and to sign for it each day, even after the criminal case against Plaintiff was dismissed;

h.      Ordering Plaintiff to appear for a baseless fit-for-duty examination purely for reasons of racial animus and in furtherance of Defendants' pattern and practice of racial discrimination;

i.      Subjecting Plaintiff to disparate discipline that was harsher than the discipline imposed on White officers for similar (or worse) offenses; and

j.      Depriving Plaintiff of property (his police uniform, pistol permit, firearm and

badge) to which he was entitled upon his "retirement."

142.    As set forth more fully above, Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, also subjected Plaintiff to a hostile work environment that included retaliatory harassment and retaliatory acts in response to his opposition to Defendants' discriminatory practices and his engaging in protected activity.

143.    As set forth more fully above, Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, participated in, approved of, condoned, ratified, and failed to prevent and correct the discrimination and the hostile work environment on the basis of race (Black) perpetrated against Plaintiff.

144.    The discrimination and the hostile work environment on the basis of race (Black) that Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, perpetrated against Plaintiff were continuing and intentional in nature.

145.    The discrimination and the hostile work environment on the basis of race (Black) that Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, perpetrated against Plaintiff constituted a violation of Plaintiff's federally protected rights, and altered the terms and conditions of Plaintiff's employment with the SCPD.

146.    The discrimination and the hostile work environment on the basis of race (Black) that Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, perpetrated against Plaintiff resulted in the constructive termination of his employment.

147.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a

result of lost earnings), plus interest, in an amount to be determined at trial, but not less than

Seven Hundred Fifty Thousand Dollars ($750,000.00).

148.   As a result of the discrimination and the hostile work environment on the basis of

race (Black) inflicted on him, Plaintiff also has suffered the loss of property (his police uniform,

pistol permit, firearm and badge) to which he was entitled upon his "retirement."

149.   Because Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien,

Pirone, Barry and MacLaughlin, acted intentionally, with malice or reckless indifference to

Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be

determined at trial, but not less than One Million Dollars ($1,000,000.00).

**SIXTH CAUSE OF ACTION**
**Retaliation In Violation of Civil Rights**
**Under 42 U.S.C. § 1983)**
**(Against the SCPD)**

150.   Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through

149 of this Complaint as if set forth again in their entirety.

151.   At all times relevant to this Complaint, the Department had a custom and practice

of retaliating against racial minorities, which custom and practice included retaliatory harassment

of minorities and treating minorities more harshly than white people, and which custom and

practice was also followed internally with respect to employees, including Plaintiff.

152.   This custom and practice of retaliating against employees who are racial

minorities was instituted at the top-most level of Defendant SCPD, and was implemented by,

among others, Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin.

153.   As set forth more fully above, Defendant SCPD, acting through Defendants Sini,

Gigante, O'Brien, Pirone, Barry and MacLaughlin, retaliated against Plaintiff for his protected

complaints of discrimination and a hostile work environment on the basis of race (Black), and

other unlawful conduct.  Among other things, Defendant SCPD, acting through Defendants Sini,

29

Gigante, O'Brien, Pirone, Barry and MacLaughlin, retaliated against Plaintiff by

   a.   Ignoring or otherwise failing to investigate or address Plaintiff's repeated complaints of unlawful racial discrimination;

   b.   Ordering Plaintiff to appear for a baseless fit-for-duty examination in response to his protected complaints of racial discrimination;

   c.   Suspending Plaintiff on false charges of insubordination in response to his protected complaints of racial discrimination;

   d.   Escalating the racial discrimination and harassment against Plaintiff in response to his protected complaints of racial discrimination;

   e.   Subjecting Plaintiff to disparate treatment, including disparate (harsher) discipline than that given to White police officers;

   f.   Subjecting Plaintiff to stricter scrutiny than White police officers; and

   g.   Constructively terminating Plaintiff's employment.

154.   As set forth more fully above, Defendant SCPD participated in, approved of, condoned and ratified the retaliation inflicted on Plaintiff.

155.   The retaliation that Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, inflicted on Plaintiff constituted a violation of Plaintiff's federally protected rights, and altered the terms and conditions of Plaintiff's employment with the SCPD.

156.   Defendant's retaliation, among other things, against Plaintiff resulted in the constructive termination of his employment.

157.   As a result of the retaliation inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including

diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

158.     Because Defendant SCPD, acting through Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**SEVENTH CAUSE OF ACTION**
**Disparate Treatment In Violation of Civil Rights**
**Under 42 U.S.C. § 1983**
**(Against Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin**
**in their official and individual capacities)**

159.     Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 158 of this Complaint as if set forth again in their entirety.

160.     At all relevant times alleged herein, Sini was the Police Commissioner for the SCPD and was acting under color of law.

161.     At all relevant times alleged herein, Gigante was the Chief of Detectives for the SCPD and was acting under color of law.

162.     At certain relevant times alleged herein, O'Brien was the Commander of the general detectives unit in the Fifth Precinct of the SCPD and was acting under color of law.

163.     At certain relevant times alleged herein, Pirone was the Commander of the general detectives unit in the Third Precinct of the SCPD, was Plaintiff's direct supervisor and was acting under color of law.

164.     At all relevant times alleged herein, Barry was the Deputy Commissioner for the SCPD and was acting under color of law.

165.     At all relevant times alleged herein, MacLaughlin was the Commanding Officer for the IAB for the SCPD and was acting under color of law.

166.     As set forth more fully above, Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black).   Among other things:

a.      As set forth more fully above, and upon information and belief, Sini personally participated in, oversaw and/or directed the harassing conduct against Plaintiff at the SCPD, including the issuance of the discriminatory order that Plaintiff take a fit-for-duty examination, and the deliberate disregard of Plaintiff's numerous complaints of racial discrimination.

b.      As set forth more fully above, and upon information and belief, Gigante personally oversaw and directed the harassing conduct against Plaintiff at the SCPD, including the discriminatory order demoting Plaintiff from the Criminal Intelligence Section to the Third Squad; and the improper discriminatory "order" to Plaintiff to sign for a sealed envelope without allowing Plaintiff first to review the contents of the envelope.

c.      As set forth more fully above, O'Brien personally participated in, oversaw, and/or directed the harassing conduct against Plaintiff at the SCPD, including the discriminatory manner in which Plaintiff's false arrest was carried out; and the discriminatory assignment transferring Plaintiff from the Criminal Intelligence Section to the Third Squad.

d.      As set forth more fully above, Pirone personally participated in, oversaw, and/or directed the harassing conduct against Plaintiff at the SCPD, including the discriminatory denial of overtime opportunities and pay to Plaintiff; the discriminatory requirement that Plaintiff sign his service weapon in/out on an *ad hoc* unofficial sign-out sheet; and the improper discriminatory "order" to Plaintiff

      to sign for a sealed envelope without allowing Plaintiff first to review the contents of the envelope.

e.    As set forth more fully above, Barry personally participated in, oversaw, and/or directed the harassing conduct against Plaintiff at the SCPD, including the deliberate disregard of Plaintiff's numerous complaints of racial discrimination.

f.    As set forth more fully above, MacLaughlin personally participated in, oversaw, and/or directed the harassing conduct against Plaintiff at the SCPD, including the deliberate disregard of Plaintiff's complaints of racial discrimination, and the failure to investigate Plaintiff's complaints of racial discrimination.

167.    As set forth more fully above, Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black), and acted with malice or reckless indifference to Plaintiff's federally protected rights with respect to his employment at the SCPD.

168.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, perpetrated against Plaintiff, and the malice or reckless indifference by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin to Plaintiff's federally protected rights with respect to his employment at the SCPD, constituted a violation of Plaintiff's federally protected rights.

169.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, perpetrated against Plaintiff, and the malice or reckless indifference by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin to Plaintiff's federally protected rights with respect to his employment at the SCPD, altered the terms and conditions of Plaintiff's

employment with the SCPD.

170.    The discrimination and the hostile work environment on the basis of race (Black) that Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, perpetrated against Plaintiff, and the malice or reckless indifference by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin to Plaintiff's federally protected rights with respect to his employment at the SCPD, resulted in the constructive termination of Plaintiff's employment.

171.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

172.    As a result of the discrimination and the hostile work environment on the basis of race (Black) inflicted on him, Plaintiff also has suffered the loss of property (his police uniform, pistol permit, firearm and badge) to which he was entitled upon his "retirement."

173.    Because Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**EIGHTH CAUSE OF ACTION**
**Retaliation In Violation of Civil Rights**
**Under 42 U.S.C. § 1983**
**(Against Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin**
**in their official and individual capacities)**

174.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through

173 of this Complaint as if set forth again in their entirety.

175.    As set forth more fully above, each of Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin while acting under color of law, personally retaliated against Plaintiff for his protected complaints of discrimination and a hostile work environment on the basis of race (Black), and other unlawful conduct.  Among other things, Defendants retaliated against Plaintiff by:

    a.    Ignoring or otherwise failing to investigate or address Plaintiff's repeated complaints of unlawful racial discrimination;

    b.    Suspending Plaintiff on false charges of insubordination in response to his protected complaints of racial discrimination;

    c.    Escalating the racial discrimination and harassment against Plaintiff in response to his protected complaints of racial discrimination; and

    d.    Subjecting Plaintiff to disparate treatment, including disparate (harsher) discipline than that given to White police officers;

    e.    Subjecting Plaintiff to stricter scrutiny than White police officers; and

    f.    Constructively terminating Plaintiff's employment.

176.    As set forth more fully above, this conduct by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin constitutes unlawful retaliation in violation of 42 U.S.C. § 1983.

177.    The retaliation that Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, inflicted on Plaintiff, and the malice or reckless indifference by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin to Plaintiff's federally protected rights with respect to his employment at the SCPD, constituted a violation of Plaintiff's federally protected rights.

178.    The retaliation that Defendants Sini, Gigante, O'Brien, Pirone, Barry and

MacLaughlin, while acting under color of law, inflicted on Plaintiff, and the malice or reckless indifference by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin to Plaintiff's federally protected rights with respect to his employment at the SCPD, altered the terms and conditions of Plaintiff's employment with the SCPD.

179.    The retaliation that Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, inflicted on Plaintiff, and the malice or reckless indifference by Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin to Plaintiff's federally protected rights with respect to his employment at the SCPD, resulted in the constructive termination of Plaintiff's employment.

180.    As a result of the retaliation inflicted on him, Plaintiff has suffered the loss of earnings, including but not limited to back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), plus interest, in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00).

181.    Because Defendants Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin, while acting under color of law, acted intentionally, with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00).

**NINTH CAUSE OF ACTION**
**Conversion**
**(Against All Defendants)**

182.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 181 of this Complaint as if set forth again in their entirety.

183.    As set forth more fully above, Plaintiff has an immediate and superior right of possession to all of his personal property (his clothing and his personal handguns) that was taken

by the Defendants.

184.    Plaintiff has a superior right of possession to his clothing and personal handguns than do Defendants.

185.    Defendants, unjustifiably and without legal cause or authority, have continued to exercise unauthorized dominion and control over Plaintiff's clothing and personal handguns.

186.    Defendants' continued exercise of unauthorized dominion and control over Plaintiff's clothing and personal handguns has been to the exclusion of Plaintiff's rights.

187.    As a consequence of Defendants' foregoing deliberate and intentional acts, Plaintiff has been injured, for which he is entitled to recover his personal property.

**TENTH CAUSE OF ACTION**
**Replevin**
**(Against All Defendants)**

188.    Plaintiff repeats and re-alleges the allegations contained in Paragraphs 1 through 187 of this Complaint as if set forth again in their entirety.

189.    As set forth more fully above, Defendants took and retained Plaintiff's personal property (clothing and personal handguns).

190.    The continued detention of Plaintiff's clothing and personal handguns by Defendants is wrongful.

191.    Plaintiff demands compensation for his clothing and personal handguns that were taken and retained by Defendants.

192.    Plaintiff has no adequate remedy at law.

193.    As a consequence of Defendants' foregoing deliberate and intentional acts, Plaintiff has been injured, for which he is entitled to recover his personal property.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against each Defendant as follows:

a.   Declaring and adjudging that Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin unlawfully subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black), and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*;

b.   Declaring and adjudging that Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin unlawfully subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black), and retaliation, and thereby altered the terms and conditions of Plaintiff's employment with Defendant SCPD, all in violation of Section 1981 of Title 42 of the United States Code, 42 U.S.C. §§ 1981, *et seq.*;

c.   Declaring and adjudging that Defendants SCPD, Sini, Gigante, O'Brien, Pirone, Barry and MacLaughlin unlawfully subjected Plaintiff to discrimination and a hostile work environment on the basis of race (Black), and retaliation, all in violation of Plaintiff's federally protected civil rights under Section 1983 of Title 42 of the United States Code, 42 U.S.C. §§ 1981, *et seq.*;

d.   Granting injunctive relief by ordering the SCPD to (i) relinquish and return to Plaintiff all personal property of Plaintiff in the Department's possession, custody, and control, and (ii) give to Plaintiff all items to which retirees of the Department are entitled, including without limitation, his uniform, his pistol permit, his firearm, and his badge;

e.  Awarding Plaintiff past, present and future compensatory damages (including without limitation back pay (including lost regular wages, lost overtime wage and lost night differential wages), and front pay, with attendant benefits (including diminution in pension benefits as a result of lost earnings), interest, and any other damages permitted by law) in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000.00);

f.  Awarding Plaintiff punitive damages in an amount to be determined at trial, but not less than One Million Dollars ($1,000,000.00);

g.  Awarding prejudgment and post-judgment interest at the appropriate legal rate;

h.  Awarding Plaintiff his reasonable attorneys' fees, costs, and disbursements incurred in prosecuting this action; and

i.  Granting such other and further relief, equitable or otherwise, as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial on the merits by jury pursuant to Federal Rule of Civil Procedure 38.

Dated: New York, NY, New York
   July 3, 2019

        PHILLIPS NIZER LLP


        By:  /s/ Bradley D. Simon
          Bradley D. Simon
        485 Lexington Ave
        New York, New York 10017-0084
        (212) 977-9700
        (212) 262-5152
        bsimon@phillipsnizer.com

        *Attorneys for Plaintiff Troy Gibson*