**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

TROY GIBSON,

                              Plaintiff,                    **REPORT AND RECOMMENDATION**

     v.                                      19-cv-03871 (JMA) (ST)

SUFFOLK COUNTY POLICE DEPARTMENT,
TIMOTHY SINI, GERARD GIGANTE, JOHN
O'BRIEN, MICHAEL PIRONE, JOHN BARRY,
and JOANNE MACLAUGHLIN,

                              Defendant.
-------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On July 3, 2019, Troy Gibson ("Plaintiff") commenced this action against the Suffolk County Police Department ("SCPD"), Timothy Sini ("Sini"), Gerard Gigante ("Gigante"), John O'Brien ("O'Brien"), Michael Pirone ("Pirone"), and  JoAnn McLaughlin ("McLaughlin") (collectively, "Defendants").  Plaintiff seeks relief for Defendants' alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983, as well as for conversion and replevin.  Defendants filed a Partial Motion to Dismiss (the "Motion") Plaintiff's Title VII, § 1983, conversion, and replevin claims, asserting that those claims are in whole or in part time-barred.  The Honorable Joan M. Azrack referred Defendants' Motion to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, this Court respectfully recommends that Defendants' Motion be GRANTED IN PART and DENIED IN PART.

    I.    **BACKGROUND**

        **a.  Factual Background**

Unless otherwise indicated, all statements in this section are based on allegations in the Complaint.  SCPD is a law enforcement agency of Suffolk County.  Compl. ¶ 7, Dkt. No. 1. Plaintiff, a Black male, joined SCPD in 1995.  *Id.* ¶¶ 2, 16.  Plaintiff was promoted to Detective in 2001 and in or around 2003 began serving in SCPD's Criminal Intelligence Section as a street gang investigator.  *Id.* ¶ 2, 19.  At relevant times, the individual defendants held the following roles at SCPD: Sini was the Commissioner; Gigante was the Chief of Detectives; O'Brien was a Lieutenant Detective; Pirone was a Lieutenant Detective; Barry was the Deputy Commissioner; and McLaughlin was the Commanding Officer of the Internal Affairs Bureau ("IAB").  *Id.* ¶¶ 8-13.  Plaintiff and all individual defendants are residents of Suffolk County.  *Id.* ¶¶ 6, 8-13.

For most of his tenure at SCPD, Plaintiff was the only Black member of his unit.  *Id.* ¶ 23.  Plaintiff notes he experienced the following at SCPD: for four-to-five years beginning in 2010, Plaintiff's mail, but not his white colleagues' mail, was opened without Plaintiff's permission at the direction of his then-commanding officer Detective James Hickey ("Hickey"); Hickey referred to Plaintiff as "boy" on multiple occasions; Hickey denied Plaintiff overtime pay for performing presentations on gang awareness, though Plaintiff's white colleagues were allowed to receive overtime pay for similar presentations; in or around 2013, Plaintiff, and no one else, received white supremacy hate literature in his mailbox; though Plaintiff's white colleagues kept personal photographs displayed in their work areas, Plaintiff found his personal photographs taken down and thrown in the garbage; Plaintiff's assigned police vehicle was taken from him without reason and given to a white detective.  *Id.* ¶¶ 23-25.  The majority of the facts alleged, however, relate to a criminal complaint filed against Plaintiff.  Plaintiff asserts "SCPD used the filing of these charges against Plaintiff to systematically harass, discriminate, intimidate, and abuse Plaintiff and to subject him to adverse employment actions."  *Id.* ¶ 28.

On October 1, 2015, Plaintiff's ex-girlfriend filed against him a complaint of sexual assault at SCPD's Fifth Precinct.  *Id.* ¶ 35.  Per SCPD's rules and procedures, a complaint against a SCPD officer should be referred to SCPD's IAB for investigation.  *Id.* ¶ 36.  O'Brien, who is not alleged to be a member of SCPD's IAB, was notified of the complaint.  *Id.* ¶ 38.  O'Brien informed then-Chief of Detectives William Madigan ("Madigan") and Hickey of the complaint.  *Id.* ¶ 39.  Together, O'Brien, Madigan, and Hickey decided O'Brien would oversee the response to the complaint.  *Id.* ¶ 40.

On October 2, 2015, O'Brien arrested Plaintiff at police headquarters in view of Plaintiff's colleagues.  *Id.* ¶ 42.  O'Brien took Plaintiff's work and personal phones.  *Id.* ¶ 43.  O'Brien informed Plaintiff SCPD had a search warrant for Plaintiff's home for the purpose of locating and retrieving the clothing Plaintiff had been wearing at the time of the alleged assault and Plaintiff's personal handguns, which were licensed and legally owned.  *Id.* ¶ 44.  O'Brien told Plaintiff to provide the codes to Plaintiff's home security system and safe, otherwise officers would kick in Plaintiff's front door.  *Id.* ¶ 46.  O'Brien sent to Plaintiff's home two detectives who specialized in drug enforcement and drug search warrants.  *Id.* ¶ 47.  O'Brien also directed detectives to confiscate Plaintiff's vehicle.  *Id.* ¶ 51.  The officers who took the vehicle neither completed impound paperwork nor provided Plaintiff with a property receipt.  *Id.* ¶ 51.  O'Brien refused to show Plaintiff the search warrant.  *Id.* ¶ 45.  Despite Plaintiff's requests, he had still not been shown a copy of the warrant at the time he filed the Complaint.  *Id.* ¶ 50.  SCPD refused to return Plaintiff's clothing and personal firearms, which he still had not recovered at the time he filed the Complaint.  *Id.* ¶¶ 53-54.

On October 7, 2015, SCPD issued personnel order 15-188b.  *Id.* ¶ 55.  The order suspended Plaintiff from duty, without pay, from October 2, 2015 through November 2, 2015, a

period of thirty-one days. *Id.* ¶ 55, 58. SCPD's rules and procedures provide that a member of

SCPD can be suspended for a maximum of thirty days without pay. *Id.* ¶ 58. Despite SCPD's

policy concerning the disclosure of information related to confidential, pending investigations,

SCPD also issued in October 2015 personnel order 15-188a. *Id.* ¶ 55. This order stated the

criminal charge against Plaintiff and the details underlying that charge. *Id.* Despite protocol,

this order was since deleted from the system. *Id.* ¶ 56.

     Upon his return, Plaintiff worked under the same terms that existed before his arrest. *Id.*

¶ 58. The only difference was that Plaintiff was required to leave his service weapon at work

and sign it out each morning. *Id.* Several weeks later, he was advised he would be involuntarily

transferred from the Criminal Intelligence Section to one of the general detective squads. *Id.* ¶

59. The transfer was arranged by O'Brien and Detective Lieutenant William Burke. *Id.* ¶ 61. A

position in a general detective squad is considered less prestigious and desirable than a position

in the Criminal Intelligence Section, and the nature of the work is different. *Id.* ¶ 60.

     In January 2016, Plaintiff was transferred to the Third Squad Detectives, then led by

Commanding Officer Detective Lieutenant Crowley ("Crowley"). *Id.* ¶ 63. Crowley informed

Plaintiff that, at Gigante's direction, Plaintiff would be assigned as the administrative detective

for the Third Squad, Plaintiff would not be given overtime opportunities, and Plaintiff would not

be allowed to work night tours, making Plaintiff ineligible for night differential pay. *Id.* ¶ 64.

     The criminal case against Plaintiff was dismissed on October 5, 2016. *Id.* ¶ 65. By this

time, Crowley had been replaced by Pirone. *Id.* Pirone informed Plaintiff he would not be

permitted to take his service weapon home, and that he would be required to sign the weapon out

every morning and sign it back in every night. *Id.* ¶ 66.

In October 2016, Plaintiff contacted the delegate of the Suffolk County Detectives Association for the purpose of filing a grievance regarding SCPD's discriminatory practices and the return of his personal property. *Id.* ¶ 68. In October and November of that year, Plaintiff made further efforts to recover his personal property, to be returned to the Criminal Intelligence Section, and to obtain back pay for the period of his suspension in 2015, remedies to which Plaintiff claims to be entitled because the criminal charges against him were dismissed. *Id.* ¶ 69. Plaintiff discussed these issues with Pirone. *Id.* Plaintiff notified Sini that his property had not yet been returned by filing a formal 10-42 grievance request and by having his attorney fax and mail a letter to Sini. *Id.* On November 6, 2016, Plaintiff submitted to Pirone another 10-42 grievance to request a meeting with Barry. *Id.* ¶ 70. Plaintiff also sent Pirone a text message that stated Plaintiff's intention to seek the Suffolk County legislature's help in remedying the discrimination against him. *Id.* Pirone contacted Plaintiff, asking him to hold the 10-42 in abeyance and explaining that Pirone should be able to return Plaintiff's property by November 8. *Id.* ¶ 71. Plaintiff received neither his property nor any further updates from Pirone by November 8. *Id.* On November 14, 2016, Plaintiff submitted to Pirone three additional 10-42 grievances that were addressed to the Chief of the Department, the Police Commissioner, and the Deputy Commissioner and concerned Plaintiff's charges of corruption and discrimination. *Id.* ¶¶ 72-73. Plaintiff did not receive responses to the November 14 grievances. *Id.* ¶ 73.

On January 16, 2017, Plaintiff responded to an email from Sergeant Robert Lehman ("Lehman") of the IAB, which concerned the IAB's investigation of the criminal complaint filed against Plaintiff by his ex-girlfriend. *Id.* ¶ 74. Plaintiff copied McLaughlin on his response to apprise her of his discriminatory treatment, and noted that he had not received fair and impartial

treatment during the investigation, arrest, or aftermath of the case. *Id.* ¶¶ 74-75. McLaughlin

took no action. *Id.* ¶ 75.

On January 25, 2017, the IAB interviewed Plaintiff. *Id.* ¶ 76. The next day, Pirone and

Lehman informed Plaintiff that he was cleared in the investigation, that the IAB determined

Plaintiff had not committed any wrongdoing, and that the IAB case was closed. *Id.* The IAB

never provided Plaintiff with documentation of the results of his investigation. *Id.* ¶ 77.

On March 29, 2017, Pirone directed Plaintiff to contact Sergeant Gansrow ("Gansrow")

of the Medical Evaluation Unit about a fit-for-duty examination. *Id.* ¶ 78. Gansrow informed

Plaintiff he needed to sign for a letter that contained an order for Plaintiff to appear before a

doctor for the fit-for-duty examination. *Id.* ¶ 79. According to Plaintiff, Gigante instructed

Gansrow to have Plaintiff sign for the letter. *Id.* ¶ 80. Plaintiff had seen neither the envelope nor

its contents and refused to sign for the letter. *Id.* ¶ 81.

On April 12, 2017, Pirone told Plaintiff IAB personnel were coming to the Third Precinct

to have Plaintiff accept the letter. *Id.* ¶ 82. Pirone explained that if Plaintiff did not accept the

letter, Plaintiff would be subject to insubordination charges. *Id.* Plaintiff expressed to the IAB

personnel that he would go to the Medical Evaluation Unit but would not accept the sealed letter,

explaining that this was not protocol for a fit-for-duty examination. *Id.* One of the IAB

personnel, Captain Kevin Kane ("Kane"), then contacted Gigante to determine whether Plaintiff

could go to the Medical Evaluation Unit without first accepting the letter. *Id.* ¶¶ 82-83. After

speaking with Gigante, Kane informed Plaintiff he would need to accept the letter. *Id.* ¶ 83.

When Plaintiff again refused to sign for the letter, Kane suspended Plaintiff. *Id.* ¶ 84. Plaintiff

was suspended without pay for thirty days and the written suspension order stated that Plaintiff

disobeyed an order to report to the Medical Evaluation Unit. *Id.* ¶¶ 85-86. During Plaintiff's

suspension, Plaintiff's attorney sent multiple communications to Sini and Barry that asserted SCPD was discriminating against Plaintiff because of his race. *Id.* ¶ 87.

Days after Plaintiff returned to work, SCPD suspended him again. *Id.* SCPD informed Plaintiff that if he was found guilty of the offense underlying this suspension, he would be discharged. *Id.* ¶ 88. To avoid involuntary termination, Plaintiff announced his retirement on June 17, 2017. *Id.* Plaintiff was not permitted to keep his uniform, pistol permit, firearm, or badge. *Id.* ¶ 93.

In contrast to Plaintiff's treatment, Plaintiff notes that a white detective misrepresented his physical capabilities to SCPD on four occasions but was never subjected to a fit-for-duty examination. *Id.* ¶ 92. The same detective had four IAB investigations pending against him when he retired, yet unlike Plaintiff could keep his uniform, pistol permit, firearm, and badge. *Id.* ¶ 93.

On or about June 11, 2018, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("DHR"), alleging that Defendants subjected Plaintiff to racial discrimination, a racially hostile work environment, and retaliation. *Id.* ¶ 98. This complaint was cross-filed as a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* On or about January 31, 2019, the DHR issued a Determination and Order after Investigation of the DHR Complaint. *Id.* ¶ 99. On or about April 4, 2019, the EEOC issued its Dismissal and Notice of Rights based on the DHR's Determination. *Id.*

### b. Procedural Posture

Plaintiff commenced this action against Defendants on July 3, 2019. *See* Compl. In the Complaint, Plaintiff alleges the following: discrimination and hostile work environment based on Plaintiff's race, in violation of Title VII, against all Defendants; retaliation in violation of Title

7

VII, against all Defendants; discrimination and hostile work environment based on Plaintiff's

race, in violation of § 1981, against all Defendants; retaliation in violation of § 1981, against all

Defendants; disparate treatment in violation of Plaintiff's civil rights under § 1983, against

SCPD; retaliation in violation of Plaintiff's civil rights under § 1983, against SCPD; disparate

treatment in violation of Plaintiff's civil rights under § 1983, against Sini, Gigante, O'Brien,

Pirone, Barry, and McLaughlin in their official and individual capacities; retaliation in violation

of Plaintiff's civil rights under § 1983, against Sini, Gigante, O'Brien, Pirone, Barry, and

McLaughlin in their official and individual capacities; conversion, against all Defendants; and

replevin, against all Defendants.  *See generally id.*

At a pre-motion conference on December 13, 2019, Judge Azrack allowed Defendants to

file their Motion "on time-barred claims only" and set a briefing schedule for the Motion.

Minute Entry for December 13, 2019 Pre-Motion Conference, Dkt. No. 14.  Defendants filed

their Answer to the Complaint on December 23, 2019.  *See* Answer, Dkt. No. 15.  The Motion,

which seeks dismissal of Plaintiff's Title VII, § 1983, and conversion and replevin claims, has

been fully briefed.  *See* Mem. Supp. Mot. Dismiss ("Mot."), Dkt. No. 17-5; Mem. Opp. Mot.

Dismiss ("Opp."), Dkt. No. 17-9; Reply Supp. Mot. Dismiss ("Reply"), Dkt. No. 17-15.

## II.    LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the

complaint states a legally cognizable claim by making allegations that, if proven, would show

that the plaintiff is entitled to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 570).  A complaint successfully states a claim when there

is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

There are "[t]wo working principles" that guide this analysis: "First, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at \*3 (E.D.N.Y. Feb. 28, 2017) (internal quotation marks, citation omitted), *adopted by* 2017 WL 2303507 (E.D.N.Y. May 24, 2017). Although this Court is limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference. *See Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

## III.    DISCUSSION

As a preliminary matter, the Court will address Plaintiff's argument that Defendants' Motion is improper because it was filed after Defendants' Answer. Opp. at 17. At a pre-motion conference held on December 13, 2019, Judge Azrack set a briefing schedule for Defendants' Motion on time-barred claims only. *See* Minute Entry for December 13, 2019 Pre-Motion Conference. It was not until after this conference that Defendants filed their Answer, on December 23, 2019. The parties adhered to the briefing schedule set forth at the conference and Defendants' Motion was fully briefed and submitted to the Court by February 26, 2020.

Similar circumstances existed in *Crypto Research, LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671 (E.D.N.Y. 2017). There, the defendants "answered and sought a pre-motion conference regarding their anticipated motion to dismiss on June 16, 2016. . . . After a pre-

9

motion conference on July 7, 2016, the defendants moved to dismiss the complaint." *Id.* at 678.

Though the defendants' motion followed their answer, the *Crypto Research* court considered the

motion.  Further, even if precedent did not exist, this Court may still assess Defendants' Motion

by treating it as a motion for judgment on the pleadings brought under Rule 12(c).  *Patel v.*

*Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) ("a motion to dismiss

for failure to state a claim . . . that is styled under Rule 12(b) but is filed after the close of

pleadings, should be construed by the district court as a motion for judgment on the pleadings

under Rule 12(c)").  A court deciding a Rule 12(c) motion applies "the same standard as that

applicable to a motion under 12(b)(6)."  *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

Based on the foregoing, the Court may assess Defendants' Motion.

### a.  Title VII Claims

Plaintiff alleges Defendants violated Title VII by discriminating against him and

subjecting him to a hostile work environment because of his race, and by retaliating against him

for his protected complaints of said discrimination and hostile work environment.  Compl. ¶¶

102-03, 112.  Defendants assert, "[t]hese causes of action must be dismissed because they are

time-barred."  Mot. at 10.

"Filing an administrative complaint with the EEOC is a statutory prerequisite to

maintaining a Title VII action in the district court."  *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598,

599 (2d Cir. 1999).  Specifically, the employment discrimination claim must be filed with the

EEOC "within three hundred days after the alleged unlawful employment practice occurred."  42

U.S.C. § 2000e-5(e)(1).  "This statutory requirement is analogous to a statute of limitations."

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (citing *Zipes v. Trans*

*World Airlines, Inc.*, 455 U.S. 385, 394 (1982)).  The continuing violation doctrine provides an

exception to this requirement: "if a Title VII plaintiff files an EEOC charge that is timely as to

any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of

acts of discrimination under that policy will be timely even if they would be untimely standing

alone." *Mercedes v. Dep't of Educ. of City of N.Y.*, 16-CV-3284 (VSB), 2018 WL 4682015, *7

(E.D.N.Y. Sept. 28, 2018) (citing *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d

Cir. 2012)).

Defendants aver, "[a]ll acts alleged by Plaintiff in his Complaint occurred at the latest on

or before June 17, 2017, the date he alleges that he was forced to retire." Mot. at 10. Plaintiff's

EEOC complaint was filed on June 11, 2018, more than three hundred days after his retirement.

Compl. ¶ 98. In his Opposition, however, Plaintiff contends that the continuing violation

doctrine should apply because "the discriminatory practices the Plaintiff faced at the Department

were still in place and were therefore the reasons Plaintiff was unable to re-seek employment

with" SCPD. Opp. at 19. Plaintiff further argues that Defendants "should be estopped from

using the statute of limitations argument to time-bar Plaintiff's Title VII claims." *Id.* at 19.

Defendants correctly claim that Plaintiff's first argument does not reflect the allegations

in Plaintiff's Complaint, which makes no mention of Plaintiff's returning to SCPD after his

retirement. *See* Mot. at 3-4. A court considering a motion to dismiss is generally "'limited to the

facts as asserted within the four corners of the complaint, the documents attached to the

complaint as exhibits, and any documents incorporated in the complaint by reference.'" *Conforti

v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 289 (E.D.N.Y. 2016) (quoting *McCarthy v. Dun &

Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007)). Further, when a court assesses whether any

incidents that may comprise a hostile work environment were timely, such that the continuing

violation doctrine applies, it looks to alleged acts that occurred within the statutory period and

11

before the end of a plaintiff's employment with the defendant employer.  *See Lockwood v. Town of Hempstead*, 16-CV-3756 (SFJ) (AYS), 2017 WL 9485687, at *4 (E.D.N.Y. Feb. 24, 2017) ("to render Plaintiff's hostile environment claim timely, at least one act of hostility must be alleged to have occurred between July and November," where all acts before July are untimely and employment ended in November), *adopted by* 2017 WL 3769253 (E.D.N.Y. Aug. 28, 2017). Here, Plaintiff left SCPD more than 300 days before filing his EEOC complaint.  Thus, none of the discriminatory acts that Plaintiff actually alleged to have occurred during his tenure at SCPD are timely for purposes of Plaintiff's Title VII hostile work environment claim.

The Court next considers Plaintiff's estoppel argument.  In support of estoppel, Plaintiff reasons:

> Defendants' retaliation against Plaintiff resulted in his constructive termination. Defendants continued to retaliate against Plaintiff—even after his constructive termination—by continuing to refuse to return Plaintiff's property. . . .  This continuing failure by the Defendants has extended the retaliation and the hostile work environment that he experienced well past the end of his employment.

*Id.* at 19-20.  Plaintiff's argument does not establish grounds for estoppel.  As the Second Circuit has explained, "equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60-61 (2d Cir. 1986) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985)).  This is not the case in the present matter; Plaintiff alleges no facts that suggest Defendants caused him to delay filing his EEOC complaint for more than 300 days after he left SCPD.  Accordingly, Defendants are not estopped from raising a statute of limitations defense to Plaintiff's Title VII claims.  *See Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 381 (E.D.N.Y. 2000) (defendant in Title VII suit "not estopped from asserting the limitations defense since plaintiff has not alleged that [defendant] misrepresented the length of the limitations period or in some way lulled the plaintiff

12

into believing that it was not necessary for him to commence litigation" (internal quotation marks, citation omitted)).

For these reasons, the Court respectfully recommends Defendants' Motion be granted as to Plaintiff's Title VII claims.

### b.  42 U.S.C. § 1983 Claims

Plaintiff asserts under § 1983 that Defendants violated his civil rights by discriminating against him and creating a hostile work environment because of his race, and by retaliating against him for making protected complaints.  Compl. ¶¶ 139, 153, 166, 175.  Defendants assert that Plaintiff's § 1983 claims that "occurred prior to July 3, 2016 are time-barred and therefore must be dismissed."  Mot. at 11.

In New York, § 1983 claims are governed by a three-year statute of limitations. *Patterson v. Cty. Of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004).  However, as with Title VII claims, the continuing violation doctrine creates an "exception to the normal knew-or-should-have-known accrual date" of a § 1983 discrimination claim where there is evidence of an ongoing discriminatory policy or practice.  *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999).  The doctrine "can be applied when the plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one "unlawful [act],"' but the doctrine cannot be applied when the plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  Accordingly, where a plaintiff alleges "an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy," the continuing violation doctrine delays commencement of the statute of limitations period "until the last discriminatory act."  *Id.*

13

Plaintiff contends that "his Section 1983 claims were all timely based on the continuing violation doctrine." Opp. at 20. The date three years after which Plaintiff filed his Complaint is July 3, 2016. As Plaintiff avers, the Complaint alleges "an ongoing policy and practice of discrimination" that yielded a racially hostile work environment and is in part exemplified by "non-time-barred acts" occurring after July 3, 2016. *Id.* at 21; *see* Compl. ¶¶ 102, 119. Among other acts before and after the tolling date, Plaintiff asserts: his mail, but not the mail of white members of his unit, was opened without his permission for a four-to-five year period beginning in 2010; he received white supremacy hate literature in his mailbox in or around 2013; after the criminal case against Plaintiff was dismissed in October 2016, Defendants without legitimate purpose, but rather to humiliate Plaintiff, required Plaintiff to sign out his service weapon every morning and sign it back in every night; Defendants without legitimate purpose, but rather because of racial animus, subjected Plaintiff to an involuntary transfer to a less prestigious squad, in January 2016; Defendants ordered Plaintiff to take a fit-for-duty examination in 2017, even though Defendants did not issue similar orders to a white detective for whom cause existed. Compl. ¶¶ 23, 59-67, 78, 82-83, 92, 140-41, 166. The Court notes that a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp.*, 579 U.S. at 117. Thus, because the acts together comprise one unlawful employment practice and at least some of the acts are not time-barred, Plaintiff's claims arising before July 3, 2016 are not time-barred under the continuing violation doctrine.

Defendants' arguments to the contrary are unavailing. In support of its claim that each of Plaintiff's "allegations which occurred prior to July 3, 2016 are discrete acts" that "must be dismissed as time-barred," Defendants cite three cases in which the plaintiffs alleged

14

discriminatory failures to promote and limited instances of retaliation.  Reply at 6-7 (citing *Rowe v. N.Y. State Dep't of Taxation and Fin.*, 786 F. App'x 302 (2d Cir. 2019); *Rivas v. N.Y. State Lottery*, 745 F. App'x 192 (2d Cir. 2018); *Chin*, 685 F.3d 135).  The Supreme Court "established that an employer's failure to promote is by its very nature a discrete act" and is therefore distinguishable "from an allegedly hostile work environment, which [the Supreme Court] held could be a continuing violation because its 'very nature involves repeated conduct.'"  *Chin*, 685 F.3d at 156-57 (quoting *Nat'l R.R. Passenger Corp.*, 579 U.S. at 115).  The authority Defendants cite is thus inapposite; it does not suggest this Court should characterize Plaintiff's allegations as "discrete acts."

As to the timeliness of Plaintiff's § 1983 retaliation claims, Plaintiff does not allege to have engaged in any protected activities outside of the tolling period.  Per the Complaint, Plaintiff did not contact the Suffolk Detectives Association for the purpose of filing a grievance for Defendants' alleged discriminatory practices until October 2016.  Compl. ¶ 68.  Plaintiff began to file his 10-42 grievances around the same time.  *See id.* ¶¶ 69-70.  Accordingly, any retaliatory behavior by Defendants in response to Plaintiff's protected activities would have occurred within three years of Plaintiff's commencing this action.  Defendants' assertion that Plaintiff's retaliation claims are time-barred is thus moot.

For the foregoing reasons, the Court respectfully recommends Defendants' Motion be denied with respect to Plaintiff's § 1983 claims.

### c.  Conversion and Replevin Claims

Plaintiff's conversion and replevin claims arise from Defendants' taking and retaining Plaintiff's clothing and personal handguns.  Compl. ¶¶ 183, 189.  Defendants contend the statute

15

of limitations on these claims has elapsed and that Plaintiff failed to timely file a notice of claim

in accordance with New York General Municipal Law § 50-e.  Mot. at 12-13.

The Court will first assess whether Plaintiff's state law tort claims are barred by the

statute of limitations.  As Defendants indicate, actions for replevin and conversion of chattels in

New York are generally governed by a three-year statute of limitations.  *See* Mot. at 12; N.Y.

C.P.L.R § 214(3).  However, as Defendants fail to note, "when state law claims are brought in

federal court, the claims are also subject to state procedural rules."  *Kim v. Cty. of Nassau*, 19-

CV-3264 (SFJ) (ARL), 2020 WL 6149712, at *7 (E.D.N.Y. Oct. 2, 2020) (citation omitted),

*adopted by* 2020 WL 6146881 (E.D.N.Y. Oct. 20, 2020).  According to New York County Law,

> [a]ny claim . . . against a county for . . . invasion of . . . property rights . . . for
> damages arising at law or in equity, alleged to have been caused or sustained in
> whole or in part by or because of any misfeasance, omission of duty, negligence
> or wrongful act on the part of the county, its officers, agents, servants or
> employees, . . . shall be commenced pursuant to the provisions of section fifty-i of
> the general municipality law.

N.Y. Cty. Law. § 52(1).  Per New York General Municipal Law § 50-i, an action against a

municipality must "be commenced within one year and ninety days after the happening of the

event upon which the claim is based."  N.Y. Gen. Mun. Law § 50-i(1).

To assess whether Plaintiff timely brought his tort claims, the court must determine when

the claims accrued.  In their Motion Defendants aver, "Plaintiff's claim for the return of his

property accrued on the date that the property was seized," October 2, 2015.  Mot. at 12.

Plaintiff, however, argues that the property was originally seized with "legal and statutory

authority" pursuant to a warrant.  Opp. at 22.  He further contends that his claim accrued when

the criminal charges against him were dismissed on October 5, 2016, at which time Defendants'

"continued exercise of dominion and control over Plaintiff's property became unlawful."  *Id.* at

22-23.  The Court agrees with the accrual date that Plaintiff asserts.

A conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 395 (S.D.N.Y. 2010). A cause of action for "conversion or replevin accrues against a person who lawfully comes by a chattel . . . , not upon the stealing or the taking, but upon the defendant's refusal to convey the chattel upon demand." *Galgano v. Cty. of Putnam*, 16-CV-3572 (KMK), 2020 WL 3618512, at *12 (S.D.N.Y. July 2, 2020) (quoting *Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 482 (S.D.N.Y. 2010)); *see also Smith v. Scott*, 294 A.D.2d 11, 21 (N.Y. App. Div. 2002) ("where the possession was originally lawful, a demand is necessary, and the cause of action accrues from the time when the right to make the demand is complete"). Relatedly, "New York courts have held that replevin claims do not accrue while such claims may 'interfere[] with a pending or potential criminal prosecution.'" *Galgano*, 2020 WL 3618512, at *12 (quoting *B.T. Prods., Inc. v. Barr*, 376 N.E.2d 171, 177 n.2 (1978)). Once "no criminal prosecution is pending, a property owner can file an action for replevin" to recover property seized by a warrant. *Phelan v. Sullivan*, 10-CV-724 (DNH/ATB), 2010 WL 2948217, at *7 (N.D.N.Y. July 7, 2010), *adopted by* 2010 WL 2948188 (N.D.N.Y. July 22, 2010). Taking the facts alleged as true, Plaintiff's claims accrued when the criminal case against him was dismissed.

As Plaintiff's claims accrued on October 5, 2016 and Section 50-i requires tort claims against a municipality to be brought within one year and ninety days of the claims' accrual, Plaintiff's claims were untimely when he commenced this action on July 3, 2019. Because the claims are untimely under the statute of limitations, the Court need not consider Defendants'

notice of claim argument.  Accordingly, the Court respectfully recommends Defendants' Motion be granted as to Plaintiff's conversion and replevin claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendants' Motion be GRANTED, as to Plaintiff's Title VII, conversion, and replevin claims, and DENIED, as to Plaintiff's § 1983 claims.

## V.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


**SO ORDERED.**


/s/
_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated:  Central Islip, New York
   December 14, 2020