**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

TROY GIBSON,

                          Plaintiff,          **REPORT AND RECOMMENDATION**

      v.                            19-cv-03871 (GRB) (ST)

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT, TIMOTHY
SINI, GERARD GIGANTE, JOHN O'BRIEN,
MICHAEL PIRONE, JOHN BARRY, JOANN
MACLAUGHLIN, JAMES BURKE, JAMES
HICKEY, WILLIAM MADIGAN, and MICHEAL
MESSINA

                          Defendants.
------------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

      Before this court is a motion by Defendants to dismiss Plaintiff's current complaint,

alleging violations of 42 U.S.C. §1981, §1983, §1985, and Plaintiff's rights to equal protection,

due process, and to be free from unlawful search and seizure, in its entirety. For the reasons set

forth below, I recommend Defendants' motion be GRANTED IN PART AND DENIED IN

PART.

## BACKGROUND

### I.    Facts

      Unless otherwise indicated, all statements in this section are based on allegations in the

Complaint. SCPD is a law enforcement agency of Suffolk County. Sec. Am. Compl. ¶ 8, ECF

No. 51. Plaintiff, a Black male, joined SCPD in 1995. *Id.* at ¶¶ 2-3. Plaintiff was promoted to

Detective in 2001 and in or around 2003 began serving in SCPD's Criminal Intelligence Section

as a street gang investigator. *Id.* at ¶ 23.  At relevant times, the individual Defendants held the following roles at SCPD: Sini was the Commissioner; Gigante was the Chief of Detectives; O'Brien was a Lieutenant Detective; Pirone was a Lieutenant Detective; Barry was the Deputy Commissioner; McLaughlin was the Commanding Officer of the Internal Affairs Bureau ("IAB"); Burke was the Chief of Department of the SCPD; Hickey was the Commanding Officer of the Criminal Intelligence Section of the SCPD; Madigan was the Chief of Detectives at the SCPD; and Messina was a Lieutenant at the SCPD. *Id.* at ¶¶ 9-18.  Plaintiff and all individual Defendants are residents of Suffolk County. *Id.* at ¶¶ 6, 9-18.

For most of his tenure at SCPD, Plaintiff was the only Black member of his unit. *Id.* at ¶ 27.  Plaintiff notes he experienced the following at SCPD: for four-to-five years beginning in 2010, Plaintiff's mail, but not his white colleagues' mail, was opened without Plaintiff's permission at the direction of his then-commanding officer Detective James Hickey and with the knowledge of Chief Burke; Hickey referred to Plaintiff as "boy" on multiple occasions; Hickey denied Plaintiff overtime pay for performing presentations on gang awareness, though Plaintiff's white colleagues were allowed to receive overtime pay for similar presentations; in or around 2013, Plaintiff, and no one else, received white supremacy hate literature in his mailbox; though Plaintiff's white colleagues kept personal photographs displayed in their work areas, Plaintiff found his personal photographs taken down and thrown in the garbage; Plaintiff's assigned police vehicle was taken from him without reason and given to a white detective. *Id.* at ¶¶ 27-29.

The majority of the facts alleged, however, relate to a criminal complaint filed against Plaintiff.  Plaintiff asserts "SCPD used the filing of these charges against Plaintiff to systematically harass, discriminate, intimidate, and abuse Plaintiff and to subject him to adverse employment actions." *Id.* at ¶ 32.

On October 1, 2015, Plaintiff's ex-girlfriend filed against him a complaint of sexual assault at SCPD's Fifth Precinct, a complaint which was later dismissed. *Id.* at ¶ 40. Per SCPD's rules and procedures, a complaint against a SCPD officer should be referred to SCPD's IAB for investigation. *Id.* at ¶ 41. O'Brien, who is not alleged to be a member of SCPD's IAB, was notified of the complaint. *Id.* at ¶ 43. O'Brien informed then-Chief of Detectives William Madigan ("Madigan") and Hickey of the complaint. *Id.* at ¶ 44. Together, O'Brien, Madigan, and Hickey decided O'Brien would oversee the response to the complaint. *Id.* at ¶ 45.

On October 2, 2015, O'Brien arrested Plaintiff at police headquarters in view of Plaintiff's colleagues. *Id.* at ¶ 48. O'Brien took Plaintiff's work and personal phones. *Id*. O'Brien informed Plaintiff SCPD had a search warrant for Plaintiff's home for the purpose of locating and retrieving the clothing Plaintiff had been wearing at the time of the alleged assault and Plaintiff's personal handguns, which were licensed and legally owned. *Id.* at ¶ 49. O'Brien told Plaintiff to provide the codes to Plaintiff's home security system and safe, otherwise officers would kick in Plaintiff's front door. *Id.* at ¶ 50. O'Brien sent to Plaintiff's home two detectives who specialized in drug enforcement and drug search warrants. *Id.* at ¶ 51. O'Brien also directed detectives to confiscate Plaintiff's vehicle. *Id.* ¶ 55. The officers who took the vehicle neither completed impound paperwork nor provided Plaintiff with a property receipt. *Id*. O'Brien refused to show Plaintiff the search warrant, and Plaintiff believes none was obtained. *Id.* at ¶¶ 53-54. Despite Plaintiff's requests, he had still not been shown a copy of the warrant at the time of the filing of the second amended complaint. *Id*. SCPD refused to return Plaintiff's clothing and personal firearms, which he still had not recovered at the time of the filing of the most recent complaint. *Id.* at ¶¶ 57-58.

On October 7, 2015, SCPD issued personnel order 15-188b. *Id.* at ¶ 60.  The order suspended Plaintiff from duty, without pay, from October 2, 2015 through November 2, 2015, a period of thirty-one days. *Id.* at ¶¶ 60, 62.  SCPD's rules and procedures provide that a member of SCPD can be suspended for a maximum of thirty days without pay. *Id.* at ¶ 62.  Despite SCPD's policy concerning the disclosure of information related to confidential, pending investigations, SCPD also issued in October 2015 personnel order 15-188a and disseminated it to all employees. *Id.* at ¶ 60.  This order stated the criminal charge against Plaintiff and the details underlying that charge. *Id.*  Despite protocol, this order was since deleted from the system. *Id.* at ¶ 61.

Upon his return, Plaintiff worked under the same terms that existed before his arrest except that Plaintiff was required to leave his service weapon at work and sign it out each morning. *Id* at ¶ 63.  Several weeks later, he was advised he would be involuntarily transferred from the Criminal Intelligence Section to one of the general detective squads, a less prestigious and desirable position with a different type of work. *Id.* at ¶ 64-65.  The transfer was arranged by O'Brien and Detective Lieutenant William Burke. *Id.* at ¶ 66.

In January 2016, Plaintiff was transferred to the Third Squad Detectives, then led by Commanding Officer Detective Lieutenant Crowley ("Crowley"). *Id.* at ¶ 69.  Crowley informed Plaintiff that, at Gigante's direction, Plaintiff would be assigned as the administrative detective for the Third Squad, Plaintiff would not be given overtime opportunities, and Plaintiff would not be allowed to work night tours, making Plaintiff ineligible for night differential pay. *Id*.

The criminal case against Plaintiff was dismissed on October 5, 2016. *Id.* at ¶ 70.  By that time, Crowley had been replaced by Pirone. *Id.*  Pirone informed Plaintiff he would not be

permitted to take his service weapon home, and that he would be required to sign the weapon out every morning and sign it back in every night. *Id.* at ¶ 71.

In October 2016, Plaintiff contacted the delegate of the Suffolk County Detectives Association for the purpose of filing a grievance regarding SCPD's discriminatory practices and the return of his personal property. *Id.* at ¶ 74. In October and November of that year, Plaintiff made further efforts to recover his personal property, to be returned to the Criminal Intelligence Section, and to obtain back pay for the period of his suspension in 2015, remedies to which Plaintiff claims to be entitled because the criminal charges against him were dismissed. *Id.* at ¶ 75. Plaintiff discussed these issues with Pirone. *Id.* Plaintiff filed a formal 10-42 grievance request and had his attorney fax and mail a letter to Sini to inform him that Plaintiff's property was being withheld in a manner he believed unlawful. *Id* at ¶ 76. On November 6, 2016, Plaintiff submitted to Pirone another 10-42 grievance in order to request a meeting with Deputy Commissioner Barry. *Id.* at ¶ 77. Plaintiff also sent Pirone a text message that stated Plaintiff's intention to seek the Suffolk County legislature's help in remedying the discrimination against him. *Id.* Pirone contacted Plaintiff, asking him to hold the 10-42 in abeyance and explaining that Pirone should be able to return Plaintiff's property by November 8. *Id.* at ¶ 71. Plaintiff received neither his property nor any further updates from Pirone by November 8. *Id.* On November 14, 2016, Plaintiff submitted to Pirone three additional 10-42 grievances that were addressed to the Chief of the Department, the Police Commissioner, and the Deputy Commissioner and concerned Plaintiff's charges of corruption and discrimination. *Id.* at ¶¶ 79-80. Plaintiff did not receive responses to the November 14 grievances. *Id.* at ¶ 80.

On January 16, 2017, Plaintiff responded to an email from Sergeant Robert Lehman ("Lehman") of the IAB, which concerned the IAB's investigation of the criminal complaint filed

against Plaintiff by his ex-girlfriend. *Id.* at ¶ 81.  Plaintiff copied McLaughlin on his response to apprise her of his discriminatory treatment and noted that he had not received fair and impartial treatment during the investigation, arrest, or aftermath of the case. *Id.* at ¶¶ 81-82.  McLaughlin took no action. *Id.* at ¶ 82.

On January 25, 2017, the IAB interviewed Plaintiff. *Id.* at ¶ 83.  The next day, Pirone and Lehman informed Plaintiff that he was cleared in the investigation, that the IAB determined Plaintiff had not committed any wrongdoing, and that the IAB case was closed. *Id.*  The IAB never provided Plaintiff with documentation of the results of his investigation. *Id.* at ¶ 84.

On March 29, 2017, Pirone directed Plaintiff to contact Sergeant Gansrow of the Medical Evaluation Unit about a fit-for-duty examination. *Id.* at ¶ 85.  Gansrow informed Plaintiff he needed to sign for a letter that contained an order for Plaintiff to appear before a doctor for the fit-for-duty examination. *Id.* ¶ 86.  According to Plaintiff, Gigante instructed Gansrow to have Plaintiff sign for the letter. *Id.* ¶ 87.  Plaintiff had seen neither the envelope nor its contents and refused to sign for the letter. *Id.* ¶ 88.

On April 12, 2017, Pirone told Plaintiff IAB personnel were coming to the Third Precinct to have Plaintiff accept the letter. *Id.* ¶ at 89.  Pirone explained that if Plaintiff did not accept the letter, Plaintiff would be subject to insubordination charges. *Id.*  Plaintiff expressed to the IAB personnel that he would go to the Medical Evaluation Unit but would not accept the sealed letter, explaining that this was not protocol for a fit-for-duty examination. *Id.*  One of the IAB personnel, Captain Kevin Kane ("Kane"), then contacted Gigante to determine whether Plaintiff could go to the Medical Evaluation Unit without first accepting the letter. *Id.* at ¶¶ 89-90.  After speaking with Gigante, Kane informed Plaintiff he would need to accept the letter. *Id.* at ¶ 90.  When Plaintiff again refused to sign for the letter, Kane suspended Plaintiff. *Id.* at ¶ 91.  Plaintiff

was suspended without pay for thirty days and the written suspension order stated that Plaintiff disobeyed an order to report to the Medical Evaluation Unit. *Id.* at ¶¶ 92-93. During Plaintiff's suspension, Plaintiff's attorney sent multiple communications to Sini and Barry that asserted SCPD was discriminating against Plaintiff because of his race. *Id.* at ¶ 94.

Days after Plaintiff returned to work, SCPD suspended him again. *Id.* SCPD informed Plaintiff that if he was found guilty of the offense underlying this suspension, which is not detailed in Plaintiff's complaint, he would be discharged. *Id.* at ¶ 95. To avoid involuntary termination, Plaintiff announced his retirement on June 17, 2017. *Id.* Plaintiff was not permitted to keep his uniform, pistol permit, firearm, or badge. *Id.* at ¶ 104.

In contrast to Plaintiff's treatment, Plaintiff notes that a white detective, Thomas Walsh, misrepresented his physical capabilities to SCPD on four occasions but was never subjected to a fit-for-duty examination. *Id.* at ¶ 103. The same detective had four IAB investigations pending against him when he retired, yet unlike Plaintiff could keep his uniform, pistol permit, firearm, and badge. *Id.* at ¶ 104.

On or about June 11, 2018, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("DHR"), alleging that Defendants subjected Plaintiff to racial discrimination, a racially hostile work environment, and retaliation. *Id.* at ¶ 109. This complaint was cross-filed as a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* On or about January 31, 2019, the DHR issued a Determination and Order after Investigation of the DHR Complaint. *Id.* at ¶ 110. On or about April 4, 2019, the EEOC issued its Dismissal and Notice of Rights based on the DHR's Determination. *Id.*

On August 23, 2019, Defendant Messina went to Plaintiff's house and showed him what Plaintiff believes to be an altered IAB report because it had incorrect dates, names, and deletions

were made to it. *Id.* at ¶ 98. Plaintiff says Messina pressured Plaintiff to sign it, but because of Plaintiff's belief that the document was inaccurate, he did not. *Id.* Defendants meanwhile claim in their brief that what Defendant Messina brought to Plaintiff's house that day was actually a Notification of Final Report and Recommendation from the Suffolk County Department of Labor Relations, in response to a complaint Plaintiff had made on March 15, 2018. They say Messina was seeking a voluntary signature acknowledging receipt. Def. Repl. Br., 2-3, ECF No. 65-7.

## II.    Procedural History

On July 3, 2019, Plaintiff Troy Gibson commenced this action against Suffolk County Police Department, Timothy Sini, Gerard Gigante, John O'Brien, Michael Pirone, John Barry, and JoAnn McLaughlin alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* and 42 U.S.C. §1981 and §1983, as well as claims for conversion and replevin. Pl. Compl., ECF No. 1.

On April 15, 2020, Plaintiff filed an amended complaint, which added Defendants James Burke, James Hickey, and William Madigan to the action. *See* Pl. Am. Compl., ECF No. 19.

Defendants filed a motion to dismiss Plaintiff's claims on February 26, 2020. *See* Def. Mot., ECF No. 17. This Court held that Plaintiff's Title VII, conversion, and replevin claims were dismissed for failure to state a claim. *See Gibson v. Suffolk County Police Dep't,* No. 19-CV-3871, 2020 WL 8617536, 2020 U.S. Dist. LEXIS 235852 (E.D.N.Y. Dec. 14, 2020) (adopted by *Gibson v. Suffolk County Police Dep't*, No. 19-CV-3871, 2021 WL 681094, 2021 U.S. Dist. LEXIS 32995 (E.D.N.Y. Feb. 22, 2021)).

Plaintiff then filed a second amended complaint on February 25, 2021. *See* Pl. Sec. Am. Compl, ECF No. 51. That complaint added the County of Suffolk and Lt. Michael Messina as Defendants, added a failure to supervise/investigate/discipline claim, added claims of violations

of Plaintiff's rights to equal protection, due process, and to be free from illegal searches and seizures, and added a claim of conspiracy against rights. *Id.*; Pl. Mot., ECF No. 45. It also added facts regarding what Plaintiff views as continuing discriminatory and unlawful practices after his retirement. *Id.* Plaintiff's second amended complaint still includes the previously dismissed claims for conversion, replevin, and Title VII relief but Plaintiff acknowledges in his brief "this court's ruling…dismissing the above stated counts." Pl. Opp. Br., 1, ECF No. 65-5.

Defendants once again seek dismissal of all claims for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). Def. Br., ECF 65-1.

## LEGAL STANDARD

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the Plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). *Twombly* and *Iqbal* command that all elements of the Plaintiff's claim must be plausibly alleged in the complaint, such that the complaint contains more than "naked assertions," or allegations that amount to "sheer possibility," containing instead "factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the Court "must accept all factual allegations as true and draw all reasonable inferences in favor of the non-moving party." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at *3 (E.D.N.Y.

Feb. 28, 2017) (internal quotation marks, citation omitted) (*adopted by Giambrone v. Meritplan Ins. Co.,* 13-CV-7377, 2017 WL 2303507 (E.D.N.Y. May 24, 2017)).

## DISCUSSION

At the outset, it should be reiterated that Plaintiff's Title VII, replevin, and conversion causes of action are dismissed, pursuant to this Court's earlier opinion (causes of action one, two, nine, and ten).  Both parties acknowledge this, and, therefore, I will only address Plaintiff's remaining causes of action below.

### I.    Defendant Suffolk County Police Department

Defendants argue all claims against the Suffolk County Police Department should be dismissed as, under New York law, it does not have a legal identity separate and apart from the municipality, which is already a named defendant. Def. Br., 9, ECF No. 65-1.  Plaintiff, meanwhile, argues that whether the Suffolk County Police Department has a separate legal identity from the County of Suffolk is a question of fact yet to be determined. Pl. Opp. Br., 4, ECF No. 65-5.

Defendants are correct.  Police departments, as administrative arms of municipalities, cannot be sued as they do not have a "legal identity separate and apart from the municipality." *Allen v. N.Y. State,* 15-cv-3653, 2015 U.S. Dist. LEXIS 145538 (E.D.N.Y. Oct. 27, 2015) (citing *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002)); *see also Longe v. City of New York,* 802 Fed. Appx. 635, 638-39 (2d Cir. 2020) (explaining the NYPD is "only an agency of the City, [and therefore] is not an entity that is subject to suit.").

In the alternative, Plaintiff argues that, even if the SCPD is a separate legal entity, Defendants' argument for dismissal should be saved for summary judgment.  However, there is no such requirement, and courts in this district have dismissed defendant police departments for

this exact reason prior to the summary judgment stage. *See Rose v. County of Nassau,* 904 F. Supp. 2d 244 (E.D.N.Y. 2012) (dismissing claims against Nassau County police department on 12(b)(6) motion because "the Police Department is an administrative arm of the County of Nassau"); *Gurrieri v. Cty. Of Nassau,* No. 16-CV-6983, 2017 WL 3432208, 2017 U.S. Dist. LEXIS 126293 (E.D.N.Y. Aug. 9, 2017) (dismissing claims against the Nassau County Police Department on a 12(b)(6) motion because they are an entity that cannot be sued); *Allen,* 2015 U.S. Dist. LEXIS 145538 (dismissing the police department prior to summary judgment stage).

Instead of the SCPD, the proper Defendant would be the municipality itself, the County of Suffolk, which is a named Defendant in this action. Therefore, I recommend all claims against the Suffolk County Police Department be dismissed.

## II.    Claims Against William Madigan

Defendants argue that all claims against Defendant Madigan are time-barred because the amended complaint alleging those claims was filed on April 15, 2020 – too long after Defendant Madigan's retirement date (December 9, 2015). Def. Br., 10, ECF No. 65-1. Plaintiff argues Madigan's retirement should not start the clock on the statute of limitations, rather it should only start once the overall pattern of conduct amongst all the defendants alleged to violate Plaintiff's rights ceased. Pl. Opp. Br., 5, ECF No. 65-5. Additionally, Plaintiff notes, the original complaint did mention conduct by Madigan that Plaintiff alleged violated his rights (*See* Pl. Compl., ¶¶ 39-40, ECF No. 1), and therefore the statute of limitations should be calculated back from the date the original complaint was filed under the relation-back rule, not the date of the amended complaint. Pl. Opp. Br., 6, ECF No. 65-5.

Plaintiff's claims against Defendant Madigan arise under three separate statutes, 42 U.S.C. §§ 1981, 1983, and 1985. In New York, §1983 claims are governed by a three-year

statute of limitations. *Patterson v. Cty. Of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). However, the continuing violation doctrine creates an "exception to the normal knew-or-should-have-known accrual date" of a §1983 discrimination claim where there is evidence of an ongoing discriminatory policy or practice. *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999). The doctrine "can be applied when the Plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful [act],'" but the doctrine cannot be applied when the Plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Accordingly, where a plaintiff alleges "an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy," the continuing violation doctrine delays commencement of the statute of limitations period "until the last discriminatory act." *Id.*

The continuing violations doctrine also applies to §1981 and §1985 claims. *See Richards v. City of New York*, No. 05-CV-1163, 2017 WL 1030294, 2007 U.S. Dist. LEXIS 23726 at *33 (E.D.N.Y. 2007) ("…although the Second Circuit has not ruled on the issue, district courts in this Circuit have held that the continuing violation doctrine does apply to claims under §1981." (collecting cases)); *Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994) (holding the continuing violations doctrine applies to §1983 and §1985 cases). "A continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704.

However, the continuing violations doctrine requires balancing the burden on plaintiffs in these types of cases against the compelling reasons for statutes of limitations. "The continuing violation doctrine balances the burden imposed on plaintiffs by statutes of limitations against the reality that unlawful conduct does not always occur on discrete, specific occasions…The theory [of statutes of limitations] is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Brevolt v. N.Y. City Dep't of Educ.,* No. 04-CV-7959, 2007 WL 690130, 2007 U.S. Dist. LEXIS 16109 at *18-19 (S.D.N.Y. Mar. 5, 2007). For this reason, the continuing violations doctrine is defendant-specific. "The continuing violation doctrine is premised on the theory that *a defendant* who is accused of engaging in an 'ongoing…polic[y] or practice[]' of unlawful conduct does not require the 'shelter' of the statute because such a claim is not 'stale.'" *Brevolt,* 2007 U.S. Dist. LEXIS 16109 at *19 (emphasis added).

Therefore, we must look to the complaint for what Defendant Madigan is alleged to have done to violate Plaintiff's rights, whether that was a pattern of behavior such that the continuing violations doctrine could apply, whether the Court should apply the doctrine, and, if so, when the last act in Defendant Madigan's ongoing policy or practice occurred.

The complaint alleges that Defendant Madigan was at all relevant times in the complaint the Chief of Detectives with the SCPD. *See* Pl. Sec. Am. Compl., ¶ 17, ECF No. 51. While Madigan was Chief of Detectives, the Plaintiff alleges: his assigned police vehicle was taken from him and given to a white detective (¶ 29); his mail was opened without his permission in contrast to the white detectives (¶27(a)); Madigan assigned the investigation of the complaint against Plaintiff to a Detective Lieutenant instead of the IAB as was protocol and oversaw

13

O'Brien during the alleged discriminatory investigation (¶¶ 40-59); and he was involuntarily transferred out of the criminal intelligence section to a general detective squad (¶ 64). *Id.*  It is Plaintiff's contention that these were the result of Madigan's affirmative participation and failure to remedy.  Accepting that as true, it would be an ongoing policy or practice by Defendant Madigan qualifying for the continuing violation doctrine because Plaintiff is not suing regarding any one of those acts or failures to intervene, but for the pattern of discrimination at work.  Denying him that opportunity would deny him the ability to sue under a theory that it was the overall pattern of conduct that harmed him, not any one instance, which is the reality of the situation that he has alleged.  Therefore, the continuing violations doctrine applies, and remedy could be sought against Madigan for any event during that course of conduct within the statute of limitations date of the last act by Madigan in that chain of conduct.

Defendants, however, are correct that Madigan's retirement ended his personal participation in that course of conduct.  When Madigan retired, on December 9, 2015, he lost supervisory authority over the alleged discriminatory conduct, and nowhere in Plaintiff's complaint does he allege that Madigan continued discriminating against or harassing Plaintiff personally after his retirement.  Instead, Plaintiff argues that subsequent to Madigan's retirement, an altered IAB report was created (January 2017) and another Defendant, Michael Messina continued the course of conduct by coming to Plaintiff's house in 2019 to attempt to coerce him into signing the altered report. Pl. Opp. Br., 5, ECF No. 65-5.  Plaintiff might be able to plead the continuing violation doctrine using Messina's visit to Plaintiff's house for claims as to Messina or his supervisors or the County, but Plaintiff has not pleaded facts which would show *Madigan* played any supervisory or actual role in Messina appearing at Plaintiff's house with an altered IAB report in 2019.  The continuing violations doctrine applies to Madigan, but will only toll the

statute of limitations to Madigan's own last involvement in the alleged practice of discrimination against the Plaintiff, which, with no other evidence pleaded, was his retirement date of December 9, 2015.

My previous recommendation in this case does not necessitate a different result, as Plaintiff argues.  In the Defendants' first motion to dismiss, they requested dismissal of all §1983 claims against all Defendants as time-barred because they argued those were discrete acts beyond the statute of limitations.  I recommended the Court find that Plaintiff had successfully pleaded a continuing violation and apply that doctrine to this case.  I re-emphasize that the course of conduct here should be subject to the continuing violations doctrine for the reasons contained in that report and recommendation, however Madigan's retirement, noted for the first time in this motion to dismiss, ended his personal participation in the continuing violation, rendering that date the date from which the statute of limitations would toll as only to him in his personal capacity.

Therefore, as to Defendant Madigan, December 9, 2015 is when the statute of limitations began to toll.

The next question then would be on what date the statute of limitations on the claims against Defendant Madigan stopped tolling: the date of the original complaint (July 3, 2019) or the date of the amended complaint which named Madigan as a Defendant (April 15, 2020). However, the Court need not reach that question because, regardless, all claims against Defendant Madigan are time-barred.

§1985 claims have a three-year statute of limitations. *Morales v. County of Suffolk*, 952 F. Supp. 2d 433, 436 (E.D.N.Y. 2013).  §1981 and §1983 claims in New York are also generally governed by a three-year statute of limitations. *Patterson v. County of Oneida,* 375 F.3d 296, 225

(2d Cir. 2004); *Mian v. Donaldson, Lufkin, & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  That means that even if the Court agrees with Plaintiff and counts back from the date of the original complaint, July 3, 2019, that complaint was filed too late, as the statute of limitations ran on those claims on December 9, 2018, three years after Madigan's retirement.

However, if a claim under §1981 is only possible because of the 1991 amendments to §1981 (extending the claim to conditions of employment), it is governed by a four-year statute of limitations. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382 (2004).  These claims, which relate to Plaintiff's conditions of employment, were only possible because of those amendments and so would be governed by the four-year statue of limitations and not the three-year.

But §1981 claims cannot be brought against Defendant Madigan in his personal capacity because he was a state actor who took the alleged actions while acting under color of state law, in a supervisory role with the SCPD. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 935 n.18 (1982) ("State employment is generally sufficient to render the defendant a state actor").  "§1981 does not provide a separate private right of action against state actors." *Duplan v. City of New York,* 888 F.3d 612, 621 (2d Cir. 2018).  Instead, the Second Circuit has counseled that any §1981 claims against state actors should be construed as §1983 claims by the Court. *Id.*  Because §1983 has a three-year statute of limitations, those claims too are time-barred as brought against Defendant Madigan.

Therefore, I recommend all claims against Defendant Madigan be dismissed as time-barred.

### III.    Plaintiff's §1981 Claims

Defendants next argue that Plaintiff's third and fourth causes of action, discrimination and hostile work environment on the basis of race in violation of 42 U.S.C. §1981 and retaliation

in violation of 42 U.S.C. §1981, must be dismissed.  Defendants cite to Second Circuit precedent, which says, as discussed above that these claims cannot be brought against state actors, and all Defendants are state actors.

Plaintiff does not dispute this but writes that the Court has a duty to construe the §1981 claims as §1983 claims, as instructed by *Duplan.* Pl. Opp. Br., 10, ECF No. 65-5.  I agree as that is exactly what the Court did in *Duplan:* construed the §1981 claims as §1983 claims alleging §1981 violations.  That is the course I recommend the Court take here.

However, Plaintiff already pleads retaliation as to all Defendants under §1983 in his complaint. *See* Sec. Am. Compl. ¶¶ 140-147; ¶¶ 162-169, ECF No. 51.  Because the retaliation claims under §1983 are already alleged in the complaint, the §1981 claims alleging retaliation should be dismissed as duplicative.  The Plaintiff does not appear to have pled a hostile work environment or employment discrimination claim under §1983, so his §1981 claims for hostile work environment and employment discrimination should be construed as §1983 claims.

## IV.    Plaintiff's §1983 Claims

Plaintiff's §1983 claims include claims against all defendants for employment discrimination, hostile work environment, disparate treatment, retaliation, violation of Plaintiff's right to equal protection, failure to supervise, investigate, intervene, train, and/or discipline, denial of due process, and unlawful search/seizure.  As Defendants challenge each of these claims, I will address each in turn.

### a.    Claims Against the Municipality and Individual Defendants in Their Official Capacity

Defendants argue, as a preliminary matter to the underlying §1983 claims, that the claims against the County of Suffolk and the claims against the individual defendants in their official

capacities must be dismissed for failure to plausibly plead the acts in question were performed pursuant to a municipal policy or custom.  A suit against an officer in their official capacity is effectively a suit against their employer. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

Defendants anchor their arguments in the holdings of *Monell v. Department of Social Services*. *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978).  *Monell* is a landmark case holding that local governments may be sued directly under Section 1983 for forms of relief including monetary damages. *Id.* at 690.  However, to properly plead a claim against a municipality or municipal officials in their official capacities, a plaintiff must plausibly allege that the unlawful acts were pursuant to an official policy or custom of the municipality. *Id.*  A municipality may not be liable in a §1983 suit simply for employing a tortfeasor. *Id.*  There are four ways to allege a claim of custom or policy under *Monell:* "(1) a formal policy; (2) actions or decisions taken by a municipal officer with final policymaking authority; (3) 'a practice so consistent and widespread that…[it] constitutes a custom or usage;' (4) 'a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.'" *McLeod v. Llano,* No. 17-CV-6062, 2019 U.S. Dist. LEXIS 39925 at *16 (E.D.N.Y. Mar. 12, 2019) (quoting in part *Jones v. Westchester County,* 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016)).

Plaintiff argues he has alleged facts which would give rise to an inference of a municipal custom.  In ¶ 7 of his complaint, he writes, "The County of Suffolk promulgated and/or ratified unlawful customs of discrimination and malfeasance that caused the Plaintiff harm in the way pleaded herein." *See* Pl. Opp. Br., 12; Pl. Sec. Am. Compl. ¶ 7, ECF No. 51.

Plaintiff has not plausibly alleged facts to show custom under *Monell*. In attempting to carry his burden on custom, Plaintiff cites ¶¶ 32, 36, 38, 39, 61, 96, 98, 100, 105, and 106 of his complaint as well as exhibits, which are various press articles, including a letter to the editor alleging there is an ongoing problem of racism against Black employees within the Suffolk County Police Department and an article detailing progress on a settlement agreement entered into by the SCPD and the Department of Justice for federal monitoring to ensure greater compliance with civil rights laws. Pl. Opp. Br., 12-13. The non-conclusory facts that Plaintiff cites to in his complaint are that the second personnel order targeting Plaintiff was deleted from the system (¶ 61), Lieutenant Messina showing up to Plaintiff's house to allegedly coerce him into signing an altered IAB report (¶ 98), and the general repeated targeting of Plaintiff throughout the events detailed in the complaint, including unlawfully handling and prolonging his IAB investigation, attempting to force him to take fit for for duty examinations, refusing to return his property, ignoring multiple filed formal grievances, and taking harsher disciplinary actions against Plaintiff than other white officers (¶ 105). Pl. Sec. Am. Compl., ECF No. 51.

Plaintiff alleges custom exists here because "he has evidenced that knowledge of the custom [of deprivation of civil rights] is wide spread, as shown by the various news reports that represent a small fraction of news reports available to the public, and has clearly pleaded that he filed numerous grievances, and brought the problematic behavior to the attention of superiors [sic] numerous occasions; who either directly participated in it or failed to investigate or address is in any way displaying a clear and deliberate indifference at minimum." Pl. Opp. Br., 13, ECF No. 65-5.

A municipal custom "that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant

practice is so widespread as to have the force of law." *Bd. Of the Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997). A custom of federal law violation under *Monell* "must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 871 (2d Cir. 1992).

The news articles submitted do not establish what Plaintiff alleges. One article is a letter to the editor accusing SCPD of bias in promotion practice while James Burke was in charge. *See* Pl. Opp. Br., Ex. B., 1, ECF No. 65-5. But it is an opinion piece, a letter to the editor, not a piece of journalism. The author cites no verifiable statistics as to the promotional practices of the SCPD, nor could I even find the name of the author of the letter in Plaintiff's submission. The second article submitted details a consent decree entered into by Suffolk County with the Department of Justice. That consent decree was to rectify civil rights law abuses relating to bias in how SCPD polices the community. Nowhere in that article does it say that SCPD also had a history of allowing civil rights law abuses against Black employees to continue unchecked. The issues addressed by the consent decree had little to do with employment practices, and more to do with race bias-based policing of the citizens SCPD was sworn to protect. While that bias could possibly permeate into SCPD's employment practice, Plaintiff must show more than just a speculative possibility that it has done so. The third piece details policy changes being made to address an independent report that found race-based bias in traffic stops by SCPD. This again is evidence of bias against the community being policed, not against SCPD employees themselves. These articles do show a history of failure to follow civil rights laws by SCPD, but not a custom of discriminating against Black officers within SCPD.

Even when we add Plaintiff's factual allegations in the complaint, it does not rise to the level of pleading a custom. Plaintiff alleges several specific facts as to the alleged unlawful acts

that were visited upon *him* and pleads them with particularity. However, he does not allege facts to show a "persistent and widespread" pattern of this type of behavior by SCPD against Black employees writ large. *See Allen v. New York City Dep't of Convtl. Prot.,* 51 F. Supp. 3d 504 (S.D.N.Y. 2014) ("Alleged discrimination suffered by Plaintiff alone is not sufficient to plead a policy or custom under *Monell"*) (*collecting cases*). The closest he gets is his allegation that he had been "the only Black detective for years" on his "elite squad" within the SCPD. Sec. Am. Compl., ¶ 113(c). This alone is not enough for the Court to draw a reasonable inference that SCPD had a custom, a persistent and widespread pattern, of discriminating against Black police officers in their employment decisions and actions. *See id.* at 519 (S.D.N.Y. 2014) ("Even Plaintiff's allegation that he 'was the only Black or Jamaican employee…" is not sufficient for the court to conclude that this demographic makeup was the result of a pattern or practice on the part of the Defendant.").

However, another means of holding a municipality liable under *Monell* is to plausibly allege deliberate indifference by a policymaker to violations of Plaintiff's federal rights. Plaintiff claims that policy makers, through knowledge and inaction, adopted a policy of discrimination and harassment of Plaintiff attributable to Suffolk County. His complaint alleges: Defendant Sini and Defendant Burke were policymakers (¶ 100); they were aware of the violations of Plaintiff's rights, due to the filing of a grievance request (¶ 76) and Plaintiff's attorney sending multiple emails to Sini that Plaintiff was being discriminated against (¶ 94); and they failed to take any action to address the situation. Pl. Sec. Am. Compl., ECF No. 51.

This Circuit has held that the Suffolk County Police Commissioner, here Defendant Sini, is a policymaker whose action and inaction may bind the municipality. *Rubio v. County of Suffolk,* No. 01-CV-1806, 2007 U.S. Dist. LEXIS 75344 at *19-20 (E.D.N.Y. Oct. 9, 2007)

(collecting cases).  Defendants are correct that *Monell* is specific and the court "must specifically determine whether the government official is a final policymaker with respect to the particular conduct challenged in the lawsuit." Def. Br., 17-18, ECF No. 65-1; *Roe v. City of Waterbury*, 542 F. 3d 31, 37 (2d Cir. 2008).  But the Second Circuit has specifically held the Suffolk County Police Commissioner can bind the municipality on employment decisions including promotion and transfer. *See Mandell v. County of Suffolk & John Gallagher*, 316 F.3d 368, 384-85 (2d Cir. 2003).

The fact that Defendant Sini is a policy maker who can bind the County of Suffolk on employment decisions is not enough.  To survive the motion to dismiss on Plaintiff's claims against Suffolk County, Plaintiff must also allege facts which give rise to a reasonable inference of deliberate indifference regarding Plaintiff's complaints of discrimination.

"[W]here a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice, that acquiescence may be properly thought of as a [municipal] policy or custom that is actionable under §1983." *Amnesty Am. V. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).  Deliberate indifference is a "stringent standard of fault" requiring "that the policymaker's inaction was the rest of 'conscious choice' and not 'mere negligence.'" *Cooper v. City of New York*, No. 12-CV-8008, 2013 U.S. Dist. LEXIS 142922 at *8 (S.D.N.Y. Oct. 2, 2013) (quoting *Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) (quoting *Amnesty*, 361 F.3d at 128)). However, we are at the motion to dismiss stage of this action, and so Plaintiff only needs to have alleged facts which plausibly show: "(1) [Sini/Burke] knew 'to a moral certainty' that their employees will confront a given situation; (2) 'the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or…there is a

history of employees mishandling the situation'; and (3) mishandling the situation will 'frequently cause the deprivation of a citizen's constitutional rights.'" *Pettiford v. City of Yonkers,* No. 14-CV-6271, 2021 WL 2556172, 2021 U.S. Dist. LEXIS 116618 at *18 (S.D.N.Y. June 21, 2021) (quoting *Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff alleges in his complaint that he put Defendant Sini on notice of multiple instances of violations of his federal rights by subordinate employees.  He had his attorney send a letter to Sini, sometime around November of 2016, putting Sini on notice that his property was being unlawfully held. Sec. Am. Compl. ¶ 76, ECF No. 51.  Then, during Plaintiff's 30-day suspension starting on April 12, 2017, Plaintiff's attorney sent multiple communications to Sini, asserting that SCPD was discriminating against him because of race. *Id.* at ¶ 94.  After these correspondences, Plaintiff claims that Sini did not intervene.  "Deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Van v. City of New York,* 72 F.3d 1040 (2d. Cir. 1995).

Accepting Plaintiff's allegations as true, he has alleged facts which show Sini, a policymaker for the County, knew Plaintiff was confronting a situation where he alleged his federal rights were violated.

Plaintiff's allegations also demonstrate a history of employees mishandling the situation. He claims that his investigation was performed in violation of protocol, that his house was illegally searched, that he was called "boy" while at work, that he found white supremacist literature in his mailbox at work, and that he was repeatedly suspended despite the criminal charges being dropped while other white officers received discipline that was less harsh.  He has plausibly alleged a history of SCPD employees mishandling the situation.

23

Finally, mishandling of a situation of discrimination in employment frequently leads to deprivations of constitutional rights because without intervention, the practices frequently will continue.  Therefore, Plaintiff has plausibly alleged a policy of the County of Suffolk.

It should be noted that we are at the motion to dismiss phase at this point.  There may be evidence which Defendants can present at summary judgment which will show no reasonable jury could find Defendant Sini was deliberately indifferent to Plaintiff's complaints.  But at this stage, Plaintiff has plausibly alleged liability for the County of Suffolk under *Monell.*

However, just because Plaintiff has adequately pleaded liability under *Monell* does not mean all claims against Suffolk County survive the motion to dismiss.  Plaintiff must still plausibly allege facts giving rise to the reasonable inference that the elements of the underlying legal claims against Suffolk County are satisfied.

### b.   Claims Against the Individual Defendants in Their Personal Capacities

Defendants also contend, as a preliminary matter, that the various §1983 claims against the individual Defendants in their personal capacities must be dismissed.  Defendants make an overarching claim that the complaint did not sufficiently allege personal involvement as to any of the individual defendants in the acts alleged, which requires dismissal.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under §1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013).  So, as an initial bar to dismissal of the §1983 claims, Plaintiff must have alleged facts showing each individual Defendant was personally involved in the conduct which he alleges violated his federal rights.

24

Plaintiff does allege some of the Defendants were affirmatively involved in the allegedly discriminatory acts that took place. He alleges that Defendant Gigante ordered his demotion. Pl. Sec. Am. Compl. ¶ 69, ECF No. 51. He alleges Defendant O'Brien violated SCPD policy by informing Madigan and Hickey of the criminal complaint against Plaintiff, oversaw the investigation contrary to procedure, and arrested Plaintiff in front of his colleagues in violation of procedure. *Id.* at ¶¶ 44-46. He claims Defendant Pirone set the procedure whereby even after Plaintiff was cleared of the criminal complaint, he would still be required to leave his service weapon at work and sign his weapon out every morning and in every night unlike other officers. *Id.* at ¶ 71. He claims Defendant Hickey referred to him as "boy" on multiple occasions, denied him overtime pay for presentations other white officers received overtime pay for performing, and, despite protocol, assigned Plaintiff's investigation to Defendant O'Brien to administer. *Id.* at ¶¶ 27, 45. He claims Defendant Madigan also was part of the decision to assign the investigation to O'Brien instead of IAB. *Id.* at ¶ 45. He claims Defendant Messina tried to pressure him into signing an altered IAB report. *Id.* at ¶ 98. He claims Defendant Burke decided O'Brien would, against policy, oversee the investigation into his criminal complaint (*id.* at ¶ 45) and that he arranged for Plaintiff's involuntary transfer (*id.* at ¶ 66).

However, there are other Defendants to whom Plaintiff ascribes no facts plausibly showing affirmative involvement in the acts at issue. To the contrary, he alleges their inaction is what makes them liable. Plaintiff alleges he notified Defendant Sini that his personal property had not yet been returned both by filing a grievance request and having his attorney mail him a letter, and that he also notified Defendant Sini he was being discriminated against via multiple communications his attorney sent to Sini. *Id.* at ¶¶ 76, 94. He claims Sini did nothing about these complaints. *Id.* at ¶ 100. He claims his attorney also sent multiple communications to

25

Defendant Barry alleging he was being discriminated against, and that no action was taken. *Id.* at ¶ 94.  He claims he notified Defendant McLaughlin, the head of IAB, in January 2017 that he was being discriminated against so that the IAB would open an investigation, and no action was taken. *Id.* at ¶ 82.

Personal involvement for the purposes of § 1983 for state actors in their personal capacities may be shown through action that causes a deprivation of rights as well as when a supervisor: (1) fails to remedy the violation after having been informed of it; (2) creates or tolerates a policy or custom under which the violation occurred, (3) was grossly negligent in supervising subordinates who commit the violation; or (4) fails to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995).

As discussed above, Plaintiff has plausibly alleged deliberate indifference by Defendant Sini which is personal involvement for the purposes of §1983.  Similarly, as to Defendant Barry, Plaintiff claims his attorney sent him multiple communications alleging he was being discriminated against at work, and Defendant Barry took no action.  He has plausibly alleged Barry's personal involvement.

However, I am not convinced Plaintiff has alleged facts showing personal involvement by Defendant McLaughlin.  Plaintiff 's only allegations as to Defendant McLaughlin is that he copied her on one email complaining of discrimination to another employee in the hopes that she would open an investigation.  Unlike Defendants Sini and Barry, the communication was only one email, was not directed to McLaughlin, and Plaintiff does not allege that he specifically requested that McLaughlin take any action.  I do not believe this lone email not even addressed to Defendant McLaughlin and containing no request for action was enough to put Defendant McLaughlin on notice that a violation was occurring that required her to take remedial action.

Therefore, §1983 claims against Defendant McLaughlin should be dismissed for lack of personal involvement.

Just because Plaintiff has pled facts showing the remaining individual Defendants were personally involved in the events at issue does not mean all his claims against them survive. Just like the County of Suffolk, he still must plausibly allege facts that show each individual defendant's personal involvement makes out the elements of each claim they are sued under.

### c.    Sufficiency of the Underlying Claims

With the prerequisites to pleading §1983 claims against a municipality and individual state actors in their personal capacities analyzed, I turn now to Defendants' arguments that Plaintiff has not plausibly alleged the elements of his underlying claims.

### i.    Employment Discrimination Claim Against All Defendants

The first claim is one of Plaintiff's converted §1981 claims.

The Fourteenth Amendment of the United State Constitution provides a constitutional right to be "free from discrimination." *Demoret v. Zegarelli,* 451 F.3d 140, 149 (2d Cir. 2006). To plead a §1983 claim for employment discrimination, Plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim and that the adverse action was taken by someone acting under color of state law. *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72 (2d Cir. 2015).

At the outset, it should be noted that under Title VII, an individual employee cannot be an "employer." *Sherman v. County of Suffolk,* 71 F. Supp. 3d 332, 343 (E.D.N.Y. 2014). However, §1983 provides for individual liability for state actors in their personal capacity. The Second Circuit has examined this conflict in similar hostile work environment claims and found, "Each

27

defendant is only liable under §1983 when his own actions are independently sufficient to create a hostile work environment." *Raspardo v. Carlone,* 770 F.3d 97, 115 (2d Cir. 2014).  Therefore, those individual Defendants whose actions would be independently sufficient to make out the underlying claim may be liable in a §1983 action even where the elements of the claim are borrowed from Title VII and the Defendant would not be considered an "employer" under Title VII.

The Title VII employment discrimination pleading standard requires a plaintiff to plausibly allege two elements: (1) The employer discriminated against him and (2) the discrimination was due to his race, color, religion, sex, or national origin. *Vega,* 801 F.3d at 85 (citing 42 U.S.C. §2000e-2(a)(1)).  The first element can be satisfied if the Plaintiff pleads facts which show an adverse employment action was taken against him, which includes a demotion evidenced by a less distinguished title, a suspension without pay, and denial of overtime opportunities. *Vega,* 801 F.3d at 85; *Lovejoy-Wilson v. NOCO Motor Fuel Inc.,* 263 F.3d 208, 223 (2d Cir. 2001); *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 171 (E.D.N.Y. 2020). Here, Plaintiff has alleged in his complaint that he was involuntarily transferred from the Criminal Intelligence Section to a general detective squad, which is less prestigious. *See* Pl. Sec. Am. Compl., ¶¶ 64-65, ECF No. 51.  He also alleges he was wrongfully suspended without pay after the criminal charges against him had been dropped. *Id.* at ¶ 93.  Additionally, he alleges he was denied overtime opportunities and pay others were given for the same work. *Id.* at ¶¶ 27(c), 69.  These allegations satisfy the first element on a 12(b)(6) motion.

The second element, that the adverse employment action was due to his race, can be shown by a Plaintiff at the motion to dismiss stage by plausibly alleging facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory

intent." *Id.* (quoting *Littlejohn v. City of New York,* 795 F.3d 297, 311 (2015)).  Put another way, Plaintiff must show that each defendant took adverse action against him "at least in part for a discriminatory reason." *Id.*  Defendants argue that Plaintiff has not met his burden because "Plaintiff has not alleged sufficient facts in support of [his] claims of discrimination." Def. Br., 12-13, ECF No. 65-1.  At the motion to dismiss stage, a Plaintiff can prevail on an employment discrimination claim against an employer by "creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination." *Vega,* 801 F.3d at 88 (citing *Gallagher v. Delaney,* 139 F.3d 338, 342 (2d Cir. 1998)).

Here, Plaintiff has met his burden as to the County of Suffolk.  As discussed, Plaintiff has already satisfied his burden at least at the pleading stage of showing a policy under *Monell* through Defendant Sini's deliberate indifference.  And, as is specific to this claim, Sini's alleged inaction extended to Plaintiff's multiple letters complaining of discrimination while working at SCPD. Pl. Sec. Am. Compl., ¶ 94, ECF No. 51.  Plaintiff claims he was the only Black member of his unit for most of his tenure at SCPD and that for a four to five-year period beginning in 2010 his mail was the only mail opened without permission by his commanding officer, he was referred to as "boy" by his commanding officer on multiple occasions, he was denied overtime pay for doing presentations that white officers were given overtime pay for, and, in approximately 2013, he found white supremacy literature in his mailbox. *Id.* at ¶ 27.  It was in this environment that Plaintiff was demoted and suspended without pay after criminal charges against him had been dropped.  This mosaic of facts creates a plausible claim that Plaintiff was demoted and suspended by the County at least in part due to his race, and so Plaintiff's §1983

29

claim for employment discrimination against the County of Suffolk should survive the 12(b)(6) stage.

Plaintiff, however, fails to plead facts that each individual Defendant's actions could give rise to a hostile work environment claim on their own.  Instead, Plaintiff appears to argue that each Defendant engaged in an act that constituted an adverse employment action (though I see no allegations that Defendants Pirone or Messina did).  But Plaintiff does not plead facts that show each one of them individually committed that action because of Plaintiff's race.  The only individual Defendant alleged to have committed a specific act showing racial bias was Defendant Hickey, who called Plaintiff "boy" on multiple occasions, and denied him overtime pay for the same work white detectives received overtime pay for.  The other specific act showing racial bias was done anonymously (the white supremacist literature that was placed in Plaintiff's mailbox) and is not attributable to any specific individual Defendant.  The remainder of Plaintiff's allegations as to individuals' racial motives for specific actions are conclusory.  Thus, the only Defendants he can plausibly allege employment discrimination against are the County of Suffolk and Defendant Hickey. As to the other Defendants, the motion to dismiss should be granted.

### ii.    Hostile Work Environment Claim Against All Defendants

Plaintiff's next converted §1981 claim is a §1983 claim for a hostile work environment against all Defendants.

To plead a §1983 hostile work environment claim, Plaintiff must plead facts which create a reasonable inference that the conduct he was subject to: (1) was objectively severe or pervasive such that it creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the Plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of plaintiff's protected status. *Ruiz v. City of New York,* No.

14-CV-5231, 2015 U.S. Dist. LEXIS 117947 at *20-21 (S.D.N.Y. Sept. 2, 2015) (citing *Patane v. Clark,* 508 F.3d 105, 113 (2d Cir. 2007)).  Generally, Plaintiffs must plead behavior that is sufficiently continuous and concerted in order to be deemed pervasive. *Id.* (citing *Raspardo v. Carlone,* 770 F.3d 97, 114 (2d Cir. 2014)).  At the motion to dismiss stage, the Second Circuit has "repeatedly cautioned against setting the bar too high" for these types of claims, and only required "facts sufficient to support the conclusion that [Plaintiff] was faced with 'harassment…of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Id.* (quoting *Patane,* 508 F.3d at 113).

Here, Plaintiff has met his burden at the motion to dismiss stage as to the County of Suffolk. Plaintiff has alleged that he was subjected to racial epithets at work, white supremacist literature was put in his mailbox, he was wrongfully arrested in front of his colleagues, personal details were transmitted to all SCPD employees in violation of protocol, and his personal photographs were thrown in the garbage, and none of this was addressed by a policy maker who knew about it.  These acts would create an environment that a reasonable person would find hostile or abusive, and Plaintiff has made it clear in his complaint and brief that he found the conditions hostile or abusive. *See e.g.* Sec. Am. Compl. ¶ 3 ("Plaintiff perceived during his time with the Department that any error on his part might be used by certain of his superiors as a pretext to harass him…")  Similarly to the employment discrimination claim, he has pled a mosaic of racially tinged incidents sufficient to meet his burden at the motion to dismiss stage that the acts that created the hostile work environment were at least in part because of his race. And he has pled that Sini was put on sufficient notice that he was being subjected to discrimination at work to give rise to *Monell* liability.

However, because Plaintiff has pleaded facts that only give rise to a reasonable inference of individual racial animus on the part of Defendant Hickey, Defendants' motion to dismiss should be granted on these claims as to the other Defendants.

### iii.   Retaliation Claim Against All Defendants

Plaintiff alleges retaliation under §1983 as to all Defendants.  The parties make the same arguments as to these claims as they do the employment discrimination and hostile work environment claims.

Retaliation claims alleging adverse action because of a complaint of discrimination are actionable under §1983. *Vega,* 801 F.3d at 80.  A Plaintiff seeking to allege a retaliation claim under § 1983 must allege facts showing a supervisor, acting under color of law, retaliated against him for opposing discrimination in the terms of his employment. *Id.* at 82.

Plaintiff claims retaliation for his complaints and grievances of racial discrimination.  In October of 2016, Plaintiff contacted George Michels, the delegate of the Suffolk Detectives Association, for the purpose of filing a grievance regarding both discrimination and the return of the property SCPD had seized from him. Pl. Sec. Am. Compl. ¶ 74, ECF No. 51.  On November 3, 2016, Plaintiff submitted a formal grievance. *Id.* at ¶ 77.  On November 14, 2016, Plaintiff filed three new formal grievances alleging discrimination. *Id.* at ¶¶ 79-80.  More than five months after those grievances were filed, on March 29, 2017, and Plaintiff was told the IAB investigation cleared him of wrongdoing, Plaintiff was asked to undertake a fit for duty examination and to sign for a letter which was represented to Plaintiff as containing an order to submit to such an examination. ¶¶ 85-86.  Plaintiff believed the order came from Defendant Gigante because Sergeant Gansrow (not a Defendant in this action) from the Medical Evaluation Unit told him it came from a Chief whose name started with the letter "G." *Id.* at ¶ 87.  Plaintiff

refused to sign for the letter and Captain Kane (not a Defendant in this action) suspended him. *Id.* at ¶¶ 88-91.  Plaintiff also notes that Thomas Walsh, a white detective, misrepresented his physical abilities to the SCPD on four separate occasions. *Id.* at ¶ 103.  He alleges "upon information and belief" that Walsh was never subject to a fit for duty examination but cannot state that based on personal knowledge. *Id.*

Plaintiff alleges that the medical evaluation order and subsequent suspension purportedly for refusing to undergo the fit for duty examination were in retaliation for his complaints and grievances of racial discrimination. Pl. Opp. Br., 23, ECF No. 65-5; Pl. Sec. Am. Compl., ¶¶ 122(b)-122(c), ECF No. 51.  However, he offers only conclusory allegations for that contention. Nowhere in the complaint does Plaintiff allege facts which would lead to a reasonable inference that this fit for duty examination order was in retaliation for his complaints, nor that his suspension on April 12, 2017 was a result of his filing of grievances, as opposed to his refusal to sign that he received a letter after a superior ordered him to do so.  Without any facts supporting a causal link between the filing of the complaints and the examination order and suspension or even a timeframe which would support an inference of causation (the first request to submit to an examination came almost half a year after Plaintiff filed complaints), Plaintiff has not satisfied the pleading standard on a retaliation claim.

Plaintiff also claims the end of his employment at SCPD was retaliation for his complaints. Pl. Sec. Am. Compl., ¶142(g), ECF No. 51.  However, Plaintiff informed Defendant Hanley he would not be returning to SCPD; he was not fired. *Id.* at ¶ 97.  He claims this was constructive termination.  Even if I accept this was a constructive discharge, the pattern of harassment and discrimination that would have made his employment intolerable such that he had to leave started and was persistent before his complaints and grievances were submitted. *See*

*id.* at ¶¶ 1-73.  That was why he submitted those complaints.  This weighs against a finding that discriminatory conditions which allegedly led to Plaintiff's retirement were in retaliation to Plaintiff's complaints, and Plaintiff has not alleged specific facts showing a causal connection.

Therefore, I recommend Defendants' motion to dismiss be granted as to Plaintiff's retaliation claims.

### iv.    Disparate Treatment Claims

Next, Plaintiff brings a §1983 claim alleging disparate treatment in violation of civil rights against the County of Suffolk and the individual defendants in their personal capacities.

Defendants argue Plaintiff has not met the pleading standard because he has only pled facts about one white comparator to sustain his disparate treatment claims, and that comparator is not similarly situated to Plaintiff. Def. Br., 20-21, ECF No. 65-1.  Plaintiff meanwhile argues the complaint is rife with comparisons to how white officers were treated, and those facts are sufficient to show disparate treatment at the motion to dismiss stage.

Disparate treatment claims require the Plaintiff establish that (1) he is a member of a protected class; (2) he is qualified for employment in the position; (3) he suffered an adverse employment action; and (4) some minimal evidence suggesting an inference that the employer acted with a discriminatory motivation. *Littlejohn v. City of New York,* 795 F.3d 297 (2d Cir. 2015).  The Defendants only contest the fourth element in their brief.

An inference of discrimination can arise from an employer's criticism of the Plaintiff's performance in ethnically degrading terms, an employer's invidious comments about others in the employee's protected group, or the more favorable treatment of employees not in the protected group. *Id.* (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

However, to show discrimination in this last manner, the Plaintiff must show he was similarly situated in all material respects to the individuals he is comparing to. *Mandell* 316 F.3d at 379.

Plaintiff has made a plausible claim for disparate treatment by the County of Suffolk. Contrary to Defendants' contentions, there are numerous examples given by Plaintiff of situations where white officers were treated in a manner preferential to Plaintiff. Plaintiff claimed he was denied overtime for performing the same presentations for which white officers were paid overtime. Pl. Sec. Am. Compl. ¶ 27(c), ECF No. 51. Plaintiff claims he received white supremacy hate literature in his mailbox, but no other detectives in his unit received this literature. *Id.* at ¶ 27(d). Plaintiff claims his police vehicle was taken from him without any explanation and given to a white detective. *Id.* at ¶ 29. Plaintiff claims white officers kept personal photographs on display in their workspaces but when Plaintiff did, his photos were repeatedly thrown in the trash. *Id.* at ¶ 28. Plaintiff claims the investigation into the criminal complaint filed against him was marked by many irregularities and violations of official procedures. *Id.* at ¶¶ 40-59. Added to all this is Plaintiff's allegations with regards to Thomas Walsh, a white detective. *Id.* at ¶ 103. He claims Walsh had four IAB investigations pending against him at the time of his retirement, but was allowed to keep his firearm, badge, uniform, and pistol permit, while Plaintiff was not, despite being cleared in his single IAB investigation. Pl. Opp. Br., 15, ECF No. 65-5. He also claims Walsh misrepresented his physical capabilities to SCPD on four occasions but was not subject to a fit for duty examination, whereas Plaintiff was. *Id.* at ¶103.

I recognize that Walsh is not an exact comparator to Plaintiff, as Defendants contend. There is no evidence Walsh had a criminal complaint pending during his IAB investigations, as Plaintiff did. However, Walsh was the same rank as Plaintiff and had ongoing IAB

35

investigations after which he was treated more favorably than Plaintiff. That added to the rest of Plaintiff's allegations which are certainly regarding similarly situated white employees at SCPD are enough to present minimal evidence creating a plausible inference of discriminatory intent. Given my earlier *Monell* analysis, Plaintiff has therefore stated a claim against the County of Suffolk for disparate treatment.

However, Plaintiff fails to plead sufficient facts to show each of the individual Defendants' actions by themselves would make out a claim for disparate treatment, as required for personal liability under §1983. While Plaintiff cites to many of the individual Defendants' actions as evidence of overall disparate treatment, he does not allege even minimal facts of discriminatory motivation at the individual level except regarding Defendant Hickey, who both called him "boy" on multiple occasions and denied Plaintiff overtime pay for the same work he gave overtime pay to white officers for. *Id.* at ¶ 27. Therefore, Defendants' motion to dismiss should be granted for all other Defendants in their personal capacities on the claim of disparate treatment.

### v.   Equal Protection Claim

Next, Defendants argue that Plaintiff's equal protection claim must be dismissed because Plaintiff has failed to allege a law or policy has been applied in a discriminatory manner. Plaintiff points to irregularities in his investigation, his demotion, the failure to pay him as others were paid, and the restrictive policy regarding his service weapon as examples of policies which were applied in an intentionally discriminatory manner.

To successfully plead a §1983 intentional discrimination claim under the Equal Protection Clause, Plaintiff must plausibly allege "Defendants' use of an express racial classification, Defendants' intentional application of a facially neutral law in a discriminatory

manner, or a facially neutral statute or policy that has an adverse effect and was motivated by discriminatory animus." *Bacon v. Suffolk Legislature,* No. 05-CV-4307, 2007 WL 2288044, 2007 U.S. Dist. LEXIS 57925 at *22 (E.D.N.Y. Aug. 8, 2007) (citing *Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir. 1999)).  Nowhere in Plaintiff's complaint or brief does he allege an express racial classification or a law which was applied in a discriminatory manner.  Instead, he alleges the policies applied to him were applied in a manner that had an adverse effect on him and were motivated by discriminatory animus.

As noted in more detail earlier in this report and recommendation, Plaintiff has plausibly pled that policies were applied which adversely impacted him and were applied differently to similarly situated white officers.  The question then is whether Plaintiff has plausibly pled discriminatory animus against all Defendants.

As discussed more fully in the analysis of Plaintiff's employment discrimination claims, he has only plausibly alleged discriminatory animus as to the individual defendants by Defendant Hickey.  Under *Monell* and the discriminatory intent mosaic presented, the County of Suffolk cannot be dismissed from the action, because Plaintiff has plausibly alleged a policy of discrimination against it.  Therefore, I recommend dimsissal be granted on Plaintiff's equal protection claims to all Defendants except the County of Suffolk and Defendant Hickey.

### vi.    Failure to Supervise, Investigate, Intervene, Train and/or Discipline

Plaintiff's twelfth cause of action is a failure to supervise, investigate, intervene, train, and/or discipline by all Defendants.  Defendants argue Plaintiff has failed to plausibly allege a necessary element to such a claim, that the failure was the result of deliberate indifference, and therefore this claim should be dismissed.  Plaintiff argues that a municipal defendant repeatedly

failing to investigate charges of a violation of civil rights does constitute deliberate indifference under the law, and that that is what occurred here.

To plausibly allege such a claim, Plaintiff must plead facts which lead to a reasonable inference that Defendants failed to supervise, investigate, intervene, train, and/or discipline their employees, that that failure resulted in the constitutional deprivation Plaintiff suffered, and that Defendants' failure reflected deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378 (1989).

Plaintiff's argument rests on supervisors within the SCPD failing to act on Plaintiff's repeated complaints that he was being discriminated against.  Regarding the property plaintiff alleges was unlawfully seized, he filed a grievance request to Defendant Sini and submitted a grievance addressed to Defendant Barry to Defendant Pirone who contacted Plaintiff to tell him the property would be returned. Pl. Sec. Am. Compl. ¶¶ 76-78, ECF No. 51.  Regarding his claims of discrimination, he filed three grievances, all given to Defendant Pirone, one addressed to Defendant Sini, one to Defendant Barry, and one to Defendant Burke. *Id.* at ¶ 79.  He later, through his attorney, also sent multiple communications to Defendants Sini and Barry asserting discrimination on the basis of race. *Id.* at ¶94.  Plaintiff claims no action was taken on any of these complaints.

Defendants do not contest that Plaintiff has pleaded facts to plausibly allege a failure to at minimum intervene nor that he has plausibly alleged that that failure resulted in an alleged constitutional deprivation.  Defendants contest only Plaintiff's assertion that he has sufficiently pled deliberate indifference by all Defendants.

Plaintiff is correct that allegations of repeated notice of constitutional violations can sufficiently make out a claim for deliberate indifference if no action or merely superficial action

is taken on them. *Fiacco v. Rensselaer,* 738 F.2d 319, 328 (2d Cir. 1986).  It is this very alleged deliberate indifference by a policy maker (Defendant Sini) which allows Plaintiff's claims against the County of Suffolk to proceed past the motion to dismiss phase of this litigation.  As for the individual Defendants, only those who are alleged to have been on repeated notice and failed to intervene can be liable, as Plaintiff has alleged no other avenue for pleading deliberate indifference.  That includes Defendants Sini, Barry, Burke, and Pirone.

I, therefore, recommend that Defendants' motion to dismiss these claims be granted except as to Defendants the County of Suffolk, Sini, Barry, Burke, and Pirone.

### vii.  Denial of Due Process Regarding the "Fit for Duty" Examination and Subsequent Letter

Plaintiff's thirteenth cause of action is a §1983 claim alleging violation of Plaintiff's Fourteenth Amendment right to Due Process.  His basis for that claim is his suspension on April 12, 2017 where he was allegedly wrongfully suspended for refusing to undergo a fit for duty examination and his subsequent alleged constructive termination.  He claims this resulted in a denial of his "interest in 'life liberty or property' (in fact his entire livelihood), without due process, or any process or opportunity to be heard for that matter." Pl. Opp. Br., 19, ECF No. 65-5.  For Plaintiff to survive a 12(b)(6) motion on such a claim, he must plausibly allege (1) that he possessed a cognizable liberty or property interest and (2) that the employer deprived him of one or more of those interests 'without providing process adequate to justify its actions.'" *Malone v. City of New York,* No. 05-CV-2882, 2006 WL 2524197, 2006 U.S. Dist. LEXIS 61866 (E.D.N.Y. Aug. 30, 2006) (quoting *Velez v. Levy,* 401 F.3d 75, 87 (2d Cir. 2005)).  A property interest in employment is implicated by terminations, but also by suspensions without pay. *Narumanchi v. Board of Trustees,* 850 F.2d 70, 72 (2d Cir. 1988).  Prior to a termination, notice

and opportunity for a public employee to be heard is required. *Gilbert v. Homar,* 520 U.S. 924, 929 (1997).

At the outset, I note that Plaintiff cannot sustain any cause of action for procedural due process violations for his alleged constructive discharge. His claim in his complaint is that "the SCPD notified Plaintiff that if he was to be found 'guilty' of the purported offense underlying the second suspension, Plaintiff would be discharged. Not wanting to be involuntarily and illegally terminated, which would have deprived Plaintiff of his long and hard-earned pension, Plaintiff was forced to announce his retirement…" Pl. Sec. Am. Compl. ¶ 95, ECF No. 51. Far from Plaintiff being denied notice and the opportunity to be heard, it appears from Plaintiff's own allegation that he was notified of a proceeding prior to any potential termination and decided to forgo it. Plaintiff cannot now claim he was not given notice and the opportunity to be heard as required, given that he decided not to participate in that process.

That leaves us with the unpaid suspension which Plaintiff says Defendants based on false grounds, that Plaintiff disobeyed an order to report to the Medical Evaluation Unit. *Id.* at ¶ 92. While unpaid suspensions require some process, "a public employee need not be afforded a hearing prior to a suspension – as opposed to a termination – without pay." *Clavin v. Post*, 992 F. Supp. 359, 363 (S.D.N.Y. 1998) (citing *Gilbert,* 520 U.S. 924). However, some procedural protection to ensure the employer's action was justified is still necessary, as a suspension without pay implicates a property interest, albeit one less than termination. *O'Connor v. Pierson,* 426 F.3d 187, 197 (2d Cir. 2005). According to Plaintiff, this suspension occurred on-the-spot, so there was no pre-suspension notice and opportunity to be heard. *Id.* at ¶ 91. The suspension lasted 30 days and during that time, Plaintiff's attorney sent multiple communications to Defendant Sini, including some which stated the grounds for his suspension were false. *Id.* at ¶

94.  Based on Plaintiff's complaint, no process occurred after he was suspended until he returned to work and was suspended again, at which point some sort of hearing appears to have been scheduled regarding his potential termination. *Id.* at ¶ 95.  Because Plaintiff has alleged no pre- or post-suspension process occurred for his April 12, 2017 30-day unpaid suspension for refusing an order to submit to a fit for duty examination, he has plausibly alleged a due process claim against his employer, the County of Suffolk.

However, Plaintiff has failed to allege the personal participation of any of the individual Defendants in this suspension.  Therefore, I recommend Defendants' motion to dismiss be granted on this claim as to all Defendants except the County of Suffolk.

### viii.    Illegal Search of Plaintiff's House and Seizure of His Property Without A Warrant

Though this is pleaded as a claim arising out of the Fourteenth Amendment Due Process Clause, a Section 1983 claim for unlawful search and seizure rests on the Fourth Amendment right to be free from unreasonable searches and seizures, incorporated against the states through the Fourteenth Amendment. *Bristol v. Queens County,* No. 09-CV-5544, 2013 WL 1121264, 2013 U.S. Dist. LEXIS 41655 at *29 (E.D.N.Y. 2013).

According to Plaintiff, Defendant O'Brien told Plaintiff that the SCPD had a search warrant for his home for the purpose of retrieving the clothes Plaintiff was wearing the night of the alleged assault and Plaintiff's personal licensed handguns. Pl. Sec. Am. Compl. ¶ 49, ECF No. 51.  O'Brien allegedly never showed Plaintiff a warrant or order authorizing the search, despite Plaintiff asking to see one. *Id.* at ¶ 50.  Plaintiff claims to still not have seen a warrant, as of the date of the Second Amended Complaint. *Id.* at ¶ 54.  He claims a search and seizure of his vehicle was conducted under the direction of Defendant O'Brien and that it was done without a warrant, without Plaintiff's consent, and without impound paperwork. *Id.* at ¶¶ 54-55.  Plaintiff

claims that as of the date of the Second Amended Complaint, his property has not been returned to him. *Id.* at ¶¶ 57- 58.

Defendants argue that these actions were carried out "in the normal course of business of the SCPD upon allegations of criminal conduct lodged against Plaintiff." Def. Br., 23, ECF No. 65-1.  However, notably absent from Defendants' brief is a contention that a warrant was issued or that an exception to the warrant requirement applied.  Regardless, at this stage the Court accepts the facts that Plaintiff pleads in his complaint as true.

"Searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City v. Stuart,* 547 U.S. 398 (2006).  Plaintiff has pleaded that he believes no warrant existed for that search and seizure, and that a warrant has never been supplied to him despite multiple requests.  He also pleads that he filed a grievance request and had his attorney mail and fax a letter to Defendant Sini that his property was being unlawfully held by SCPD. Pl. Sec. Am. Compl. ¶ 76, ECF No. 51.  That is enough at this stage to plausibly allege the County of Suffolk violated his right to be free from unlawful search and seizure.

However, once again Plaintiff cannot sustain the pleading standard as to all Defendants. Plaintiff alleges facts supporting personal participation in the unlawful search and seizure by Defendant O'Brien, who he says ordered the searches and seizures. *Id.* at ¶¶ 49-52, 54-55.  He additionally alleges that Defendant Pirone was put on notice multiple times that his property was being unlawfully held, and that Pirone did not remedy the situation. *Id.* at ¶¶ 75, 77-78.  That makes out a plausible claim for personal participation by Pirone under *Colon v. Coughlin* for failing to remedy the allegedly illegal seizure after having been informed of it.  Therefore, dismissal should be granted to Defendants on this claim as to every Defendant except the County of Suffolk and Defendants O'Brien and Pirone.

### V.      Plaintiff's §1985 Claim

Finally, Defendants argue Plaintiff's §1985 claim alleging conspiracy against all Defendants must be dismissed. Defendants argue that Plaintiff fails to allege facts supporting an inference of an agreement or a meeting of the minds, which is a required element of such a claim.  Plaintiff meanwhile merely conclusively argues, "In his complaint, Plaintiff set forth facts specific [sic] detailing a custom of racially motivated animus on the part of Defendants to the point where it was a well-known custom within the department. Plaintiff has stated that it pervaded…Exhibits and documents incorporated illustrate this fact….The conspiracy alleged is supported by facts that each Defendant was aware of the racially motivated animus toward the defendant and acted in conformity." Pl. Opp. Br., 20-21, ECF No. 65-5.

To make out a claim under 42 U.S.C. §1985(3), Plaintiff must allege facts showing: (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) Plaintiff was deprived of a federal right by the act; and (5) the conspiracy is motivated by racial animus. *Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir. 1999).  To sufficiently allege a conspiracy, the Plaintiff must "provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Martinez v. County of Suffolk,* 999 F. Supp. 2d 424, 431 (E.D.N.Y. 2014) (quoting *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir. 2003)).

Just as in *Goord,* Plaintiff here has only alleged in a conclusory fashion that the Defendants actions themselves show conspiracy, not any facts which would give rise to the reasonable inference that there actually was such an agreement between all Defendants.  *See* Pl. Sec. Am. Compl. ¶225 ("Defendants actions and inactions…represent a conspiracy among them to treat this plaintiff disparately…).  While I recognize it is difficult for a Plaintiff at this stage to

43

show such an agreement or meeting of the minds occurred, to satisfy the pleading standard, more must be alleged than just conclusive statements. Plaintiff cannot point to any fact in his brief showing that the conduct that occurred was pursuant to an agreement, tacit or otherwise, amongst the Defendants. As such, I recommend this claim be dismissed.

## CONCLUSION

For the reasons given, I recommend that the Court: (1) Dismiss all claims against the Suffolk County Police Department; (2) Dismiss all claims against the individual Defendants in their official capacity as duplicative of the claims against the County of Suffolk; (3) Dismiss all claims against William Madigan in his personal capacity; (4) Dismiss Plaintiff's employment discrimination claims as to all Defendants except the County of Suffolk and James Hickey; (5) Dismiss Plaintiff's hostile work environment claims except as to the County of Suffolk and James Hickey; (6) Dismiss Plaintiff's retaliation claims; (7) Dismiss Plaintiff's disparate treatment claims except as to the County of Suffolk and James Hickey; (8) Dismiss Plaintiff's equal protection claims except as to the County of Suffolk and Defendant Hickey; (9) Dismiss Plaintiff's failure to supervise, investigate, intervene, train and/or discipline claims except as to the County of Suffolk and Defendants Sini, Barry, Burke, and Pirone; (10) Dismiss Plaintiff's Due Process claims except as to the County of Suffolk; (11) Dismiss Plaintiff's illegal search and seizure claims except as to the County of Suffolk and Defendants O'Brien and Pirone; and (12) Dismiss Plaintiff's conspiracy against rights claims (§1985).

This would result in all claims against Defendant Suffolk County Police Department and Defendants Madigan, Gigante, McLaughlin, and Messina in their personal capacities being dismissed. The claims against them in their official capacities are claims against the County of Suffolk, which remains party to the action.

Plaintiff's remaining claims would be §1983 claims for: (1) employment discrimination against the County of Suffolk and Defendant Hickey; (2) hostile work environment against the County of Suffolk and James Hickey; (3) disparate treatment against the County of Suffolk and James Hickey; (4) equal protection violations against the County of Suffolk and Defendant Hickey; (5) failure to supervise, investigate, intervene, train, and/or discipline against the County of Suffolk and Defendants Sini, Barry, Burke, and Pirone; (6) violation of procedural due process against the County of Suffolk; and (7) illegal search and seizure against the County of Suffolk and Defendants O'Brien and Pirone.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections. Failure to file timely objections shall constitute a

waiver of those objections both in the District Court and on later appeal to the United States

Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir.

2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*,

No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also*

*Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
     February 18, 2022