UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
TROY GIBSON,                                                        Docket No.: 19-cv-03871
                                                                                             (GRB) (ST)

                               Plaintiff,
        -against-


THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, TIMOTHY SINI, GERARD GIGANTE,
JOHN O'BRIEN, MICHAEL PIRONE, JOHN BARRY,
JOANN MCLAUGHLIN, JAMES BURKE, JAMES HICKEY,
WILLIAM MADIGAN, AND MICHAEL MESSINA,

                               Defendants.
---------------------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF JAMES HICKEY'S MOTION TO DISMISS

DENNIS M. COHEN
Suffolk County Attorney
*Attorney for Suffolk County, Suffolk County Police Department, Timothy Sini, Gerard Gigante, John O'Brien, Michael Pirone, John Barry, JoAnn McLaughlin, James Hickey, William Madigan and Michael Messina*

By: Hope Senzer Gabor
Assistant County Attorney
H. Lee Dennison Building
P.O. Box 6100
100 Veterans Memorial Highway
Hauppauge, New York 11788
(631) 853-5822

Dated: Hauppauge, New York
       July 25, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..iii

PRELIMINARY STATEMENT……………………………………………………………….1

    A. Background……………………………………………………………………………1

STATEMENT OF RELEVANT FACTS…………..……......................................................................................................3

ARGUMENT

POINT I

THE CLAIMS AGAINST HICKEY MUST BE DISMISSED……….……………………..9

 POINT 11

ALL REMAINING CALIMS AGAINS DEFENDANT JAMES HICKEY ARE TIME BARRED AND MUST DISMISSED......…………………..……………………………………….11

POINT III

THE CONTINUSING VIOLATION DOCTRINE IS INAPPLICABLE TO PLAINTIFF'S CLAIMS AGAINST HICKEY…………………………………………………………………..12

CONCLUSION……………………………………………………………………………..12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bentacourt v. City of New York HRA/DSS*,
  2007 WL 2948345*2 [SDNY Oct. 9, 2007] .................................................................. 10

*DeJesus v. Sears, Roebuck & Co., Inc.*,
  87 F 3d 65 [2d Cir 1996] ............................................................................................. 10

*Gibson v. County of Suffolk*,
  2022 WL 1063017 [EDNY February 18, 2022]. .................................................. 11, 12

*Hanig v. Yorktown Cent. Sch. Dist.*,
  384 F Supp 3d 710 [SDNY 2005] ............................................................................. 10

*Hishon v. King & Spalding*,
  467 US 69 [1984] ....................................................................................................... 10

*In re Scholastic Corp. Sec. Litig.*,
  252 F 3d 63 [2d Cir. 2001] ......................................................................................... 10

*Metrokane, Inc. v. Wine Enthusiast*,
  185 F Supp 2d 321 [SDNY 2002] ............................................................................. 10

*Nghiem v. U.S. Dept. of Veterans Affairs*,
  451 F Supp 2d 599 [SDNY 2006] ............................................................................. 10

*Patterson v. County of Oneida*,
  373 F 3d 206 [2d Cir 2004] ........................................................................................ 11

*Rutherford v. Katonah-Lewisboro Sch. Dist.*,
  670 F Supp 2d 230 [SDNY 2009] ............................................................................. 10

*Sira v. Morton*,
  380 F 3d 57 [2d Cir 2004] .......................................................................................... 10

*U.S. v. Space Hunters, Inc.*,
  429 F 3d 416 [2d Cir 2005] ........................................................................................ 10

Statutes
42 USC § 1981 ................................................................................................................. 1
42 USC § 1983 ................................................................................................................. 1
42 USC § 1985 ............................................................................................................ 1, 2
42 USC § 2000e ............................................................................................................... 1

Rules
CPLR § 214(5) ............................................................................................................... 11
Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................................. 1, 10

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted by Defendant, James Hickey ("Hickey") by and through his attorney, Dennis M. Cohen, Suffolk County Attorney, by Hope Senzer Gabor, Assistant County Attorney, in support of his motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint against him in its entirety. In the Second Amended Complaint, Plaintiff, Troy Gibson ("Plaintiff" or "Gibson"), alleges that Hickey discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e *et seq*. ("Title VII"), 42 USC § 1981 ("Section 1981") and 42 USC § 1983 ("Section 1983"). Plaintiff also alleges conspiracy pursuant to 42 USC § 1985 ("section 1985") and causes of action under New York State law for conversion and replevin.

    A. **Background**

Prior to the filing of Plaintiff's Second Amended Complaint, Hon. Joan M. Azrack issued an Order Adopting the Report and Recommendations of Hon. Steven L. Tiscione, which dismissed Plaintiff's causes of action under Title VII, Conversion and Replevin. [DE 49). Accordingly, Plaintiff's First, Second, Ninth and Tenth Causes of Action, pursuant to Title VII, Conversion and Replevin are moot and will therefore not be addressed in the instant Motion to Dismiss.

After Plaintiff filed a Second Amended Complaint, a second Motion to Dismiss was filed seeking dismissal against all Defendants with the exceptions of Burke and Hickey. [DE 65] After the motion was filed, the Suffolk County Attorney's office filed a Notice of Appearance on behalf of Hickey. [DE 70] On August 24, 2021, a letter request addressed to Judge Azrack was filed for a pre-motion conference seeking permission to file a 12(b)(6) motion to dismiss the Plaintiff's Second Amended Complaint as against James Hickey. [DE 71]. On November 5, 2021, Judge Azrack issued an Order referring that request [DE 71] to Magistrate Tiscione. On February 18,

2022, Magistrate Tiscione filed a Report and Recommendation [DE 74] concerning the Motion to Dismiss and on March 16, 2022, Hon. Gary Brown issued an Order adopting the Report and Recommendation which determined that: (1) all claims against the Suffolk County Police Department be dismissed; (2) all claims against the individual Defendants in their official capacity be dismissed as duplicative of the claims against the County of Suffolk; (3) all claims against William Madigan in his personal capacity be dismissed; (4) Plaintiff's employment discrimination claims as to all Defendants except the County of Suffolk and Hickey be dismissed; (5) Plaintiff's hostile work environment claims except as to the County of Suffolk and Hickey be dismissed; (6) Plaintiff's retaliation claims be dismissed; (7) Plaintiff's disparate treatment claims except as to the County of Suffolk and Hickey be dismissed; (8) Plaintiff's equal protection claims except as to the County of Suffolk and Hickey be dismissed; (9) Plaintiff's failure to supervise, investigate, intervene, train and/or discipline claims except as to the county of Suffolk and Defendants Sini, Barry, Burke, and Pirone be dismissed; (10) Plaintiff's Due Process claims except as to the County of Suffolk be dismissed; (11) Plaintiff's illegal search and seizure claims except as to the County of Suffolk and Defendants O'Brien and Pirone be dismissed; and (12) Plaintiff's conspiracy against rights claims (§ 1985) claims be dismissed.

Thereafter, on March 24, 2022, Defendant Hickey requested a pre-motion conference seeking permission to make a motion to dismiss [DE 75], since the Court did not address the first request for a pre-motion conference which was filed on August 24, 2021 [DE 71], and referred to Magistrate Tiscone on November 11, 2021 for consideration. On June 10, 2022 a pre-motion conference was held before Magistrate Tiscone, during which time a briefing schedule was set for the instant motion concerning Defendant Hickey's Motion to Dismiss all claims against him on Statute of Limitations grounds. [DE 80].

# STATEMENT OF RELEVEANT FACTS

Plaintiff, a black male, was a detective with the SCPD who was hired as an officer in 1995 and promoted to the rank of Detective in 2001 (Gabor Declaration, Exhibit "A" , Second Amended Complaint, ¶ 2, 23)  Plaintiff alleges, that for a four to five year period commencing in 2010, his mail was being opened without his permission, which upon information and belief, none of the white detectives had a similar experience; that Hickey referred to him as "boy" on multiple occasions; that Hickey denied him overtime pay for doing presentations on gang awareness, while white officers were allowed to receive overtime pay; that in 2013 he found white supremacy literature in his mailbox; that his personal photographs on display in his work area were removed and thrown into the garbage and that his assigned vehicle was taken away from him and given to a white detective. *Id.*  ¶¶ 27, 28, 29.

Plaintiff alleges that due to false allegations filed by his ex-girlfriend, he was arrested on October 2, 2015 by O'Brien.  At that time, O'Brien took Plaintiff's work and personal phones from him.  *Id.*  ¶¶ 40, 47, 48. Plaintiff's home was searched and clothing and handguns were removed and his vehicle was taken to the Fifth Precinct. *Id.* ¶¶ 49, 55.  Plaintiff alleges that the SCPD refused to return his clothing and personal firearms to him, and that upon information and belief, his property remains in the custody and control of the SCPD. *Id.* ¶¶ 57, 58. Plaintiff claims that on October 7, 2015, the SCPD issued personnel order 15-188b, suspending him without pay, as of Friday October 2, 2015, the time of his arrest, and that sometime during October 2015, the SCPD issued a second personnel order, 15-1888a, to all employees stating the criminal charge against Plaintiff and the underlying details of the charge. Plaintiff further alleges that the second personnel

order disclosed information regarding a confidential pending investigation, in direct contravention of SCPD policies and procedures. *Id.* ¶ 60.

Upon information and belief, Plaintiff alleges that the purpose of issuing the second personnel order was to humiliate and harass Plaintiff, and that it was subsequently deleted from the system which, he alleges, was a violation of protocol. *Id.* ¶ 61. Plaintiff was reinstated to full duty status on November 2, 2015 pursuant to personnel order 15-188b. His unpaid suspension was for 31 days, which he alleges violated SCPD rules and procedures which provide for a maximum 30 day unpaid suspension. *Id.* ¶ 62.

Plaintiff returned to work in the Criminal Intelligence Division under the same terms and conditions that existed prior to his arrest, however he was required to leave his service weapon at work and sign it out each morning in an official SCPD book used for that purpose. *Id.* ¶ 63. Several weeks later, Plaintiff alleges that he was advised that he was receiving an involuntary transfer out of the Criminal Intelligence division to a general detective squad, which he alleges was less prestigious and desirable that his positon in Criminal Intelligence. Plaintiff alleges, upon information and belief, that O'Brien and Lieutenant William Burke arranged for the involuntary transfer and that there was no legitimate nor non-discriminatory purpose for the transfer. Plaintiff further alleges that he was the only black detective in the Criminal Intelligence section and had been the only black detective for years when he was transferred. Plaintiff alleges, upon information and belief that the involuntary transfer was motivated by racial animus against him. *Id.* ¶¶ 64, 65, 66, 67.

In January, 2016 Plaintiff was transferred to the Third Squad Detectives, which was under the oversight of Commanding Officer Detective Lieutenant Crowley. Plaintiff alleges that Crowley informed him that on orders from Gigante, the Chief of Detectives, that he would be

assigned as the administrative detective for the Third Squad, that he would not be given overtime opportunities, and that he would not be allowed to work any night tours (and therefore not eligible for night differential pay). Plaintiff further alleges that he received few to no overtime opportunities and little to no overtime pay, for the remainder of his tenure with the SCPD. *Id.* ¶ 69.

The criminal case against Plaintiff was dismissed on October 5, 2016. Crowley was replaced by Pirone, who Plaintiff alleges called him at home that evening to inform him that the case was dismissed. When Plaintiff reported to work on October 7, 2016, he alleges that Pirone informed him that he would not be allowed to take his service weapon home, and that he had to sign his weapon in every morning and back in every night in a paper calendar provided by Pirone, and that Pirone ordered Plaintiff not to tell anyone about this procedure. *Id.* ¶¶ 70,71.

Plaintiff alleges that in October 2016, he contacted George Michels, the Suffolk County Detectives Association delegate for the purpose of filing a grievance regarding discriminatory practices and the return of his personal property. *Id.* ¶ 74. During October and November 2016, Plaintiff alleges that he undertook efforts to have his personal property returned, that he be returned to the Criminal Intelligence section and to obtain back pay for the period of his 2015 suspension. Plaintiff states that he notified Sini, the Police Commissioner, that his personal property had not yet been returned by filing a 10-42 grievance request and by having his then attorney fax and mail a letter to Sini advising him that Plaintiff's property was being improperly held. *Id.* ¶ 75, 76. Plaintiff further alleges that on November 3, 2016, he submitted a formal grievance (10-42) request to meet with Barry, the Deputy Commissioner. Plaintiff alleges that the 10-42 was first given to Pirone and Plaintiff further alleges that he sent a text message to Pirone to inform him that he intended to go to the Suffolk County Legislature to seek help in remedying the discriminatory

5

treatment against him. Plaintiff alleges that he received a call from Pirone asking Plaintiff to hold the 10-42 in abeyance until November 8, 2016, indicating that he should be able to return Plaintiff's property by November 8, however November 8 passed and Plaintiff received no further updates and his property and not returned to him. *Id.* ¶¶ 77, 78.

Plaintiff alleges that on November 14, 2016, he filed three new formal grievances, addressed to the Chief of the Department, the Police Commissioner and the Deputy Commissioner and as per Department protocol, gave all of the grievances to Pirone. Plaintiff further alleges that the grievances addressed charges of corruption and discrimination, and that he never received any response to them. *Id.* ¶¶ 79, 80.

Plaintiff alleges that on January 16, 2017, he responded to an email from Sergeant Robert Lehman of the IAB regarding its investigation relating to the complaint by his ex-girlfriend, noting that he had not received fair or impartial treatment during the investigation, arrest or aftermath of the case. Plaintiff alleges that he copied McLaughlin, the Commanding Officer of the IAB on the email, alleging that the purpose for doing so was to notify her that he was being treated in a discriminatory manner so that the IAB would open an investigation into potential racial discrimination against him. *Id.* ¶¶ 81, 82. On January 25, 2017 Plaintiff was interviewed by the IAB and on January 26, 2017, Plaintiff alleges that Pirone and Lehman informed him that he was cleared in the investigation. Plaintiff alleges that in his presence, Lehman told Pirone by phone that the IAB determined that Plaintiff had not committed any wrongdoing and that the IAB case was closed. *Id.* ¶ 83. Plaintiff further alleges that the IAB never provided him with paperwork notifying him of the results of the investigation and, upon information and belief that his supervisors, Pirone and Gigante wanted it to appear as if the investigation was still open. *Id.* ¶ 84.

On March 29, 2017, Plaintiff alleges that he was called into Pirone's office and informed that Pirone received a phone message that Plaintiff would need to call Sergeant Gansrow from the Medical Evaluation Unit about taking a fit for duty examination. *Id.* ¶ 85. Plaintiff alleges that he spoke with Gansrow who indicated that Plaintiff would need to sign a letter that contained an order for him to appear before Dr. Coyle to take a fit for duty examination. *Id.* ¶ 86. Plaintiff alleges that he inquired as to where the instruction was coming from and Gansrow first stated that it came from a Chief whose name started with the letter "G", but then stated that it came from IAB, but he would not tell Plaintiff who at IAB requested it. Upon information and belief, Plaintiff alleges that the "Chief" was Gigante. *Id.* ¶ 87. Plaintiff further alleges that Gansrow told him that he would need to sign for a letter which contained an order for him to appear before Dr. Coyle to take a fit for duty examination. Plaintiff alleges that he conducted a search and determined that there was no "Dr. Coyle" in Cutchogue, N.Y. and since he did not see the envelope or its contents, he refused to sign for it. *Id.* ¶ 88.

On April 12, 2017, Plaintiff alleges that Pirone told him that members of the IAB were on their way to the Third Precinct to get him to accept the sealed letter and, if he refused to accept it, he would be brought up on insubordination charges. Plaintiff alleges that Captain Kane and Lieutenant John Fives from IAB arrived and that Kane ordered him to go to the Medical Evaluation Unit. Plaintiff alleges that he stated that he would go to the unit, however, he would not accept the sealed letter, noting that this was not the protocol for a fit for duty examination and that it would be unlawful to force him to sign for the letter and its unknown contents. Plaintiff then alleges that Kane would call to see if he could just go to the Medical Evaluation Unit. *Id.* ¶ 89. It is further alleged that Kane spoke with Gigante by phone in a separate room for approximately 30 minutes, and then Kane informed Plaintiff that he would have to accept the letter. Thereafter,

7

Plaintiff alleges that he repeated that he would go to the Medical Evaluation Unit, but that he would not accept the letter, expressing his concern that the letter could contain a false statement that he is unwell for duty, which he would be acknowledging with his signature, and which would then be used as pretext for an adverse employment action against him. *Id.* ¶ 90. Plaintiff again refused to sign for the sealed letter and Kane suspended him on the spot and ordered him to turn over his identification card, his shield, and his access key for the Third Precinct. *Id.* ¶ 91. Plaintiff alleges that the written suspension order stated that he disobeyed an order to report to the Medical Evaluation Unit, which he asserts was false because he indicated that he would report to the Medical Evaluation Unit. Plaintiff was suspended for 30 days. *Id.* ¶¶ 92, 93.

Plaintiff alleges that during his suspension, his attorney sent multiple communications to Sini and Barry indicating that the Department was discriminating against him on the basis of his race, noting that white detectives were not treated the same way and that the SCPD knew that Plaintiff had not disobeyed an order to go to the Medical Evaluation Unit. Plaintiff states that just days after returning to work after the suspension, he was suspended again, and that upon information and belief, part of the Department's motive was to retaliate against him for complaining about racial discrimination. *Id.* ¶ 94. Plaintiff further alleges that the SCPD notified him that if he was found guilty of the offense underlying the second suspension, he would be discharged. Effective June 18, 2017, Plaintiff alleges that he was forced to retire. *Id.* ¶ 95.

Plaintiff further alleges that almost one (1) full year later, on June 14, 2018, he met with Departmental Inspector Hanley for an interview and discussion, which was prompted after Plaintiff's attorneys contacted the SCPD to reiterate Plaintiff's complaints of discrimination. ¶ 96. Plaintiff alleges that during this meeting, he recounted disparate treatment and demanded the outstanding money and property owed to him. ¶ 97.

Plaintiff further alleges that over one year later, on August 23, 2019, Lt. Michael Messina of the SCPD went to Plaintiff's home to deliver the IAB report, which Plaintiff alleges was altered, and which he alleges that he was asked to sign. Plaintiff alleges that this was a deprivation of his various constitutional rights. ¶ 98

Plaintiff alleges that white officers at the SCPD received more favorable treatment than him because his superiors were motivated by racial animus. *Id.* ¶ 102. Plaintiff states that a white detective named Thomas Walsh misrepresented his physical capabilities to the SCPD on four separate occasions and upon information and belief, the SCPD never attempted to subject Walsh to a fit for duty examination. Upon information and belief, Plaintiff alleges that Walsh retired when he had four IAB investigations pending that the he was permitted to keep his police uniform, pistol permit, firearm and badge, whereas Plaintiff was not allowed to keep any of those things when he retired. *Id.* ¶¶ 103, 104.

Plaintiff alleges that on numerous occasions he notified the SCPD that he was being subjected to harassment due to racial discrimination and that the SCPD failed to investigate or address his allegations and that he was retaliated against when the harassment against him escalated. ¶¶ 107, 108.

## ARGUMENT

## POINT I

## THE CLAIMS AGAINST HICKEY MUST BE DISMISSED

"A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1). Rule 12(b)(6) provides the most appropriate legal basis for a motion to dismiss on such grounds, because expiration of the statute of limitations presents an

9

affirmative defense." *Nghiem v. U.S. Dept. of Veterans Affairs,* 451 F Supp 2d 599, 602-603 [SDNY 2006] (*internal citations omitted*). In the context of a motion to dismiss under Rule 12(b)(6), based on statute of limitations, "a District Court must limit itself to facts stated in the complaint or in documents attached to the Complaint as exhibits or incorporated in the Complaint by reference." *Kramer v. Time Warner, Inc.,* 937 R 2d 767, 773 [2d Cir 1991].

A party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." FRCP 12(b)(6). Under Rule 12(b)(6), a motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.,* 252 F 3d 63, 69 [2d Cir. 2001] (quoting *Hishon v. King & Spalding,* 467 US 69, 73 [1984] ). In a Rule 12(b)(6) motion, a court must "accept all of plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *U.S. v. Space Hunters, Inc.*, 429 F 3d 416, 424 [2d Cir 2005]. The court may also consider any documents: (1) attached to the complaint; (2) incorporated by reference in the complaint; or (3) that are "integral" to a plaintiff's claims, even if the documents are not explicitly incorporated by reference. *DeJesus v. Sears, Roebuck & Co., Inc.,* 87 F 3d 65, 69 [2d Cir 1996]; *Hanig v. Yorktown Cent. Sch. Dist.,* 384 F Supp 3d 710, 721 [SDNY 2005]; *Bentacourt v. City of New York HRA/DSS,* 2007 WL 2948345*2 [SDNY Oct. 9, 2007] (citing *Sira v. Morton,* 380 F 3d 57, 67 [2d Cir 2004]; *Davis v. Columbia Univ.*2010 WL 2143665*2 [SDNY May 26, 2010]. The court may also consider documents that are in the plaintiff's possession or that the plaintiff "knew of and relied upon in bringing her suit." *Rutherford v. Katonah-Lewisboro Sch. Dist.* 670 F Supp 2d 230, 233 [SDNY 2009]; *Metrokane, Inc. v. Wine Enthusiast,* 185 F Supp 2d 321, 324 [SDNY 2002].

## POINT II

## ALL REMAINING CLAIMS AGAINST DEFENNDANT JAMES HICKEY ARE TIME BARRED AND MUST BE DISMISSED

Following the decisions on the first and second motions to dismiss, the claims remaining as against James Hickey are: Plaintiff's employment discrimination claims, Plaintiff's disparate treatment claims, and Plaintiff's equal protection claims. *Gibson v. County of Suffolk,* 2022 WL 1063017 at *21, 19-cv-03871 (GRB)(ST) [EDNY February 18, 2022]. All of these claims are alleged as violations under Section 1983. In New York, the statute of limitations for claims brought pursuant to Section 1983 is three years from the time the claim accrues. CPLR § 214(5); *Patterson v. County of Oneida,* 373 F 3d 206, 225 [2d Cir 2004].

Plaintiff filed his Amended Complaint naming James Hickey as a defendant on April 15, 2020 [DE 19], and Plaintiff filed a Second Amended Complaint on February 25, 2021 [DE 51]. Hickey was served with the Summons and Second Amended Complaint on June 3, 2021 [DE 64]. James Hickey retired from the Suffolk County Police Department effective January 2, 2016, four (4) years and two (2) months before the Amended Complaint was filed, five (5) years and almost two (2) months before the Second Amended Complaint was filed, and five (5) years and five (5) months before he was served with process. See Gabor Declaration, Exhibit "B", (Printout from SCPD Personnel System which indicates James Hickey's retirement date of January 2, 2016) and Gabor Declaration, Exhibit "C", (Statement of Accrued Payments and Leave Credits from New York State and Local Retirement System, which indicates James Hickey's last day of paid service with the SCPD was January 1, 2016). All applicable statute of limitations for claims against James Hickey expired on January 1, 2019; prior to the filing of the original Complaint (which does not name him as a Defendant) on July 3, 2019 [DE 1], prior to the filing of the Amended Complaint on April 15, 2020, prior to the filing of the Second Amended Complaint on February 25, 2021,

and prior to him being served with the Second Amended Complaint on June 3, 2021. Accordingly, all remaining claims against James Hickey must be dismissed as time-barred

## POINT III

### THE CONTINUING VIOLATION DOCTRINE IS INAPPLICABLE TO PLAINTIFF'S CLAIMS AGAINST JAMES HICKEY

None of the allegations contained in the Second Amended Complaint refer to any acts allegedly committed by Hickey within the applicable statute of limitations period. In his Report and Recommendation [DE 74], Magistrate Tiscione dismissed all claims against Defendant William Madigan as time-barred. Like Hickey, Madigan retired from the SCPD long before he was served with the Amended Complaint and the Second Amended Complaint. As this Court has previously determined, all claims against co-defendant Madigan were dismissed as time-barred. *Gibson v. County of Suffolk,* 2022 WL 1063017 at * 7, 19-cv-03871 (GRB)(ST) [EDNY February 18, 2022], Similar to James Hickey, Madigan retired on December 9, 2015, and there were no allegations contained in the Amended Complaint that he continued discriminating against or harassing Plaintiff after his retirement date. Even though the Court determined that the continuing violations doctrine applied to Madigan, it "will only toll the statute of limitations to Madigan's own last involvement in the alleged practice of discrimination against the Plaintiff, which, with no other evidence pleaded, was his retirement date of December 9, 2015." *Id.* Likewise, the Amended Complaint and Second Amended Complaint are devoid of any allegations that Hickey continued discriminating or harassing Plaintiff after his January 2, 2016 retirement date.

Accordingly, all claims against James Hickey must be dismissed as time-barred.

## CONCLUSION

For the reasons set forth herein, Defendant Hickey respectfully requests that his motion to dismiss be granted in all respects, that the Second Amended Complaint as against him be dismissed

in its entirety, and that Defendant Hickey be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated: Hauppauge, New York
      July 25, 2022

>Respectfully submitted,
>DENNIS M. COHEN
>Suffolk County Attorney
>Attorney for Defendants
>
>By: *Hope Senzer Gabor*
>Hope Senzer Gabor
>Assistant County Attorney
>H. Lee Dennison Building
>P.O. Box 6100
>100 Veterans Memorial Highway
>Hauppauge, New York 11788
>(631) 853-5822