**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

TROY GIBSON,

       Plaintiff,                       **REPORT AND RECOMMENDATION**

       v.                          **19-CV-03871 (GRB) (ST)**

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT, TIMOTHY
SINI, GERARD GIGANTE, JOHN O'BRIEN,
MICHAEL PIRONE, JOHN BARRY, JOANN
MCLAUGHLIN, JAMES BURKE, JAMES
HICKEY, WILLIAM MADIGAN, AND
MICHAEL MESSINA,

       Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

       Plaintiff Troy Gibson ("Plaintiff") brought an action against The County of Suffolk,

Suffolk County Police Department, Timothy Sini, Gerard Gigante, John O'Brien, Michael Pirone,

John Barry, Joann McLaughlin, James Burke, James Hickey, William Madigan, and Michael

Messina ("Defendants") alleging various civil rights violations. After Defendants' previous

Motions to Dismiss, the remaining claims against Defendant Hickey ("Defendant") are Plaintiff's

claims for employment discrimination, disparate treatment and equal protection, which are alleged

as violations under 42 U.S.C. § 1983 ("Section 1983").

       Defendant Hickey filed the instant Motion to Dismiss ("Motion") Plaintiff's claims as time

barred under the governing statute of limitations.

       The Honorable Gary R. Brown referred Defendant's Motion to the undersigned to issue a

Report and Recommendation.

       For the reasons set forth below, this Court respectfully recommends that Defendant's

Motion to Dismiss be GRANTED in its entirety.

## I.    BACKGROUND

The following factual background is complex because Plaintiff alleges that, upon information and belief, Defendant Hickey was "at all relevant times" employed as the Commanding Officer of the Criminal Intelligence Section of the Suffolk County Police Department ("SCPD"). *See* Plaintiff's Second Amended Complaint ("Pl. Sec. Am. Compl."), at ¶ 16, ECF 51. Hence, while Defendant Hickey is not specifically mentioned in several facts below, the entire fact pattern is relevant since Plaintiff alleges that all the events occurred while Defendant Hickey was one of Plaintiff's "Commanding/Supervising Officers." *See, e.g. id.* at ¶ 35.

### A.  Relevant Facts

Plaintiff Troy Gibson, a black male, was a detective with the SCPD who was hired as an officer in 1995 and promoted to the rank of Detective in 2001. *Id.* at ¶¶ 2, 23, ECF 51. Plaintiff alleges that: for a period of four to five years beginning in 2010, Plaintiff's mail was opened on several occasions without his permission and that, upon information and belief, none of the white detectives had a similar experience; that Defendant Hickey referred to Plaintiff as "boy" on multiple occasions; that Defendant Hickey denied Plaintiff overtime pay for doing presentations on gang awareness, while white officers were permitted to receive such overtime pay; that in or around 2013 Plaintiff found white supremacy literature in his mailbox; that Plaintiff's personal photographs on display in his work area were taken down and thrown into the garbage; and that Plaintiff's assigned vehicle was taken away from him without explanation and given to a white detective. *Id.* at ¶¶ 27-29.

Plaintiff further alleges that, due to false allegations filed by his ex-girlfriend, he was arrested on October 2, 2015 by Defendant John O'Brien. At that time, O'Brien allegedly took

Plaintiff's work and personal phones from him.  *Id.* at ¶¶ 40, 47-48.  Additionally, the SCPD allegedly searched Plaintiff's home and removed Plaintiff's personal clothing and handguns.  *Id.* at ¶ 49.  Plaintiff's vehicle was also taken to the Fifth Precinct.  *Id.* at ¶ 55.  Moreover, Plaintiff alleges that the SCPD refused to return Plaintiff's clothing and personal firearms to him and that, upon information and belief, Plaintiff's property remains in the SCPD's custody and control.  *Id.* at ¶¶ 57-58.

After the above events, Plaintiff alleges that on October 7, 2015, the SCPD issued Personnel Order 15-188b, suspending Plaintiff without pay as of Friday October 2, 2015, the date of his arrest.  *Id.* at ¶ 60.  Moreover, sometime during October 2015, the SCPD issued a second personnel order, 15-188a, to all employees revealing the criminal charge against Plaintiff and the underlying details of that charge.  *Id.*  Plaintiff alleges that the second personnel order disclosed information regarding a confidential pending investigation, in direct contravention of SCPD policies and procedures.  *Id.*

Upon information and belief, Plaintiff alleges that the purpose of issuing the second personnel order was to humiliate and harass Plaintiff, and that it was subsequently deleted from the system which, Plaintiff alleges, violates SCPD protocol.  *Id.* at ¶ 61.  Plaintiff was reinstated to full duty status on November 2, 2015, pursuant to personnel order 15-188b.  *Id.* at ¶ 62.  However, Plaintiff's unpaid suspension was for 31 days, which Plaintiff alleges violated SCPD rules and procedures that provide for a maximum 30-day unpaid suspension.  *Id.*

After Plaintiff's suspension, Plaintiff asserts that he initially returned to work in the Criminal Intelligence Division under the same terms and conditions that existed prior to his arrest.  *Id.* at ¶ 63.  However, Plaintiff alleges that he was subsequently required to leave his service weapon at work and sign it out each morning in an official SCPD book used for that purpose.  *Id.*

Plaintiff further alleges that, several weeks later, he was advised that he was going to be transferred involuntarily out of the Criminal Intelligence division to a general detective squad, which was less prestigious and desirable than his position in Criminal Intelligence. *Id.* at ¶¶ 64-65. Plaintiff alleges that O'Brien and Lieutenant William Burke arranged for the involuntary transfer and that there was no legitimate or non-discriminatory purpose for the transfer. *Id.* at ¶ 66. In fact, Plaintiff also alleges that he was the only black detective in the Criminal Intelligence section and had been the only black detective for years when he was involuntarily transferred. *Id.* Thus, Plaintiff alleges that the involuntary transfer was motivated by racial animus against him. *Id.* at ¶ 67.

In January 2016, Plaintiff was transferred to the Third Squad Detectives, which was under the oversight of Commanding Officer Detective Lieutenant Crowley ("Crowley"). *Id.* at ¶ 69. Plaintiff alleges that Crowley informed him that on orders from Defendant Gerard Gigante, the Chief of Detectives, Plaintiff would be assigned as the administrative detective for the Third Squad, that he would not be given overtime opportunities, and that he would not be allowed to work any night tours (and therefore not eligible for night differential pay). *Id.* Plaintiff further alleges that he received few to no overtime opportunities, and little to no overtime pay, for the remainder of his tenure with the SCPD. *Id.*[1]

The criminal case against Plaintiff was dismissed on October 5, 2016. *Id.* at ¶ 70. Crowley was replaced by Defendant Michael Pirone. *Id.* at ¶¶ 70-71. When Plaintiff reported to work on October 7, 2016, he alleges that Pirone informed him that he would not be allowed to take his service weapon home, and that Plaintiff would be required sign his weapon out every morning and back in every night in a paper calendar provided by Pirone. *Id.* at ¶ 71. Pirone ordered Plaintiff

---

[1] Note, as discussed *infra*, Defendant Hickey retired from the Suffolk County Police Department as of January 2, 2016. *See* Mot. at 11, Ex. B [Printout from SCPD Personnel System, which indicates Defendant Hickey's retirement date of January 2, 2016], ECF 84-4. However, since Plaintiff contends Defendant Hickey's violations continued post-retirement, the Court is outlining the full fact pattern.

not to tell anyone about this new procedure.  *Id.* at ¶ 72.

Plaintiff alleges that in October 2016, he contacted George Michels, the Suffolk County Detectives Association delegate, for the purpose of filing a grievance regarding the SCPD's discriminatory practices and the return of his personal property.  *Id.* at ¶ 74.  During October and November 2016, Plaintiff alleges that he undertook efforts to have his personal property returned, that he be returned to the Criminal Intelligence section and to obtain back pay for the period of his 2015 suspension.  *Id.* at ¶ 75.  Plaintiff provides that he notified Defendant Timothy Sini, the Police Commissioner, that his personal property had not yet been returned by filing a 10-42 grievance request and by having his then-attorney fax and mail a letter to Sini advising him that Plaintiff's property was being improperly held.  *Id.* at ¶ 76.

Plaintiff further alleges that on November 3, 2016, he submitted a formal grievance (10-42) request to meet with Defendant John Barry, the Deputy Commissioner.  *Id.* at ¶ 77.  Plaintiff alleges that the 10-42 was first given to Pirone and that he sent a text message to Defendant Pirone to inform him that he intended to go to the Suffolk County Legislature to seek help in remedying the discriminatory treatment against him.  *Id.*   Plaintiff alleges that he received a call from Pirone asking Plaintiff to hold the 10-42 in abeyance until November 8, 2016, indicating that he should be able to return Plaintiff's property by November 8th.  *Id.* at ¶ 78.  However, November 8th passed, and Plaintiff received no further updates regarding his property which was not returned to him.  *Id.*

Plaintiff alleges that on November 14, 2016, he filed three new formal grievances, addressed to the Chief of the Department, the Police Commissioner and the Deputy Commissioner and that, as per Department protocol, he gave all of the grievances to Pirone.  *Id.* at ¶ 79.  Plaintiff further alleges that the grievances addressed charges of corruption and discrimination, and that he never received any response to them.  *Id.* at ¶ 80.

Plaintiff asserts that on January 16, 2017, he responded to an email from Sergeant Robert Lehman of the IAB regarding its investigation relating to the complaint by Plaintiff's ex-girlfriend, noting that he had not received fair or impartial treatment during the investigation, arrest or aftermath of the case. *Id.* at ¶ 81. Plaintiff alleges that he copied Defendant Joann McLaughlin, the Commanding Officer of the IAB, on the email and indicated that the purpose for doing so was to notify her that Plaintiff was being treated in a discriminatory manner so that the IAB would open an investigation into potential racial discrimination against him. *Id.* at ¶ 82.

On January 25, 2017, Plaintiff was interviewed by the IAB. Moreover, on January 26, 2017, Plaintiff alleges that Pirone and Lehman informed him that he was cleared in the investigation. *Id.* at ¶ 83. Plaintiff alleges that in his presence, Lehman told Pirone by phone that the IAB determined that Plaintiff had not committed any wrongdoing and that the IAB case was closed. *Id.* Yet, despite Lehman's statements, Plaintiff further alleges that the IAB never provided him with paperwork notifying him of the results of the investigation and, upon information and belief, that his supervisors, including Pirone and Gigante, wanted it to appear as if the investigation was still open. *Id.* at ¶ 84.

On March 29, 2017, Plaintiff alleges that he was called into Pirone's office and was informed that Pirone received a phone message that Plaintiff would need to call Sergeant Gansrow ("Gansrow") from the Medical Evaluation Unit about taking a fit for duty examination. *Id.* at ¶ 85. Plaintiff alleges that he spoke with Gansrow who indicated that Plaintiff would need to "sign for a letter" that contained an order for him to appear before Dr. Coyle to take a fit for duty examination. *Id.* at ¶ 86. Plaintiff alleges that he inquired as to where the instruction was coming from and that Gansrow first stated that it came from a Chief whose name started with the letter "G", but then stated that it came from IAB, but he would not tell Plaintiff who at IAB requested

6

it. *Id.* at ¶ 87. Upon information and belief, Plaintiff alleges that the "Chief" was Gigante. *Id.* Plaintiff further asserts that he conducted a search and determined that there was no "Dr. Coyle" in Cutchogue, N.Y. as he was told, and that since Plaintiff did not see the envelope or its contents, he refused to sign for it. *Id.* at ¶ 88.

On April 12, 2017, Plaintiff alleges that Pirone told him that members of the IAB were on their way to the Third Precinct to get Plaintiff to accept the sealed letter and, if he refused to accept it, he would face insubordination charges. *Id.* at ¶ 89. Plaintiff alleges that Captain Kevin Kane and Lieutenant John Fives from IAB arrived and that Kane ordered him to go to the Medical Evaluation Unit. *Id.* Plaintiff alleges that he agreed to go to the unit, but would not accept the sealed letter because this was not the normal protocol for a fit for duty examination, and it would be unlawful to force Plaintiff to sign for a sealed envelope with unknown contents. *Id.* Plaintiff states that Kane spoke with Gigante by phone in a separate room for approximately 30 minutes, and then Kane informed Plaintiff that he would have to accept the letter. *Id.* at ¶ 90.

Plaintiff alleges that he expressed that he was unwilling to sign anything without seeing or knowing what he was signing. *Id.* Upon Plaintiff's refusal to sign the letter, Plaintiff alleges that Kane suspended him on the spot and ordered Plaintiff to turn over his identification card, his shield, and his access key for the Third Precinct. *Id.* at ¶ 91. Plaintiff alleges that the written suspension order stated that Plaintiff disobeyed an order to report to the Medical Evaluation Unit, which Plaintiff asserts was false because Plaintiff previously indicated that he would report to the Medical Evaluation Unit. *Id.* at ¶ 92. Plaintiff was then suspended for 30 days. *Id.* at ¶ 93.

Plaintiff alleges that during his suspension, his attorney sent multiple communications to Sini and Barry indicating that the Department was discriminating against Plaintiff on the basis of his race, noting that white detectives were not treated the same way and that the SCPD knew that

Plaintiff had not disobeyed an order to go to the Medical Evaluation Unit.  *Id.* at ¶ 94.  Plaintiff asserts that within days after returning to work after the suspension, the Department suspended Plaintiff again and that, upon information and belief, part of the Department's motive was to retaliate against Plaintiff for complaining about racial discrimination.  *Id.*  Plaintiff further alleges that the SCPD notified him that if he was found guilty of the offense underlying the second suspension, he would be discharged.  *Id* at ¶ 95.  Hence, Plaintiff asserts that he was forced to retire, effective June 18, 2017, to avoid being "involuntarily and illegally terminated."  *Id*.

Plaintiff alleges that almost one (1) full year later, on June 14, 2018, he met with Department Inspector Hanley for an interview and discussion, which was prompted after Plaintiff's attorneys contacted the SCPD to reiterate Plaintiff's complaints of discrimination.  *Id.* at ¶ 96.  Plaintiff asserts that during this meeting, he recounted the disparate treatment against him and demanded the outstanding money and property owed to him.  *Id.* at ¶ 97.

Plaintiff additionally alleges that on August 23, 2019, Defendant-Lieutenant Michael Messina of the SCPD went to Plaintiff's home to deliver the IAB report.  *Id.* at ¶ 98.  Plaintiff alleges the report was altered and that he was, nevertheless, asked to sign the report.  *Id.*  Plaintiff contends that these events constituted a deprivation of Plaintiff's various constitutional rights.  *Id.*

Plaintiff alleges that white officers of the SCPD received more favorable treatment than him because his superiors were motivated by racial animus.  *Id.* at ¶ 102.  As a specific example, Plaintiff states that a white detective, named Thomas Walsh, misrepresented his own physical capabilities to the SCPD on four separate occasions.  *Id.* at ¶ 103.  However, upon information and belief, the SCPD never attempted to subject Walsh to a fit for duty examination.  *Id*.  Additionally, upon information and belief, Plaintiff alleges that Walsh retired when he had four IAB investigations pending and that Walsh was still permitted to keep his police uniform, pistol permit,

firearm and badge upon retirement, whereas Plaintiff was not allowed to keep any of those items upon leaving the SCPD. *Id.* at ¶ 104.

Finally, Plaintiff alleges that on numerous occasions, he notified the SCPD that he was being subject to harassment due to racial discrimination. *Id.* at ¶ 107. However, the SCPD allegedly failed to investigate or address Plaintiff's allegations, and the SCPD retaliated against Plaintiff by escalating the harassment against him thereafter. *Id.* at ¶¶ 107-08.

## B. Procedural History[2]

On or about June 11, 2018, Plaintiff filed a verified complaint of discrimination with the New York State Division of Human Rights ("DHR"), Case No. 10195325, alleging that, "by virtue of the foregoing wrongful conduct, Defendants had, among other things, subjected him to racial discrimination and a racially hostile work environment, and had subjected him to retaliation (the "DHR Complaint")." *Id.* at ¶ 109. The DHR Complaint was also cross-filed as a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge Number 16G-2018-03759 (the "EEOC Charge"). *Id.*

On or about January 31, 2019, the DHR issued a Determination and Order after Investigation of the DHR Complaint. On or about April 4, 2019, the EEOC issued its Dismissal and Notice of Rights (the "EEOC Right-to-Sue Letter") based on the DHR Determination. *Id.* at ¶ 110. The letter instructed that Plaintiff must file suit within 90 days of April 4, 2019. *Id.*[3]

On July 3, 2019, Plaintiff filed his initial Complaint in this Court, which did not name Defendant Hickey as a party. *See* ECF 1. On December 14, 2020, this Court issued a Report and Recommendation granting and denying in part Defendants' initial Motion to Dismiss, which

---

[2] The procedural posture of this case is complex and voluminous, so the Court has only included those events pertinent to the instant Motion.

[3] Notably, the EEOC letter does not address the applicable Section 1983 Statute of Limitations, as discussed *infra*.

dismissed Plaintiff's causes of action under Title VII, Conversion and Replevin. *See* ECF 42. The Honorable Joan M. Azrack adopted this Court's Report and Recommendation on February 22, 2021. *See* ECF 49. Hence, Plaintiff's First, Second, Ninth and Tenth Causes of Action, alleging violations under Title VII, Conversion and Replevin, are moot. Only Plaintiff's Section 1983 claims for employment discrimination, disparate treatment and equal protection are at issue here.

Plaintiff filed his first Amended Complaint on April 15, 2020, which named James Hickey as a Defendant, and Second Amended Complaint on January 21, 2021. *See* ECF 19 and 51.[4]

After Plaintiff filed his Second Amended Complaint, on April 12, 2021 Defendants filed a second Motion to Dismiss for all Defendants except Defendants Burke and Hickey. *See* ECF 65.[5] On August 20, 2021, after the Second Motion to Dismiss was filed, the Suffolk County Attorney's Office filed a Notice of Appearance on behalf of Defendant Hickey. *See* ECF 70.

On August 24, 2021, Defendant Hickey filed a letter request to Judge Azrack for a pre-motion conference requesting permission to file a Rule 12(b)(6) motion to dismiss Plaintiff's Second Amended Complaint against Defendant Hickey. *See* ECF 71.

On November 5, 2021, Judge Azrack issued an Order referring Defendant's request to this Court. *See* ECF Minute Entry, dated November 5, 2021.[6]

On February 18, 2022, this Court issued a Report and Recommendation regarding Defendants' Second Motion to Dismiss filed on June 28, 2021, *see* ECF 74, which was adopted by the Honorable Gary R. Brown on March 16, 2022. *See* ECF Minute Entry, dated March 16, 2022. Based upon the adopted Report and Recommendation, Plaintiff's only remaining claims against Defendant Hickey are Section 1983 claims for employment discrimination, disparate

---

[4] Note, the ECF entry for Plaintiff's Second Amended Complaint is dated February 25, 2021, but the Second Amended Complaint itself is dated January 21, 2021. *See* ECF 51.
[5] The fully briefed Motion to Dismiss ECF entry is dated June 28, 2021. *See* ECF 65.
[6] Note, Judge Azrack recused herself from the instant matter on October 20, 2021. *See* ECF 73.

treatment and equal protection.[7]

On March 24, 2022, Defendant Hickey subsequently requested a pre-motion conference seeking permission to make a motion to dismiss Plaintiff's Second Amended Complaint since this Court had not yet ruled on Defendant's previous request. *See* ECF 75.[8]

On June 10, 2022, this Court held a pre-motion conference and set a briefing schedule for the instant Motion regarding Defendant Hickey's Motion to Dismiss all claims against him on Statute of Limitations grounds. *See* ECF 80.[9]  Defendant Hickey then filed the instant Motion on July 25, 2022. *See* ECF 84.

On September 6, 2022, Plaintiff filed his Opposition to the instant Motion and Defendant filed his Reply on October 18, 2022.[10] *See* ECF 84.

## II.    JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's Section 1983 claims pursuant to 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

"A motion to dismiss on statute of limitations grounds is properly viewed as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 458 (E.D.N.Y. 2013); *Jowers v. Lakeside Family & Children's Svcs.*, 435 F. Supp. 2d 280, 283 (S.D.N.Y. 2006) (internal quotation marks omitted); *accord Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).  Because there is no federal

---

[7] Note, to the extent this Court previously indicated that Plaintiff's hostile work environment claim remains as well, Plaintiff's hostile work environment claim is pled as part of Plaintiff's Section 1983 disparate treatment and employment discrimination claim.  *See* Pl. Sec. Am. Compl., at ¶ 180.

[8] As noted *supra*, Defendant Hickey's previous request was filed on August 24, 2021 and is found at ECF 71.

[9] Note, while the pre-motion conference occurred on June 10, 2022, the ECF entry is dated June 14, 2022.  *See* ECF 80.

[10] Note, the fully briefed Motion is found at ECF 84, which is dated October 18, 2022.  However, the initial Motion itself is dated July 25, 2022.  Plaintiff's Opposition is dated September 6, 2022 and Defendant's Reply is dated October 18, 2022.

statute of limitations governing actions brought pursuant to Section 1983 claims, courts apply the forum state's general personal injury statute of limitations. *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994).  In an action arising in New York pursuant to Section 1983, the applicable statute of limitations is "borrowed from New York's general statute of limitations for personal injury actions," which is three years. *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 206 (E.D.N.Y. 1993) (citing *Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir. 1989)); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) ("New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs section 1983 actions in New York.").  "The three-year limitations period applies regardless of whether Plaintiff seeks legal, equitable, or declaratory relief." *3 Levine v. McCabe*, 357 F. Supp. 2d 608, 614 (E.D.N.Y. 2005).  As for accrual, "[f]ederal law determines when a section 1983 cause of action accrues." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). The Second Circuit has ruled that accrual occurs "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980).

When assessing a Rule 12(b)(6) motion to dismiss, a court must determine whether the complaint states a legally cognizable claim by making allegations that, if proven, would show that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint successfully states a claim when there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). There are "[t]wo working principles" that guide this analysis: "First, the court must accept all factual allegations as true and draw all reasonable

inferences in favor of the non-moving party," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss, and this determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Giambrone v. Meritplan Ins. Co.*, 13-CV-7377 (MKB) (ST), 2017 WL 2303980, at *3 (E.D.N.Y. Feb. 28, 2017) (internal quotations and citations omitted), *adopted by* 2017 WL 2303507 (E.D.N.Y. May 24, 2017).

The court may also consider any documents: (1) attached to the complaint; (2) incorporated by reference in the complaint; or (3) that are "integral" to a plaintiff's claims, even if the documents are not explicitly incorporated by reference. *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996); *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 721 (S.D.N.Y. 2005); *Betancourt v. City of New York HRA/DSS*, No. 07 CIV. 2165 (DLC), 2007 WL 2948345, at *2 (S.D.N.Y. Oct. 9, 2007) (citing *Sira v. Morton,* 380 F.3d 57, 67 (2d Cir. 2004)); *Davis v. Columbia Univ.*, No. 09 CV 9581 HB, 2010 WL 2143665, at *2 (S.D.N.Y. May 26, 2010). Finally, the court may also consider documents that are in the plaintiff's possession or that the plaintiff "knew of and relied upon in bringing her suit." *Rutherford v. Katonah-Lewisboro Sch. Dist.*, 670 F. Supp. 2d 230, 233 n.2 (S.D.N.Y. 2009); *Metrokane, Inc. v. Wine Enthusiast*, 185 F. Supp. 2d 321, 324 (S.D.N.Y. 2002).

## IV.  DISCUSSION

### A. Plaintiff's Remaining Claims Against Defendant Hickey are Time Barred Based Upon Defendant Hickey's Date of Retirement

This Court concludes that Plaintiff's remaining claims against Defendant Hickey are time barred based upon Defendant Hickey's date of retirement. As discussed *supra*, all of Plaintiff's remaining claims against Defendant Hickey are Section 1983 claims for employment discrimination, disparate treatment, and equal protection. *Gibson v. Cnty. of Suffolk*, No.

19CV03871GRBST, 2022 WL 1063017, at *21 (E.D.N.Y. Feb. 18, 2022).[11]

Pursuant to New York Civil Practice Law and Rule ("CPLR") 214, a cause of action for personal injuries must be filed within three years. *See* N.Y. C.P.L.R. 214. New York's statute of limitations under CPLR 214 is also applicable to § 1983 federal actions. *See Owens v. Okure*, 488 U.S.235, 251 (1989); *Ormiston*, 117 F.3d at 71; *Phillips v. City of New York*, 304 F. Supp. 3d 305, 311 (E.D.N.Y. 2018); *Dellinger v. Town of Huntington,* No. CV175319SJFGRB, 2018 WL 6576051, at *3 (E.D.N.Y. Aug. 29, 2018), *report and recommendation adopted*, No. 17CV5319SJFGRB, 2018 WL 6168181 (E.D.N.Y. Nov. 26, 2018). This is because for § 1983 actions, "the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" *Ormiston*, 117 F.3d at 71 (citations omitted); *see also Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 206 (E.D.N.Y. 1993).

When Plaintiff's Section 1983 claims accrued, however, is a more complex question. The accrual date of a § 1983 cause of action is a question of federal law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). A section 1983 claim "accrues once the 'plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (quoting *Singleton*, 632 F.2d at 191). In other words, "the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." *Veal*, 23 F.3d at 724. This concept of accrual is known as the "discovery rule." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002).

Here, all of Plaintiff's remaining claims against Defendant Hickey allege violations

---

[11] As discussed *supra*, to the extent this Court has previously indicated that Plaintiff's hostile work environment claim remains as well, Plaintiff's hostile work environment claim is pled as part of Plaintiff's Section 1983 disparate treatment and employment discrimination claim. *See* Pl. Sec. Am. Compl., at ¶ 180.

pursuant to 42 U.S.C. § 1983, which are barred by the applicable three-year statute of limitations as discussed below. Plaintiff filed his initial Complaint on July 3, 2019 (which did not name Defendant Hickey as a party), Amended Complaint on April 15, 2020, and Second Amended Complaint on January 21, 2021. *See* ECF 1, 19 and 51.[12] Hence, the question becomes when did Plaintiff's remaining claims *accrue*?

Notably, Defendant Hickey retired from the Suffolk County Police Department as of **January 2, 2016**, which was: three years, six months and one day before the filing of the initial Complaint; four years, three months and thirteen days from the filing of the Amended Complaint; and five years and nineteen days from the filing of the Second Amended Complaint.[13] *See* Mot. at 11, Ex. B [Printout from SCPD Personnel System, which indicates Defendant Hickey's retirement date of January 2, 2016]; Ex. C [Statement of Accrued Payments and Leave Credits from New York State and Local Retirement System, which indicates Defendant Hickey's last day of paid service with the SCPD was January 1, 2016], ECF 84.[14] Using Defendant Hickey's last day of employment as the accrual date, the applicable statute of limitations under New York law expired on January 1, 2019, even predating the *initial* Complaint filed on July 3, 2019. Hence, Plaintiff's claims are barred *regardless* of which date the statute of limitations stopped tolling.[15]

---

[12] Note, the ECF entry for Plaintiff's Second Amended Complaint is dated February 25, 2021, but the Second Amended Complaint itself is dated January 21, 2021. *See* ECF 51.

[13] From February 25, 2021, the date of the ECF entry, five years, one month and 23 days have elapsed.

[14] Note, given that the duration of Defendant Hickey's employment is "integral" to Plaintiff's Complaint, this Court may consider Defendant's exhibits attached to the instant Motion without converting the instant Rule 12(b)(6) Motion to a Motion for Summary Judgment. *See, e.g.*, *Wade v. Fischer*, No. 10 CV 5417, 2012 WL 1118206, at *1 (E.D.N.Y. Mar. 30, 2012); *Davis v. Columbia Univ.*, No. 09 CV 9581 HB, 2010 WL 2143665, at *2 (S.D.N.Y. May 26, 2010). Furthermore, Plaintiff does not dispute anywhere in his Opposition that Defendant Hickey retired on that date.

[15] Based upon the above discussion, this Court concludes that it need not reach the question of what date the statute of limitations on the claims against Defendant Hickey *stopped* tolling: the date of the original Complaint (July 3, 2019), the date of the Amended Complaint which named Hickey as a Defendant (April 15, 2020), or the date of the Second Amended Complaint (January 21, 2021). Again, Plaintiff's Section 1983 claims are time barred regardless.

**B. The Continuing Violation Doctrine Also Does Not Cure Plaintiff's Statute of Limitations Deficiency**

This Court also recommends that the District Court find that the continuing violation doctrine does not cure Plaintiff's statute of limitations deficiency. The continuing violation doctrine creates an "exception to the normal knew-or-should-have-known accrual date" of a § 1983 discrimination claim where there is evidence of an ongoing discriminatory policy or practice. *See Gibson*, 2022 WL 1063017, at *6 (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999)). The doctrine "can be applied when the Plaintiff's claim seeks redress for injuries resulting from 'a series of separate acts that collectively constitute one unlawful [act],' but the doctrine cannot be applied when the Plaintiff challenges conduct that is a discrete unlawful act." *Shomo v. City of N.Y.*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Hence, "where a plaintiff alleges 'an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy,' the continuing violation doctrine delays commencement of the statute of limitations period 'until the last discriminatory act.'" *Id.*

However, the continuing violation doctrine requires balancing the burden on Plaintiff in these types of cases against the compelling reasons for the statute of limitations. "The continuing violation doctrine balances the burden imposed on plaintiffs by statutes of limitations against the reality that unlawful conduct does not always occur on discrete, specific occasions ... The theory [of statutes of limitations] is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Brevot v. New York City Dep't Of Educ.*, No. 04 CIV 7959 GEL, 2007 WL 690130, at *6 (S.D.N.Y. Mar. 6, 2007), *aff'd*, 299 F. App'x 19 (2d Cir. 2008) (quoting *In re Becker*, 407 F.3d 89, 97 (2d Cir. 2005)). Therefore, the continuing

violation doctrine is defendant-specific. "The continuing violation doctrine is premised on the theory that *a defendant* who is accused of engaging in an 'ongoing ... polic[y] or practice[ ]' of unlawful conduct does not require the 'shelter' of the statute because such a claim is not 'stale.' " *Brevot*, 2007 WL 690130, at *6 (emphasis added).

Per the above standard, this Court will look to the Second Amended Complaint for what Defendant Hickey is alleged to have done to violate Plaintiff's rights, whether that was a pattern of behavior such that the continuing violation doctrine could apply, whether the Court should apply the doctrine, and, if so, when the last act in Defendant Hickey's ongoing policy or practice occurred.

As discussed *supra*, the Second Amended Complaint alleges that Defendant Hickey was at "all relevant times. . . employed as the Commanding Officer of the Criminal Intelligence Section with the SCPD." *See* Pl. Sec. Am. Compl., at ¶ 16. While Defendant Hickey was Commanding Officer, Plaintiff alleges that his assigned police vehicle was taken from him and given to a white detective (¶29); his mail was opened without his permission, in contrast to the white detectives, at the *direction* of Defendant Hickey (¶27(a)); Defendant Hickey referred to Plaintiff as "boy" on multiple occasions (¶27(b)); Defendant Hickey denied Plaintiff overtime pay for doing presentations on gang awareness while white officers were allowed to receive overtime pay for the same kind of presentations (¶27(c)); and that in or around 2013, Plaintiff found white supremacy hate literature placed in his mailbox (¶27(d)). Furthermore, Plaintiff's Second Amended Complaint alleges that Defendant Hickey oversaw and/or directed the policies and acts that resulted in Plaintiff's demotion, denial of overtime, and subjection to unconstitutional policies and procedures, including a fabricated fit for duty exam. *See id.* at ¶ 153(a)-(j). In fact, the Second Amended Complaint specifically alleges that Defendant Hickey was one of the Defendants who

had a direct role in selecting Defendant-Officer John O'Brien to execute an illegal search/seizure of Plaintiff's personal property. *See* Opp. at 6 (citing Pl. Sec. Am. Compl., at ¶¶ 45-59).

Accepting Plaintiff's allegations as true, there is an ongoing policy or practice by Defendant Hickey qualifying for the continuing violation doctrine because Plaintiff is not suing regarding any one of those acts or failures to intervene, but for the *pattern* of discrimination at work. Denying Plaintiff that opportunity would deny Plaintiff the ability to sue under a theory that it was the overall pattern of conduct that harmed him, not any one instance, which is the reality of the situation that he has alleged. Thus, the continuing violation doctrine applies, and remedy could be sought against Defendant Hickey for any event during that course of conduct within the statute of limitations date of *the last act* by Defendant Hickey in that chain of conduct.

Defendant Hickey, however, is correct that his retirement ended his *personal participation* in the course of conduct at issue. Indeed, this Court's Report and Recommendation for Defendant-Chief of Detectives William Madigan is instructive. *See Gibson*, 2022 WL 1063017, at *7.[16] Analogous to this Court's February 18, 2022 R&R, when Defendant Hickey retired on January 2, 2016, "he lost supervisory authority over the alleged discriminatory conduct," and "nowhere in Plaintiff's complaint" does Plaintiff allege that Defendant Hickey "continued discriminating against or harassing Plaintiff *personally* after his retirement." *Id.* (emphasis added). Instead, Plaintiff argues that the continuing violation doctrine applies because "[a]t a minimum, there is a jury question as to whether Hickey's own *personal directives and policies* that he personally implemented were continued via agency and upon his orders after his retirement." Opp. at 14 (emphasis added). More specifically, Plaintiff argues that "[a]s pleaded, Hickey personally was the Commanding Officer in charge who ordered the false exam, the IAB lies, the false reports, the

---

[16] As discussed *supra*, this Court's February 18, 2022 Report and Recommendation was adopted by Judge Brown on March 16, 2022. *See* ECF Minute Entry, dated March 16, 2022.

transfer, and the changes in the terms and conditions of employment that *continued on those orders through* Messina's unlawful visit to Plaintiff's home in 2019- still trying to have plaintiff unlawfully sign and falsify reports ordered by Hickey." *Id.* (emphasis added).

Again however, this Court's reasoning in the February 18, 2022 R&R applies here. *Gibson*, 2022 WL 1063017, at *7. Plaintiff might be able to plead the continuing violation doctrine using Messina's visit to Plaintiff's house for claims as to Messina or his supervisors or the County, but Plaintiff has not pleaded facts which would show *Defendant Hickey* played any supervisory or actual role in Messina appearing at Plaintiff's house with an altered IAB report in 2019 given that Defendant Hickey retired, effective **January 2, 2016**.[17] Hence, this court concludes that while the continuing violation doctrine applies to Defendant Hickey, it will only toll the statute of limitations to Defendant Hickey's *own last involvement* in the alleged practice of discrimination against the Plaintiff, which, with no other evidence pleaded, was Defendant Hickey's retirement date of January 2, 2016. Thus, this Court concludes that the continuing violation doctrine does not cure Plaintiff's statute of limitations deficiency.[18]

## C.  Plaintiff's Argument that the EEOC Right-to-Sue Letter, dated April 4, 2019, Extends the Statute of Limitations Fails as a Matter of Law and Public Policy

This Court also recommends that the District Court find that the statute of limitations is not extended, despite the EEOC Right-to-Sue Letter dated April 4, 2019. Plaintiff argues that "*all* claims," including the remaining Section 1983 claims and other claims *previously dismissed*, should be reconsidered based upon the EEOC letter. *See* Opp. at 15. Specifically, Plaintiff's

---

[17] While Plaintiff relies on paragraphs 150, 153-54 and 165 that do mention Defendant Hickey, *see* Opp. at 7-9, Defendant Hickey is lumped in with the other Defendants and, most crucially, these paragraphs do not make any allegation that Defendant Hickey had any actual or supervisory role *after* his retirement on January 2, 2016.

[18] In reaching this conclusion, this Court also agrees with Defendant's position in Defendant's Reply at 4-5 regarding Plaintiff's reliance on paragraphs 60-68 of the Second Amended Complaint. While Plaintiff argues these paragraphs, *see* Opp. at 9, show that the discriminatory conduct "occurred at the directive of Hickey who was Commanding Officer, and lasted after his retirement continuing pursuant to Hickey's Orders" Defendant Hickey is not actually mentioned in *any* of these paragraphs. Furthermore, Paragraph 68 is nonexistent (the number 67 is followed by 69).

Second Amended Complaint alleges that on or about June 11, 2018, Plaintiff filed the Division of Human Rights Complaint based upon Defendants' alleged wrongful and discriminatory conduct. Pl. Sec. Am. Compl., at ¶ 109.  "The DHR Complaint was also cross-filed as a charge of discrimination with the [EEOC]." *Id.*  Moreover, "[o]n or about January 31, 2019, the DHR issued a Determination and Order after Investigation of the DHR Complaint" and "[o]n or about April 4, 2019, the EEOC issued its [EEOC Right-to-Sue Letter] based on the DHR Determination." *Id.* at ¶ 110.[19]  Finally, the Second Amended Complaint alleges that "[t]he EEOC letter of April 4, 2019, gave plaintiff 90 days within which to file suit, and the instant lawsuit was filed within that timeframe." *Id.* at ¶ 111.  Hence, Plaintiff argues that "[t]he 90-day subsequent filing deadline. . . therefore *supersedes* and this lawsuit was filed in a timely way thereafter."  Opp. at 15-16 (emphasis in original).

This Court concludes that Plaintiff's argument fails for multiple reasons.  First, Plaintiff does not cite *any* case law, nor has this Court found any, for the proposition that the EEOC Right-to-Sue Letter provides a *superseding* deadline.  Plaintiff's only cited case law, *see* Opp. at 16, is *Pikulin v. City Univ. of New York*, 176 F.3d 598, 599 (2d Cir. 1999), which stands for the uncontroversial proposition that: "[f]iling an administrative complaint with the EEOC is a statutory prerequisite to maintaining *a Title VII* action in the district court."  (emphasis added).  However, *Pikulin* does not address the present issue of tolling a statute of limitations.  And even more problematically, none of Plaintiff's remaining claims here are Title VII claims.

Relatedly, this Court previously held with respect to the Title VII claims in an earlier Motion to Dismiss that: "Plaintiff left SCPD more than 300 days before filing his EEOC complaint. Thus, none of the discriminatory acts that Plaintiff actually alleged to have occurred during his

---

[19] Note, a copy of the EEOC Right-to-Sue Letter is attached to Plaintiff's Second Amended Complaint as Exhibit A.

tenure at SCPD are timely for purposes of Plaintiff's Title VII hostile work environment claim." *Gibson v. Suffolk Cnty. Police Dep't*, No. 19CV03871JMAST, 2020 WL 8617536, at *6 (E.D.N.Y. Dec. 14, 2020), *report and recommendation adopted*, No. 19CV03871JMAST, 2021 WL 681094 (E.D.N.Y. Feb. 22, 2021).  In other words, this Court has previously rejected any argument that the EEOC Right-to-Sue Letter acts as a superseding deadline.  Indeed, District Judge Azrack has opined, when adopting this Court's previous R&R, that Plaintiff's EEOC Right-to-Sue Letter arguments are "meritless."  *Gibson*, 2021 WL 681094, at *1; Reply at 2.[20]

Additionally, this Court also concludes that Plaintiff's EEOC superseding deadline argument fails as a matter of public policy.  Taking Plaintiff's argument to its logical conclusion, EEOC right-to-sue letters could routinely be used to circumvent New York's three-year statute of limitations, thereby disregarding legislative intent.   Thus, this Court recommends that the District Court find that Plaintiff's EEOC Right-to-Sue Letter does not supersede the applicable three-year statute of limitations.

## V.    CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted in its entirety.

## VI.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court

---

[20] This Court also rejects Plaintiff's argument that his Opposition provides a viable basis for the Court to award affirmative relief and reopen claims that were previously dismissed in the case and notes Plaintiff has provided no authority supporting this assertion.  *See* Opp. at 15.

of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018);

*McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-

CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v.*

*Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

         /s/ Steven L. Tiscione

Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
June 30, 2023